ORIGINAL

1  **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

2  Name _PIÑA_ _PABLO_ _P._

3      (Last)            (First)         (Initial)

4  Prisoner Number ___D-28079___

5  Institutional Address _PELICAN BAY STATE PRISON. P.O. BOX 7500 CRESCENT CITY. CALIF_

6                                              95531

7  **UNITED STATES DISTRICT COURT**

8  **NORTHERN DISTRICT OF CALIFORNIA**

    PABLO PIÑA, RALPH TRUJILLO,

9      EDDIE GARCIA,

    (Enter the full name of plaintiff in this action.)    )

10                     vs.       )    Case No. _____
                                   )    (To be provided by the Clerk of Court)

11  _DIRECTOR._                         )

12  _WARDEN, ROBERT HOREL_         )  **COMPLAINT UNDER THE**
                                   )  **CIVIL RIGHTS ACT,** **(PR)**

13  _ASSOCIATE WARDEN, CYNTHIA SCAVETTA_  )  **Title 42 U.S.C § 1983**
                                   )  DEMAND FOR JURY TRIAL.

14  _LT. (I.G.I.) MARQUEZ , ET AL,_      )  RULES OF CT. 3·6 (4).
    (Enter the full name of the defendant(s) in this action)  )

15                                          )

16  *[All questions on this complaint form must be answered in order for your action to proceed..]*

17  I.    Exhaustion of Administrative Remedies.

18      **[Note:** You must exhaust your administrative remedies before your claim can go

19      forward. The court will dismiss any unexhausted claims.]

20      A.    Place of present confinement _PELICAN BAY STATE PRISON, CRESCENT CITY CALIF._

21      B.    Is there a grievance procedure in this institution?

22              YES (✗)    NO ( )

23      C.    Did you present the facts in your complaint for review through the grievance

24          procedure?

25              YES (✗)    NO ( )

26      D.    If your answer is YES, list the appeal number and the date and result of the

27          appeal at each level of review. If you did not pursue a certain level of appeal,

28          explain why.

COMPLAINT                       - 1 -

1        1. Informal appeal _____

2           the inactive Review status and (DRB action

3           is not appealable through appeals Process.

4        2. First formal level___ See attatched 602 EXHIBIT-F.

5

6

7        3. Second formal level_____

8

9

10       4. Third formal level _____

11

12

13      E.    Is the last level to which you appealed the highest level of appeal available to

14         you?

15              YES (x)    NO ( )

16      F.    If you did not present your claim for review through the grievance procedure,

17 explain why. THERE ARE APPEALS THAT WERE NOT PROCESSED BY THE APPEALS

18 OFFICE, And could NOT BE EXHAUSTED due TO THEIR REFUSAL TO PROCESS.

19 SEE EXHIBIT-E. PBSP HAS A history OF screening out APPEALS SO They cant

20 Be Heard or appealed.

II.    Parties.

21      A.    Write your name and your present address. Do the same for additional plaintiffs,

22         if any.

23   PABLO PIÑA (PBSP) P.c.Box 7500 CRESCENT CITY.CALIF 95531

24   RALPH TRUJILLO (PBSP) P.S.Box 7500 CRESCENT CITY, CALIF 95531

25   Eddie GARCIA (PBSP) P.O.Box 7500 CRESCENTCITY,CALIF 95531

26      B.    Write the full name of each defendant, his or her official position, and his or her

27         place of employment.

28 MR. TILTON    DIRECTOR/SECRETARY, SACRIMENTO, CALF.

COMPLAINT            - 2 -

1  ROBERT HOREL, WARDEN. PELICAN BAY STATE PRISON. AT CRESCENT CITY, CALIF

2  CYNTHIA SCAVETTA, ASSOCIATE WARDEN, PELICAN BAY STATE PRISON AT CRESCENT CITY,

3  LT. MARQUEZ, I.G.I. GANG UNIT, PBSP.

4  SGT. RANDOLPH, I.G.I GANG UNIT, PBSP.        ET. AL.

5  III.    Statement of Claim.

6      State here as briefly as possible the facts of your case. Be sure to describe how each

7  defendant is involved and to include dates, when possible. Do not give any legal arguments or

8  cite any cases or statutes. If you have more than one claim, each claim should be set forth in a

9  separate numbered paragraph.

10  CLAIM I: DEF'S HAVE KEPT PLAINTIFF'S IN TOTAL SEGREGATION FOR OVER 20

11  YEARS. ON INDEFINATE STATUS FOR GANG ASSOCIATION AND MEMBERSHIP

12  AND REQUIRE THEM TO DEBRIEF BEFORE THEY CAN BE RELEASED TO A MAIN LINE

13  CLAIM II: DEF'S HAVE A NEW POLICY THAT AFTER A GANG MEMBER IS IN

14  (SHU) FOR SIX YEARS, HE CAN APPLY FOR INACTIVE GANG STATUS AND BE RELEASED

15  FROM THE (SHU). BUT REFUSE TO APPLY IT TO PLAINTIFFS WHO FIT THE CRITERIA.

16  CLAIM III: DEF'S HAVE RECENTLY IMPLEMENTED A NEW POLICY THAT REQUIRES

17  THAT ALL MAIL SENT BY SHU) PRISONERS IS TO BE DAMAGED AND DEFACED BY

18  PLACING A RED STAMP ACROSS THE WRITTEN PORTION OF THE LETTER BEFORE

19  IT CAN BE MAILED.

20  CLAIM IV: DEF'S APPEAL SYSTEM AT PBSP AND IN CALIF. PRISONS IS USED FOR

21  THEIR BENEFIT, RATHER THAN FOR PRISONERS TO FILE GRIEVANCES, AND EXHAUST

22  ADMINISTRATIVE REMEDIES.

23  IV.    Relief.

24      Your complaint cannot go forward unless you request specific relief. State briefly exactly

25  what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

26  1. THAT PLAINTIFF'S BE RECLASSIFIED AS INACTIVE GANG MEMBERS. AND THAT

27  PBSP OFFICIALS FOLLOW THE RULES OF DIRECTOR. 2). THAT IF THEY QUALIFY

28  FOR GENERAL POPULATION THEY BE RELEASED. 3). THAT PLAINTIFF'S BE PAID

COMPLAINT                    - 3 -

1  &100.00 FOR EVERYDAY THEY'VE SPENT IN (SHU) FROM THE TIME THEY OFFICIALS KNEW

2  OR SHOULD OF KNOWN THEY WERE INACTIVE. 4). THAT DEF'S PROCESS 602 APPEALS

3  THAT SHOULD BE PROCESSED AND WHEN THEY DON'T SHOULD BE SANCTIONED FOR NOT

4  DOING SO MONETARILY.

5      I declare under penalty of perjury that the foregoing is true and correct.

6                    Sunday
7      Signed this 9/16/07 day of September , 20 07

8

9

10                                    (Plaintiff's signature)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                    - 4 -

PABLO PIÑA
P.O. BOX 7500    D-4 162
PELICAN BAY STATE PRISON
CRESCENT CITY, CALIF   95532
        PRO-SE



ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SI (PR)

PABLO PIÑA, EDDIE GARCIA,
RALPH TRUJILLO
        PLAINTIFFS, ET. AL,

        V.

DEFENDANTS:

MR. TILTON DIRECTOR / SECRETARY.
ROBERT HOREL PBSP WARDEN
CYNTHIA SCAVETTA ASSOCIATE WARDEN.
LT. MARQUEZ FORMER I.G.I.;
LT. J A MCKINNEY I.G.I.
LT. R. RICE I.G.I.
SGT. RANDOLPH, I.G.I
SGT. MOORE, I.G.I.
CO. COUNTESS I.G.I
SGT. BARNEBURG. I.G.I.
J. DIX, LEIU / OSC.
M. MATANO, LEIU / OSC.
J. MORENO, LEIU / OSC.
R. ROMAN, LEIU / OSC
EVERETTE W. FISHER (D.R.B.),
L. PUIG (CSR Board).
M. COOK (CSR Board).
D. ROTHCHILD (CSR Board).
J. HIGHTS I.G.I. INVESTIGATOR.
OFFICER I. PARKER D-4 FLOOR OFFICER.

        DEFENDANTS
          ET. AL,

C 07 4989
CASE NO.

COMPLAINT UNDER 42 U.S.C.
§1983
    DEMAND FOR JURY TRIAL,
AND INTER-DISTRICT ASSIGNMENT
TO JUDGE JAMES WARE, SAN JOSE
DIVISION.

(1).

1) JURISDICTION.

THIS COURT, THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA HAS JURISDICTION OVER
THIS COMPLAINT BECAUSE IT ARISES UNDER THE LAWS OF THE
UNITED STATES, AND VIOLATIONS OF FEDERAL CONSTITUTIONAL
RIGHTS, 42 U.S.C. § 1983.

2). VENUE.

VENUE IS APPROPRIATE IN THIS COURT BECAUSE DEFENDANTS
RESIDE IN THIS DISTRICT, AND A SUBSTANTIAL AMOUNT OF THE
FACTS, ACTS AND OMISSIONS GIVING RISE TO THIS LAWSUIT
OCCURRED IN THIS DISTRICT.

3). INTRA-DISTRICT ASSIGNMENT.

DUE TO THE EVENTS LEADING UP TO THE VIOLATIONS, AND BE-
CAUSE PLAINTIFF PIÑA WAS SENTENCED TO PRISON OUT OF SANTA
CLARA COUNTY, ASKS THAT THE LAWSUIT BE ASSIGNED TO THE SAN-
JOSE, CALIFORNIA DIVISION OF THIS COURT, BECAUSE THE VIOLATION
BEGAN IN THAT DISTRICT, AND ASKS THAT IT BE ASSIGNED TO JUDGE  J.
WARES' COURT. (N. DIST. CT. SAN JOSE DIVISION) 280 SOUTH FIRST ST. SAN JOSE
CALIF. 95113    (HONORABLE JAMES WARE).

PLAINTIFFS. PABLO PIÑA D-28079. EDDIE GARCIA D-48876. RALPH TRUJILLO D-09285.

4). PLAINTIFF P. PIÑA WAS ARRESTED IN 1984 AND FROM THAT
DAY TO PRESENT HAS BEEN HELD IN THE SECURITY HOUSING UNIT
(SHU), IN VIOLATION OF HIS AND NAMED PLAINTIFFS EIGHTH
AMENDMENT CONSTITUTIONAL RIGHTS.

5). PLAINTIFF R. TRUJILLO ARRIVED AT PELICAN BAY STATE
PRISON ON 10/29/07, AND HAS BEEN HELD IN (SHU) FROM HIS
ARRIVAL TO PRESENT, IN VIOLATION OF HIS AND NAMED PLAIN-
TIFFS EIGHTH AMENDMENT CONSTITUTIONAL RIGHTS.

6). PLAINTIFF E. GARCIA FOR OVER TEN (10) YEARS HAS BEEN
HELD IN THE (SHU) AT PELICAN BAY STATE PRISON, IN VIOLATION
OF HIS EIGHTH AMENDMENT CONSTITUTIONAL RIGHTS.

7). PLAINTIFFS ET. AL, JOHN DOES

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-4

DEFENDANTS:

1). DEFENDANT TILTON (DIRECTOR/SECRETARY) OF CALIFORNIA STATE PRISONS AND OVERSEER OF PRISONS AND PRISONERS WELFARE.

9). DEFENDANT R. HOREL (WARDEN) OF PELICAN BAY STATE PRISON, IN CONTROL OF THE CUSTODY AND CARE OF PLAINTIFFS AND RESPONSIBLE FOR THEIR HEALTH, WELFARE AND CUSTODY.

10). DEFENDANT C. SCAVETTA (ASSOC. WARDEN) OF PELICAN BAY STATE PRISON, RESPONSIBLE FOR THE CUSTODY OF (SHU) PRISONERS AND THEIR CONTINUED HOUSING INSIDE THE (SHU), AND IS THE CHAIRPERSON AT THE ANNUAL COMMITTEE HEARINGS.

11). DEFENDANT LT. MARQUEZ (INSTITUTIONAL GANG INVESTIGATOR) RESPONSIBLE FOR THE GATHERING OF INFORMATION/EVIDENCE TO BE USED TO CLASSIFY PRISONERS AS ACTIVE GANG MEMBERS.

12). DEFENDANT LT. J.A. MCKINNEY ( I.G.I. ) RESPONSIBLE FOR THE GATHERING OF INFORMATION/EVIDENCE TO BE USED TO CLASSIFY PRISONERS AS ACTIVE GANG MEMBERS.

13). DEFENDANT SGT. M. RANDOLPH (I.G.I.) RESPONSIBLE FOR THE GATHERING OF INFORMATION/EVIDENCE TO BE USED TO CLASSIFY PRISONERS AS ACTIVE GANG MEMBERS.

14). DEFENDANT CO. J. HIGHTS (I.G.I.) RESPONSIBLE FOR THE GATHERING OF INFORMATION/EVIDENCE TO BE USED TO CLASSIFY PRISONERS AS ACTIVE GANG MEMBERS.

15). DEFENDANT CO. C. COUNTESS (I.G.I.) RESPONSIBLE FOR THE GATHERING OF INFORMATION/EVIDENCE TO BE USED TO CLASSIFY PRISONERS AS ACTIVE GANG MEMBERS.

16). DEFENDANT C.C. D. BARNEBURG (I.G.I.) RESPONSIBLE FOR THE GATHERING OF INFORMATION/EVIDENCE TO BE USED TO CLASSIFY PRISONERS AS ACTIVE GANG MEMBERS.

AND SGT. BARNEBURG, I.G.I. HAd KNOWLEdGE OF FABRICATED INFORMATION THAT WAS USED TO BAN FEMALE OFFICER FROM ENTERING D-4 BY OTHER OFFICERS. ANd did NOTHING TO CORRECT IT.

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-4

17). DEFENDANT J. DIX (LAW ENFORCEMENT LIASON UNIT/SSU) RESPONSIBLE FOR REVIEWING AND APPROVING THE (I.G.I.) REPORTS AND RECOMMENDATIONS.

18). DEFENDANT M. HATANO (LEIU/SSU) RESPONSIBLE FOR REVIEWING AND APPROVING THE (I.G.I.) REPORTS AND RECOMMENDATIONS.

19). DEFENDANT J. MORENO (LEIU/SSU) RESPONSIBLE FOR REVIEWING AND APPROVING THE (I.G.I.) REPORTS AND RECOMMENDATIONS.

20). DEFENDANT R. ROMAN (LEIU/SSU) RESPONSIBLE FOR REVIEWING AND APPROVING THE (I.G.I.) REPORTS AND RECOMMENDATIONS.

21). DEFENDANT E.W. FISHER (DIRECTORS REVIEW BOARD CHAIRMAN) RESPONSIBLE FOR MAKING FINAL DECISION ON CONTINUED (SHU) PLACEMENT AND CLASSIFICATION OF ACTIVE GANG MEMBERS BASED ON REPORT'S AND RECOMMENDATIONS BY (I.G.I.) AND (LEIU/SSU).

22). DEFENDANT L. DUIG (CLASSIFICATION STAFF REPRESENTATIVE) APPROVES FINAL DECISION ON CONTINUED (SHU) PLACEMENT OF SUSPECTED GANG MEMBERS.

23). DEFENDANT M. COOK (CSR) APPROVES FINAL DECISION ON CONTINUED (SHU) PLACEMENT OF SUSPECTED GANG MEMBERS.

24) DEFENDANT D. ROTHCHILD (CSR) APPROVES FINAL DECISION ON CONTINUED (SHU) PLACEMENT OF SUSPECTED GANG MEMBERS.

25). DEFENDANT, CURRENT CAPTAIN OR LT. OF (I.G.I.) FOR USING PLAINTIFF IN A RETALIATION OF ANOTHER CORRECTIONAL OFFICER. R. RICE

26). DEFENDANTS, ANY AND ALL OTHER'S NOT NAMED, BUT RESPONSIBLE FOR PLAINTIFFS CONTINUED (SHU) PLACEMENT AND CLASSIFYING PLAINTIFFS AS ACTIVE GANG MEMBER

27). SGT. MOORE is ALSO ONE OF THE I.G.I. SET'S ASSIGNED TO THE SHORT CORRIDOR UNITS. HAd KNOWLEDGE OF THE USE OF PLAINTIFF PIÑA INACCURATELY USED WITH FALSE INFORMATION TO RETALIATE AGAINST AN OFFICER BY OTHER OFFICERS.

28). OFFICER I. PARKER. FILING INFORMATION AGAINST ANOTHER OFFICER CAUSING PLAINTIFF TO PUT THAT OFFICERS JOB/INTEGRETY IN JEOPARDY.

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-4

(4)

FACTS

1.) THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILI-TATION HAS HELD PLAINTIFFS IN THE SECURITY HOUSING UNIT(SHU) OVER 10 YEARS, AND IN THE CASE OF PLAINTIFF P. PIÑA. OVER 23 YEARS AND WHICH IS THE BASIS FOR THIS LAWSUIT.

2.) PELICAN BAY STATE PRISON HOUSES THE MAJORITY OF CALIFORNIA PRISONERS WHOM THEY CONSIDER TO BE ACTIVELY PARTICIPATING IN GANG ACTIVITY.

3.) IN 1989 PLAINTIFFS WERE SENT TO THE NEWLY OPENED PELICAN BAY STATE PRISON (SHU) AT CRESCENT CITY, CALIFORNIA. AS WERE HUNDREDS OF PRISONERS FROM ALL OVER CALIFORNIA (SHU)."

4.) PELICAN BAY STATE PRISON (SHU) WAS SUPPOSED TO BE THE PRISONS LARGEST (SHU), AND LAST STOP. WHERE MOST PRISONERS WOULD SERVE THEIR LIFE TERM HOUSED IN THE (SHU), UNLESS THEY DEBRIEFED, PAROLED OR DIED. CALIFORNIA DEPARTMENT OF CORRECTIONS DIRECTOR THEN IMPLEMENTED A NEW POLICY WHERE PRISONERS WHO WERE CLASSIFIED AS ACTIVE GANG MEMBERS COULD BE RELEASED FROM THE (SHU) IF THEY SHOWED THEY HAVE BEEN INACTIVE OF ANY GANG ACTIVITY FOR OVER SIX YEARS. SEE EXHIBIT A - CCR.TITLE 15 §3378 - 3378-5 (c)-(e).

5.) ON SEPTEMBER 11th, 2005 PLAINTIFF PIÑA WAS DENIED RELEASE TO THE GENERAL POPULATION AND RECLASSIFICATION OF HIS GANG STATUS FROM ACTIVE TO INACTIVE. SEE EXH. B . 602 APPEAL OF 9/11/05.

6.) THE NEW POLICIES AND REGULATIONS HAVE NO OTHER CRITERIAS OR GUIDLINES, ONLY THAT A PRISONER MUST DEMONSTRATE THAT HE IS NOT ACTIVE WITH ANY GANG IN THE PAST SIX YEARS.

7.) HOWEVER, THE NEW POLICY AND PROCEDURE FOR INACTIVE STATUS IS NOT BEING AFFORDED TO ALL PRISONERS AS IT WAS DESIGNED FOR IN THE CCR TITLE 15. RULES OF THE DIRECTOR/SECRETARY.

8.) ONLY THOSE PRISONERS THAT THE PRISONS ADMINISTRATION AND GANG UNIT WANT TO LET OUT, RECEIVE A FAVORABLE RECOMMENDATION, REGARDLESS IF THE PRISONER'S IN THE (SHU) FOR OVER SIX YEARS' AND ARE QUALIFIED FOR RECLASSIFICATION AND INACTIVE STATUS.

9.) DEFENDANTS LT. MARQUEZ, SGT. RANDOLPH AND OTHER JOHN DOE (I.G.I.) INVESTIGATORS HAVE THE RESPONSIBILITY OF INTERVIEWING, GATHERING INFORMATION AND MAKING RECOMMENDATIONS TO THE INSTITUTIONAL COMMITTEE.

10.) THE INSTITUTIONAL GANG UNIT BASIS ITS RECOMMENDATIONS ON THE EVIDENCE THEY HAVE THAT PROVES A PRISONER IS STILL ACTIVE IN GANG ACTIVITY.

11.) HOWEVER, EVEN WITH INFORMATION WHICH PROVES A PRISONER, AS IN PLAINTIFFS CASE, THAT THE PRISONER IS NO LONGER INVOLVED IN ANY GANG ACTIVITY, THE (I.G.I.) CONTINUES TO CLASSIFY THESE PRISONERS AS BEING ACTIVELY INVOLVED IN GANG ACTIVITY, AND RECOMMENDS THEY BE KEPT IN (SHU).

12.) THIS IS IN COMPLETE VIOLATION OF WHAT THE INACTIVE STATUS RECLASSIFICATION WAS INTENDED FOR. SEE EXH. A . INACTIVE STATUS PROCEDURES. ALSO SEE EXH. C . COURT SETTLEMENT INRE STEVE CASTILLO CASE DATED 9/21/04. WHERE THE COURT HAS ORDERED THESE PROCEDURES AND GUIDELINES BE FOLLOWED BY PRISON ADMINISTRATION INRE TO THE CLASSIFYING OF PRISONERS.

13.) HOWEVER, GANG INVESTIGATORS WILL FABRICATE OR MISCONSTRUE INFORMATION IN ORDER TO DENY RECLASSIFICATION OF A PRISONER, OR USE MATERIAL THAT WAS NOT WRITTEN BY OR IN THAT PRISONERS POSSESSION, OR EVEN HAVING KNOWLEDGE OF ITS EXISTENCE.

14.) IN PLAINTIFFS P. PIÑAS CASE, THEY CLAIM TO HAVE A LETTER THAT WAS WRITTEN AND SENT TO PLAINTIFF FROM ANOTHER JAIL OR FACILITY, DESCRIBING GANG ACTIVITY.

15.). However, plaintiff was never shown this letter or told who sent it, denying plaintiff the opportunity to properly defend himself against this alleged incriminating letter.

16). Plaintiff vehemently denied writing or having knowledge of such letter, and according to the inactive status criteria, the prisoner had to have written or had in his possession alleged material.

17). The gang unit claims that a former gang member debriefed, at which time claimed that plaintiff Piña was still involved in gang activity because he (former gang member) personally sent plaintiff gang material, which was never found or confirmed.

18). The use of confidential information to deprive a prisoner of his right to due process by not allowing him access to the evidence or to question his accuser, violates the constitutions fourteenth amendment of the federal constitution.

19). Plaintiffs cannot adequately present a defense when prison officials rely on evidence that cannot be challenged.

20). Plaintiff Piña has now been in (SHU) for over 25 years, not for continued disruptive behavior, but because he was validated a gang member. A violation of the right to freedom of association,

21). Plaintiffs do not deny that they were associated with a gang, but believe their being denied the right to be reclassified as in-active status when they clearly fall within the criteria that was implemented for that purpose.

22). Defendants Horel and Scavetta review the material and recommendations from the (AGI) unit, and agree with their assessment and forwards the recommendations to the (CSR) board for continued segregation as active gang members, fully aware that the evidence is contradictory and does not meet the criteria for continued segregation. See Exh. D, dated 2/26/06, (CSR) board merely signs off in agreement.

(7)

23.). THE CRITERIA FOR RECLASSIFICATION IS THAT A PRISONER NOT PARTICIPATE IN ANY GANG ACTIVITY FOR SIX YEARS.

24.). WHEN A PRISONER IS DENIED INACTIVE STATUS AND IS RETAINED IN (SHU), HE IS TOLD TO DEBRIEF AND HE WILL THEN BE CONSIDERED FOR INACTIVE STATUS AND RELEASE FROM (SHU).

25.). THE GANG UNIT AND PELICAN BAY STATE PRISON OFFICIALS KNOW THAT BY REQUIRING A PRISONER TO DEBRIEF IN ORDER TO BE RELEASED FROM (SHU), PLACES THEIR LIVES IN JEOPARDY. BY FORCING THEM TO BECOME JAILHOUSE INFORMANTS. BECAUSE WHEN A PRISONER DEBRIEFS, HE MUST INCRIMINATE HIMSELF AND THOSE HE ASSOCIATED WITH, OR FABRICATE INFORMATION IN ORDER TO GAIN A FAVORABLE RECOMMENDATION FROM THE POWERS THAT BE.

26.). THE GANG UNIT AND PELICAN BAY STATE PRISON OFFICIALS HAVE COERCED PRISONERS TO DEBRIEF WITH FULL KNOWLEDGE THAT ONCE A PRISONER BECOMES A JAILHOUSE INFORMANT, HE WOULD NEVER BE ABLE TO BE RELEASED TO GENERAL POPULATION WITHOUT THREAT OF ASSAULT, AND INSTEAD HOUSED IN PROTECTIVE CUSTODY.

27.). PRISONERS WHO DEBRIEF ARE FORCED TO LIVE IN ANOTHER FORM OF RESTRICTED CUSTODY LABELED AS INFORMANTS AND UNDER CONSTANT THREAT OF ASSAULT.

28.). PLAINTIFFS HARDSHIPS CONTINUE, AS THEY HAVE WHILE THEY HAVE BEEN HOUSED IN THE (SHU).

29.). PLAINTIFFS ARE ONLY GIVEN A HOUR AND A HALF OUT OF THEIR CELL PER DAY, AND KEPT IN THEIR CELL FOR THE REMAINDER.

30). PLAINTIFFS ARE ONLY ALLOWED LIMITED PROPERTY IN THE (SHU) AND DISALLOWED PROPERTY THATS ALLOWED TO THE GENERAL POPULATION PRISONERS.

31.) PLAINTIFFS ARE NOT ALLOWED PHONE PRIVILEGES TO COMMUNICATE WITH FAMILY AND FRIENDS, AS THE GENERAL POPULATION IS ALLOWED.

32). PLAINTIFFS ARE NOT ALLOWED CONTACT VISITS WITH FAMILY AND FRIENDS, AND REQUIRED TO VISIT IN A SEGREGATED SETTING BEHIND A GLASS PARTITION WITH ACCESS TO ONE PHONE SET WHICH THE THREE VISITORS (MAXIMUM ALLOWED PER PRISONER IN (SHU) ), ARE REQUIRED TO SHARE.

33). PLAINTIFFS MAIL IS SEVERELY RESTRICTED, SCREENED AND MONITORED BY THE (I.G.I.) AND PRISON OFFICIALS CAUSING IT TO BE DELAYED FOR WEEKS OR EVEN MONTHS AT A TIME BEFORE IT IS DELIVERED TO PLAINTIFFS CAUSING HARDSHIPS ON ALL CONCERNED.

34). FURTHERMORE, PRISON OFFICIALS RECENTLY IMPLEMENTED A NEW POLICY THAT ALL OUT GOING MAIL BE STAMPED (PELICAN BAY STATE PRISON, SECURITY HOUSING UNIT, UNIT D - 4 ) IN LARGE RED LETTERS OVER THE WRITTEN PART ON THE PAGES, POSTCARDS AND ENVELOPES.

35). THIS PRACTICE MAKES IT VERY DIFFICULT FOR FOR FAMILY AND FRIENDS TO READ BECAUSE THE LARGE STAMP IS PLACED RIGHT IN THE CENTER, FRONT AND BACK OVER THE WRITING ON EACH PAGE. THIS PROCEDURE NOT ONLY DEFACES OUT GOING MAIL BUT WAS IMPLEMENTED FOR THE SOLE PURPOSE OF INTIMIDATING AND DISCOURAGING OUR CORRESPONDANTS FROM MAINTAINING OR ESTABLISHING ANY TYPE OF RELATIONSHIPS.

36). PLAINTIFF PEJIA ATTEMPTED TO HAVE THIS POLICY ERADICATED. SEE EXH. E . 602 APPEAL DATED 12/8/06 .

37). (I.G.I.) MONITORS ALL OUR INCOMING AND OUTGOING MAIL AND CONFISCATES OR REJECTS MAIL WHICH THEY CLAIM IS IN VIOLATION OF THEIR MAIL PROCEDURES, YET FAIL TO FOLLOW THEIR OWN MAIL PROCEDURES OF NOTIFYING US OF MAIL THAT WAS RETURNED TO THE SENDER OR CONFISCATED, IN ACCORDANCE WITH INSTITUTION POLICIES.

38). (I.G.I.) AND PRISON OFFICIALS . OPEN, READ AND THOROUGHLY SCREEN ALL OF PLAINTIFFS MAIL, YET DEFENDANT SCAVETTA AND THE PRISON ADMINISTRATION CONTINUES TO IMPLEMENT FRIVOLOUS MAIL POLICIES IN ATTEMPTS TO DESTROY EXISTING RELATION-

SHIPS AND PREVENT NEW ONES FROM FORMING. A PUNITIVE ACT TOWARDS (SHU) PRISONERS WHO REFUSE TO DEBRIEF, AS THIS NEW PROCEDURE ONLY AFFECTS (SHU) PRISONERS AND THEIR FAMILIES. (IT DOES NOT APPLY TO THE GENERAL POPULATION.)

39.). PLAINTIFF PINA FILED A 602 APPEAL ON THIS NEW POLICY AND ITS EFFECTS TO HIS MAIL, BUT THE PRISONS APPEAL COORDINATOR REFUSED TO PROCESS THE APPEAL, CLAIMING THAT IT DOES NOT DEMONSTRATE HOW IT ADVERSELY AFFECTS HIM. SEE EXH. E . 602 APPEAL DATED 12/22/06. (DEFACING MAIL) SCREENING FORM.

40). PLAINTIFFS CANNOT RECEIVE A PROPER HEARING WHEN (P.B.S.P.) OFFICIALS REFUSE TO PROCESS 602 APPEALS, AS DID APPEALS COORDINATORS MR. BRADBURY AND MR. WILLBUR, AS CAN BE SEEN ON 602 APPEALS ATTACHED AS EXH. E .

41). PLAINTIFF PINA FILED AN APPEAL TO EXHAUST ADMINISTRATIVE REMEDIES ON A CLAIM THAT DEFENDANT SCAVETTA USED FALSE AND MISLEADING INFORMATION FROM (I.G.I.) ACCUSING PLAINTIFF OF BEING AN ACTIVE GANG MEMBER. SEE EXH. F . 602 DATED 4/17/06. THE 602 WAS NOT PROCESSED BY APPEALS COORDINATOR MR. WILLBUR, CLAIMING THERE WAS NO EVIDENCE TO PROVE ALLEGATIONS, OR THAT IT AFFECTED PLAINTIFF ADVERSELY. SEE EXH. F . SCREENING FORM DATED 5/9/06.

42). PLAINTIFFS ARE HOUSED IN THE (SHU) INDEFINATELY BECAUSE THEY ARE VIEWED AS GANG MEMBERS OR ASSOCIATES, NOT BECAUSE OF CONTINUED GANG ACTIVITY OR VIOLATIONS OF PRISON REGULATIONS.

43). PLAINTIFFS ARE SERVING LIFE SENTENCES WITH THE POSSIBILITY OF PAROLE, BUT WILL NEVER BE ALLOWED TO PAROLE FOR THE MERE FACT OF BEING IN (SHU).

44). DEFENDANTS NAMED AND NOT YET NAMED, REFUSE TO RELEASE PLAINTIFFS TO GENERAL POPULATION, CLAIMING THEY ARE A THREAT TO THE SECURITY OF THE PRISON AND TO THE GENERAL POPULATION. SEE EXH. H. DATED 2/17/06, 2/22/06, 3/30/06, WITH-OUT ANY FACTUAL EVIDENCE TO SUPPORT THEIR CLAIMS.

( 10 )

45) PLAINTIFF TRUJILLO HAS BEEN HELD IN THE (SHU) AT PELICAN BAY STATE PRISON SINCE 10/29/97 DUE TO HIS VALIDATION AS A GANG MEMBER / ASSOCIATE, HAVING BEEN DENIED ALL THE PRIVILEGES GRANTED TO THE GENERAL POPULATION FOR BEING HOUSED IN THE (SHU). SEE EXH. 14, DECLARATION DATED 6/17/04.

46). ON 12/17/00 PLAINTIFF TRUJILLO CHALLENGED HIS GANG VALIDATION THROUGH THE 602 APPEAL PROCESS AFTER HE WAS RECOMMENDED FOR (SHU) INDETERMINATE AS AN ACTIVE GANG MEMBER. SEE EXH. E-2, 602 DATED 2/17/00.

47). THE INFORMATION USED TO RETAIN PLAINTIFF TRUJILLO IN (SHU) WERE TWO CONFIDENTIAL MEMOS DATED 9/15/00 WHICH CONTAINED INFORMATION FROM 1996. AND MEMO DATED 9/15/00 WHICH CLAIMED PLAINTIFFS NAME WAS FOUND ON ROSTER THAT WAS DISCOVERED SUPPOSEDLY IN ANOTHER ACTIVE GANG MEMBER CELL. SEE EXH. E-2, GANG STATUS REVIEW DATED 11/13/00.

48). ON 1/9/04 PLAINTIFF TRUJILLO RECEIVED TWO GANG VALIDATION CHRONOS LISTING ITEMS THAT MET VALIDATION REQUIREMENTS. FIRST CHRONO CONTAINED ITEMS DATED 5/22/89, 4/20/89, 4/20/89, 4/20/89, 4/17/89. ON SECOND CHRONO CONTAINED ITEMS DATED 6/12/90, 9/5/87, 12/27/88, 9/15/00, AND 8/15/00. ALL OF WHICH SUPPOSEDLY MET VALIDATION REQUIRE-MENTS.

49). ON 1/22/04 PLAINTIFF TRUJILLO CHALLENGED THE ITEMS BEING USED TO VALIDATE HIS AS A ACTIVE GANG MEMBER. THROUGH THE 602 APPEAL PROCESS SEE EXH. E-2, 602 DATED 1/22/04.

50). ON THE SECOND LEVEL, RESPONSE DATED 4/1/04 TO 602 APPEAL DATED 1/22/04, IT WAS DISCOVERED THAT PLAINTIFFS LAST INVOLVE-MENT WITH ANY GANG WAS IN 1996, FURTHERMORE BASED ON THE CRITERIA FOR THE ACTIVE / INACTIVE REVIEW PROCESS, THE ITEMS USED IN THE VALIDATION PROCESS WERE OUTDATED AND WITHOUT MERIT AND WARRANTED AN ACTIVE / INACTIVE REVIEW IN THE (I.S.I.) UNIT. SEE EXH. E-2, RESPONSE TO 602 DATED 1/22/04.

51 ). ON 3/30/07, OVER THREE YEARS AFTER THE SECOND LEVEL REVIEW FOUND MATERIAL BEING USED TO VALIDATE PLAINTIFF TRUJILLO WAS OUTDATED AND WITHOUT MERIT, THE (I.G.I.) UNIT FINALLY INITIATED AN INVESTIGATION INTO PLAINTIFF TRUJILLO'S ACTIVE/INACTIVE STATUS. SEE EXIT- H    . DATED. 4-5-07

52 ). THE (I.G.I.) UNIT NOW CLAIMS THAT PLAINTIFF TRUJILLO'S CENTRAL FILE REVEALED INFORMATION INDICATING CURRENT GANG INVOLVEMENT OR ACTIVITY, SPECIFICALLY A STAR USED AS A LOGO ON PLAINTIFFS ARTWORK WHICH DEFENDANTS INSIST IS BEING USED AS A GANG SYMBOL, AND WRITTEN MATERIALS FROM SELF-HELP BOOKS AND INSTITUTIONAL LEARNING VIDEOS, WHICH DEFENDANTS INSIST IS TRAINING MATERIAL THAT IS REQUIRED BY PRISON. GANGS IN ORDER TO MOVE UP THROUGH THEIR RANKS. SEE EXIT- H    . DATED. 4-5-07

53 ). PLAINTIFF E. GARCIA HAS BEEN HELD IN THE (SHU) AT PELICAN BAY STATE PRISON SINCE 1991-92. ALTHOUGH THE ORIGINAL RULE VIOLATION FOR WHICH HE WAS PLACED IN (SHU) WAS DISMISSED, PRISON OFFICIALS LABELED HIM AN ACTIVE GANG MEMBER AND A THREAT TO THE GENERAL POPULATION AND ITS PRISONERS, TO JUSTIFY HIS CONTINUED RETENTION IN THE (SHU) INDEFINATELY.

54 ). PLAINTIFF GARCIA HAS APPEARED BEFORE THE PAROLE BOARD TWICE AND DENIED PAROLE BECAUSE HE IS IN THE (SHU), AND UNABLE TO MEET THE BOARDS REQUIREMENTS LIKE EDUCATION AND VOCATIONAL TRAINING AS WELL AS OTHER AREAS HE CANNOT COMPLETE HOUSED IN THE (SHU). SEE EXIT- H . DECLARATION DATED 6/17/05.

55 ). PLAINTIFF GARCIA'S CONTINUED RETENTION IN (SHU) AS WELL AS THE OTHER PLAINTIFFS, VIOLATES THEIR CONSTITUTIONAL RIGHTS TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT UNDER THE STATE AND FEDERAL CONSTITUTION.

56 ). PLAINTIFFS HAVE AND CONTINUE TO BE DISCIPLINARY FREE AND HAVE/CONTINUE TO REFRAIN FROM ANY GANG ACTIVITY WITH ANY GANG INSPITE OF THEIR RETENTION IN THE (SHU).

57). DEFENDANTS SGT. BARNEBURG, SGT. MOORE AND LT. RICE HAVE ALLOWED THE USE OF FABRICATED INFORMATION AND OR REPORTS FROM OFFICER PARKER SO SHE Could RETALIATE AGAINST ANOTHER FEMALE OFFICER SEE EXHIBIT E-1, dATED 8/8/07.

58). DEFENDANTS HAD USED THIS FALSE INFORMATION TO discipline THE FEMALE OFFICER BY ORDERING THAT SHE BE BANNED FROM EVER WORKING IN D-4, AND FROM EVER GOING INTO PLAINTIFF' PIÑA SECTION OF THE UNIT.

59). PLAINTIFF PIÑA HAS NEVER HAD ANY CONTACT WITH THE FEMALE OFFICER THEY ARE ATTEMPTING TO MAKE LOOK BAD, AND discipline

60). PLAINTIFF PIÑA HAS OVER HEARD VARIOUS CONVERSATIONS BY CORRECTIONAL STAFF WHO WERE TALKING ABOUT FILING REPORTS ON THE FEMALE OFFICER, NOT BECAUSE OF PLAINTIFF BUT BECAUSE OF PERSONAL CONFLICTS OR FEELINGS AGAINST THAT OFFICER.

61). PLAINTIFF PIÑA FEELS THAT THE USE OF HIM OR HIS NAME ASSOCIATED WITH THEIR ATTACK ON THAT FEMALE OFFICER IS SLANDERING HIS NAME, AND THE DEFENDANTS ARE LIBEL FOR THE FALSELY USE OF HIS PERSON.

62). PLAINTIFFS PIÑA, TRUJILLO WERE MOVED FROM THEIR REGULAR SHU HOUSING UNITS TO A NEWLY DESIGNATED GANG UNIT IN THE SMALL CORRIDOR, BLOCKS 1 THRU 4.

63). THESE UNITS ARE USED TO HOUSE ALL ACTIVE GANG MEMBERS WHO THEY I.G.I. BELIEVE ARE LEADERS OR INFLUENTIAL IN GANG ACTIVITY.

64). AT NO TIME WAS PLAINTIFF PIÑA OR TRUJILLO ALLOWED TO CHALLENGE OF THIS NEW HOUSING ASSIGNMENT.

65). THEY WERE TOLD ONLY THAT THE ORDER CAME FROM SACRAMENTO, AND THEY HAD A LIST OF 300 NAMES THEY HAVE TO MOVE, AND IT WAS MANDATORY.

66). THE REASON FOR REHOUSING PLAINTIFFS AND OTHERS IN THIS AREA IS TO FURTHER SEGREGATE THEM FROM OTHER PRISONERS IN THE (SHU) AND TOTALLY ISOLATING THEM.

67). THE DEFENDANTS CAN NOW CONCENTRATE ON MONITORING THEIR MAIL AND RESTRICTING THESE PRISONS EVEN MORE THEN THE REGULAR (SHU) PRISONERS AND GENERAL POPULATION.

68). ALL PLAINTIFF'S MAIL THAT IS SENT TO THEM IN THESE UNITS MUST FIRST BE READ BY (I.G.I) GANG UNIT. THEN SENT TO THE UNIT WHERE ITS READ, OR SCREENED AGAIN BY THE UNIT OFFICER PARKER. AND MOST MAIL IS SENT TO I.G.I. A SECOND TIME. THIS IS ALSO DONE TO ALL OUT GOING MAIL AS WELL.

69). OFFICER PARKER RECIEVED A LEGAL LETTER FROM AN ATTORNEY TONY SERRA FOR PLAINTIFF PIÑA. THE ENVELOPE WAS CLEARLY MARKED LEGAL MAIL, ALL OVER THE ENVELOPE NOT JUST ONCE. YET PARKER SENT THIS LETTER TO I.G.I. WITH A NOTE ASKING IF THAT WAS A LEGAL LETTER.

70). PLAINTIFF PIÑA SENT A COMPLAINT TO (I.G.I.) REGARDING OFFICER PARKER'S CONDUCT ON OR ABOUT AUGUST/SEPT. 2006. BUT NOTHING WAS EVER SAID OR DONE AS FAR AS PLAINTIFF KNOWS.

71). OFFICER PARKER'S DUTY AS THE FLOOR OFFICER IS TO COLLECT ALL MAIL AND SCREEN IT AS WELL AS STAMP IT WITH THE (UNIT D-4 SHU) STAMP THEN FORWARD IT TO (I.G.I) OR OTHER DESTINATIONS.

72). IT WAS ABOUT THIS TIME THAT PLAINTIFF PIÑA BEGAN NOTICING THAT PARKER WAS CAMPAIGNING AGAINST ANOTHER FEMALE OFFICER THAT SOMETIMES WORKS IN THE UNIT OR COMES TO HELP OUT WITH PASSING OUT FOOD ETC.
PARKER BEGAN TELLING AN OLDER LADY IN CONTROL THAT THEY SHOULD FILE REPORTS ON THIS OFFICER. SEE EXHIBIT E-1 DATED 8/2/07.

73). PARKER WAS CONSTANTLY TELLING OTHER OFFICERS THEY SHOULD FILE REPORTS ON THIS ONE FEMALE OFFICER.

74). A THIRD WATCH SGT. WHO I don't KNOW HIS NAME WAS CONSTANTLY IN THE UNIT DISCUSSING WITH PARKER ABOUT THAT OTHER FEMALE OFFICER. IT SEEMES HE WAS TELLING PARKER HOW THEY SHOULD GET THAT OFFICER REMOVED, DISCIPLINED OR WORSE. THE WHOLE POD COULD HEAR THEM.

75). AT FIRST IT WAS JUST SOUNDING LIKE A SOAP OPERA, ONE FEMALE ATTACKING AN-OTHER'S CHARACTER. AND GOSSIP.

76). BUT THEN PLAINTIFF STARTED TO HEAR HIS NAME AND CELL NUMBER BEING TOSSED AROUND IN THESE CONVERSATIONS, AS IF HE WAS INVOLVED IN SOME WAY.

77). IT WASN'T UNTIL PLAINTIFF PIÑA HEARD THAT SGT. SAYING THAT THEY ARE GOING TO GET THAT OFFICER BANNED FROM WORKING IN D-4. AND FROM GOING INTO (A-POD) THAT IT ALL BEGAN TO MAKE SENSE.

78). PLAINTIFF PIÑA WAS HEARD ALOT OF RHETORIC CONCERNING HOW THE (SHU) STAFF HAVE BEEN BOUNCING THAT OTHER OFFICER ALL OVER THE PRISON TO KEEP HER FROM WORKING (SHU). ALL BECAUSE OF WHAT PARKER AND OTHERS HAVE STARTED, A FALSE RUMOR. AND USING HIS NAME TO GET IT DONE.

79). AT NO TIME WAS PLAINTIFF ASKED ABOUT THIS, NOR GIVEN ANY NOTICE OF IT. INSTEAD IT WAS BEING QUIETLY USED TO DISCIPLINE THAT OFFICER

80). PLAINTIFF PIÑA HAS ASKED FOR COPIES OF THE COMPLAINTS, OR REPORTS FILED AGAINST THAT OFFICER SO HE COULD USE THEM TO SHOW HOW (I.G.E.) AND THE DEFENDANTS CAN AND WILL USE INFORMATION, EVIDENCE THEY KNOW IS FALSE OR UNSUPPORTED TO GET TO ANY MEANS THEY SET OUT FOR.

81). PLAINTIFFS HAVE BEEN UNFAIRLY TREATED AND FALSELY ACCUSED OF MANY THINGS SINCE THEY WERE SENT TO PRISON, SO,

82). IT IS NOT SURPRIZING AT ALL, ESPECIALLY WHEN PLAINTIFF PIÑA AND PLANTIFFS ARE TRYING TO BE RECLASSIFIED AS INACTIVE GANG MEMBERS AND BE RELEASED TO FROM THE SHU.

83). THE GANG UNIT HAS STACKS OF CONFIDENTIAL INFORMATION THAT IS MOSTLY HERESAY, AND UNCORROBATED, AS WELL AS MOSTLY FABRICATED, BUT IT STILL MAKES PLAINTIFFS LOOK BAD JUST BY THE AMOUNT OF IT.

24). AND LIKE IN MOST CASES INFORMATION IS NOT GIVEN TO PLAINTIFFS SO THEY CAN NOT CHALLENGE IT, OR DEFEND AGAINST ITS ACCUSATION. AS IN THE CASE WITH THIS FEMALE OFFICER.

85). THE IRONY HERE IS THAT PLAINTIFF PIÑA DOES NOT TALK TO THE PRISON GUARDS AT ALL AND EVERYONE KNOWS THIS. PLAINTIFF CAN GET HUNDREDS OF AFFIDAVITS TO PROVE THIS.

86). SO WHATEVER (I.G.I.) AND PARKER HAVE FALSELY PUT TOGETHER, IS JUST THAT FALSE.

37). THE USE OF PLAINTIFF'S NAME AND CHARACTER TO RESOLVE A PERSONAL DISPUTE ADDS UP TO A VIOLATION OF HIS CIVIL RIGHTS. NOT TO MENTION THAT OF THEIR OFFICER.

88). PLAINTIFF PIÑA DOES NOT KNOW IF IT WAS (I.G.I.) WHO PUT PARKER UP TO THIS OR IF IT WAS THE OTHER WAY AROUND. BUT PARKER COULD NOT OF DONE THIS WITHOUT ANY HELP FROM HER SUPERVISORS. AS IN THAT SGT. WHO SPENDS ALOT OF TIME TALKING TO PARKER.

89). THAT SGT. SEEMS TO COME TO REPORT TO PARKER EVERYTHING HE HEARS REGARDING THAT OTHER FEMALE OFFICER, AND MAKES A PERSON WONDER WHO IS THE SUPERVISOR AND WHO THE SUBORDINATE.

90). AND IS THE OTHER FEMALE OFFICER GETTING AS MUCH HELP, AND ASSISTANCE FROM
ANY SGT. OR SUPERVISOR AS PARKER IS UNJUSTEDLY RECIEVING.

91). EVEN THOUGH THE COMPLAINT THAT WAS FILED WAS NOT DIRECTLY AGAINST PLAINTIFF,
THIS TYPE OF INFORMATION CAN ONLY CAUSE MORE PROBLEMS FOR PLAINTIFF WHEN
TRYING TO GET OUT OF SHU OR HOUSED ELSEWHERE IN (SHU) BECAUSE.

92). IF THAT PARTICULAR FEMALE IS IN A CERTAIN AREA OF THE PRISON, PLAINTIFF CAN'T
HAVE ACCESS TO IT. BECAUSE OF THIS FALSE COMPLAINT AND INFORMATION.

93). EACH OF THE NAMED DEFENDANTS HAS RELIED ON FALSE OR INCORRECT INFORMATION
THAT THEY KNOW IS UNTRUE, OR QUESTIONABLE, TO RETAIN PLAINTIFF'S IN THE
(SHU).

94). PLAINTIFF PIÑA HAS SEVERAL 602 APPEALS REGARDING HOW THIS MAIL IS HANDLED
HERE IN THE (SHU) AND BY THE MAIL ROOM. OPENING LEGAL MAIL THAT IS CLEARLY
MARKED LEGAL.

95). THE MAIL IS ALREADY SEVERELY RESTRICTED AND MONITORED, YET THEY NOW PLACE
A LARGE RED STAMP ACCROSS THE WRITTEN PORTION OF THE LETTER, SO AS TO
DISRUPT ITS CONTENTS, AND REMIND LOVED ONES, FRIENDS, FAMILY THAT IT CAME
FROM A PRISON. NOT TO MENTION DESTROYING THE MAIL. THIS ACTION PLACES MORE
HARDSHIPS ON PLAINTIFF'S AS ITS ONLY DONE IN THE SHU.

I DECLARE UNDER PENALTY OF PERJURY THE FOLLOWING IS TRUE AND
CORRECT TO THE BEST OF MY KNOWLEDGE.

DATED: 9/10/07

RESPECTFULLY SUBMITTED.

Pablo Pina
Ralph Trujillo

17.

LEGAL CLAIMS:

PLAINTIFF'S HAVE BEEN DEPRIVED OF THEIR RIGHT TO A FAIR AND IMPARTIAL HEARING AND REVIEW OF ALL EVIDENCE USED TO KEEP THEM IN INDEFINATE SEGREGATION, IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND THE DUE PROCESS CLAUSE OF THAT AMENDMENT.

THE CONTINUED SEGREGATION AND HARDSHIPS SUFFERED BY THESE PLAINTIFF'S CONSTITUES CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.

DEFENDANTS FAILURE TO RECLASSIFY THE PLAINTIFFS AS INACTIVE GANG MEMBERS WHEN THEY HAD SUFFICIENT EVIDENCE TO SHOW PLAINTIFF'S WERE NOT ACTIVELY PARTICIPATING IN ANY GANG ACTIVITY WITH THEIR FORMER GANG. VIOLATES THE DUE PROCESS CLAUSE OF FOURTEENTH AMENDMENT.

DEFENDANTS INTENTIONAL DESTRUCTION, AND DEFACING OF PLAINTIFF'S MAIL SENT FROM THE(SHU) TO FAMILY, FRIENDS, INFRINGES ON THEIR FIRST AMENDMENT GUARANTEED RIGHTS, TO FREELY EXPRESS THEMSELVES WITHOUT STATE OR FEDERAL RESTRICTIONS, VIOLATES THE UNITED STATES CONSTITUTION'S FIRST AMENDMENT.

DEFENDANTS CONTINUED CLASSIFICATION OF THE PLAINTIFFS AS ACTIVE GANG MEMBERS BASED ON UNRELIABLE INFORMATION FROM EX-GANG MEMBERS WHO DEBRIEFED, AND DEPRIVE PLAINTIFF'S THE RIGHT TO CHALLENGE THIS CONFIDENTIAL INFORMATION VIOLATES THEIR RIGHT TO DUE PROCESS, AND THE FOURTEENTH AMENDMENT.

DEFENDANTS REFUSAL TO ALLOW PLAINTIFF'S TO FILE AND EXHAUST 602 APPEALS REQUIRED BY THE PRISON LITIGATION REFORM ACT, VIOLATES THEIR RIGHT TO DUE PROCESS AND THE FOURTEENTH AMENDMENT.

WHEREFORE, PLAINTIFFS HAVE NO PLAIN ADEQUATE OR COMPLETE REMEDY AT LAW TO REDRESS THE WRONGS DESCRIBED HEREIN, PLAINTIFFS HAVE BEEN AND WILL CONTINUE TO BE IRREPARABLY INJURED BY THE CONDUCT OF THE DEFENDANTS. UNLESS THIS COURT GRANTS THE DECLARATORY AND ANY INJUNCTIVE RELIEF WHICH PLAINTIFFS SEEK. AND THIS COURT FEELS APPROPRIATE.

PLAINTIFFS THEREFORE RESPECTFULLY PRAY THAT THIS COURT ENTER JUDGMENT AND GRANT THEM;

1). A DECLARATORY JUDGMENT THAT THE DEFENDANTS ACTS, POLICIES, AND PRACTICES DESCRIBED HEREIN VIOLATE PLAINTIFFS RIGHTS UNDER THE UNITED STATES CONSTITUTION.

2). A PRELIMINARY AND PERMANENT INJUNCTION WHICH;

    A). REQUIRES DEFENDANTS AND ALL JOHN DOE'S AND THEIR SUCCESSORS TO SEE THAT THE POLICIES AND PROCEDURES FOR RECLASSIFYING GANG MEMBERS WHO FALL WITHIN THE CRITERIA IN CCR TITLE 15 FOR INACTIVE GANG STATUS BE FOLLOWED.

    B). REQUIRE THAT DEFENDANTS AND JOHN DOE'S AND THEIR SUCCESSORS ALSO ALLOW PLAINTIFFS AND ALL PRISONERS TO EXHAUST ADMINISTRATIVE REMEDIES THROUGH APPEALS PROCESS,

    C). REQUIRE THAT THE NEW POLICY IMPLEMENTED TO DESTROY AND DEFACE ALL (SHU) OUT-GOING MAIL BE RECINDED.

    D). REQUIRES THAT DEFENDANTS ALLOW PLAINTIFFS AND OTHER PRISONERS TO 1). ENGAGE IN ANY ORAL OR WRITTEN COMMUNICATION WHICH IS RELATED TO THE COMPLETION OF THIS LAWSUIT, INCLUDING PREPARATION OF AFFIDAVITS ON BEHALF OF PLAINTIFFS. 2). AND TO CONFER WITH CO-PLAINTIFFS AND PREPARE LEGAL PAPERS AND ANYTHING ELSE CONSISTENT WITH PRISON SECURITY.

3). COMPENSATORY DAMAGES IN THE AMOUNT OF $100,000    TO PLAINTIFF PIÑA AND SAME TO OTHER PLAINTIFFS FROM ALL DEFENDANTS AND EACH OF THEM. IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY.

4). PUNITIVE DAMAGES FOR THE TWENTY THREE YEARS OF EMOTIONAL STRESS $100,000 TO EACH OF THE PLAINTIFFS FROM DEFENDANT WARDEN ROBERT HOREL, DEFENDANT ASSOCIATE WARDEN CYNTHIA SCAVETTA. AND DEFENDANT LT. MARQUEZ (I.G.I). SGT. RANDOLPH (I.G.I) AND E.W. FISHER, (DRB). L.PWIG (ESR). DIRECTOR SECRETARY TILTON. J.DIX (LIEU) AGENT. CURRENT (I G.I ) LT. R. RICE. SGT. BARNBURG. C/O COUNTESS. SGT. MOORE.

5). TRIAL BY JURY ON ALL ISSUES TRIABLE BY JURY.

6). PLAINTIFF'S COST OF THIS LAWSUIT AND MATERIALS.

7). SUCH OTHER AND FURTHER RELIEF AS THIS COURT MAY DEEM JUST PROPER AND EQUITABLE.

8). INJUNCTION RELIEF.

RESPECTFULLY SUBMITTED.

PABLO PIÑA, D-23079 ( ~Pablo Piña~

RALPH TRUJILLO. . . . . ( ~Ralph Trujillo~

DATED: 9/16/07 .

EDDIE GARCIA. . . . . ~Eddie Garcia~

## VERIFICATION

I HAVE READ THE FOREGOING COMPLAINT AND HEREBY VERIFY THAT THE MATTERS ALLEGED THEREIN ARE TRUE, EXCEPT AS TO MATTERS ALLEGED ON INFORMATION AND BELIEF, AND AS TO THOSE I BELIEVE THEM TO BE TRUE. I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT.

EXECUTED AT PELICAN BAY STATE PRISON IN CRESCENT CITY, CALIF 95531

ON DATE: 9/16/07.

RESPECTFULLY

~Pablo Piña~

~Ralph Trujillo~

~Eddie Garcia~

MEMORANDUM OF POINTS
AND AUTHORITIES.

## ARGUMENT I.

PLAINTIFF'S CONTEND THAT THE DEFENDANTS PROCEDURES USED TO KEEP THEM IN
TOTAL SEGREGATION VIOLATES THEIR EIGHTH AMENDMENT FEDERAL CONSTITUTIONAL
RIGHTS, THUS;

WHEN THE SEGREGATION HAS BEEN FOR TWENTY YEARS AND MORE. AND IS BASED
SOLELY ON THE FACT THAT PLAINTIFF'S WERE INVOLVED OR ASSOCIATED WITH A
PRISON GANG.

DEFENDANTS HAVE RELIED ON EVIDENCE THEY GATHERED MANY YEARS AGO. AND
MOSTLY EVIDENCE FROM CONFIDENTIAL INFORMANTS.
THIS EVIDENCE CANNOT BE CHALLENGED BY PLAINTIFF'S BECAUSE PRISON OFFICIALS
CLAIM IT'S CONFIDENTIAL AND REFUSE TO GIVE ACCESS TO THIS EVIDENCE.

PLAINTIFF'S CANNOT RECIEVE A FAIR HEARING WHEN THEY CAN NOT CHALLENGE
THEIR ACCUSERS, AND OR EVIDENCE WHICH WAS GATHERED 20 YEARS OR MORE
AGO.

THIS DEPRIVING PLAINTIFFS OF AN IMPARTIAL AND FAIR HEARING GUARANTEED BY
CALIFORNIA AND UNITED STATES CONSTITUTION' FOURTEENTH AMENDMENT. AND THE
RIGHT TO DUE PROCESS.

DEFENDANTS CONTINUED CLASSIFICATION OF THE PLAINTIFFS AS ACTIVE GANG
MEMBERS BASED ON INFORMATION FROM EX-GANG MEMBERS' WHO DEBRIEFED
THE USE OF UNCHALLENGED OR UNTOUCHABLE INFORMATION VIOLATES THE
PLAINTIFFS RIGHTS, SEE WOLF V. MCDONNELL. 412 U.S. 539, 563-70, 94 S.CT.
2963, 41 L.Ed.2d 935 (1974). TOUSSAINT V. MCCARTHY, 801 F2d 1080, 1100 (9TH CIRC.
1986), CERT. DENIED, 481 U.S 1069, 107 S.CT. 2462, 95 L.Ed.2d 271 (1987).

PLAINTIFF'S CONTEND THAT A LIBERTY INTEREST IS AT STAKE, AND THE PRISONS ADMINISTRATION AND DEFENDANTS HAVE ALL CONSPIRED TO DEPRIVE THE PLAINTIFFS OF THEIR DUE PROCESS RIGHTS.

THE DUE PROCESS CLAUSE PROVIDES INMATES WITH TWO TYPES OF SAFEGUARDS. THE FIRST CATEGORY CONSISTS OF PROCEDURAL PROTECTIONS. GENERALLY, AN INMATE DESIGNATED FOR PLACEMENT IN SEGREGATED CONFINEMENT MUST RECIEVE ADEQUATE NOTICE, AN OPPORTUNITY TO BE HEARD, AND PERIODIC REVIEW.

THE SECOND TYPE OF SAFEGUARD CONSISTS OF EVIDENTIARY PROTECTIONS. PRISON OFFICIALS CANNOT DEPRIVE AN INMATE OF A CONSTITUTIONALLY PROTECTED LIBERTY INTEREST ABSENT A SUFFICIENT EVIDENTIARY BASIS.

THE SUPREME COURT HAS HELD THAT, AT THE VERY LEAST, THERE MUST BE "SOME EVIDENCE" IN THE RECORD SUPPORTING THE DECISION TO SEGREGATE AN INMATE, SUPERINTENDANT V. HILL, 472 U.S. 445, 454, 105 S CT. 2768, 86 L.Ed 2d 356 (1985). FURTHERMORE, THE EVIDENCE RELIED UPON MUST HAVE "SOME INDICIA OF RELIABILITY" CATO V. RUSHEN. 224 F2d 703, 705 (9TH CIRC. 1987).

THESE EVIDENTIARY PROTECTIONS OPERATE "TO PREVENT ARBITRARY DEPRIVATIONS WITHOUT THREATENING INSTITUTIONAL INTERESTS OR IMPOSING UNDUE ADMINISTRATIVE BURDENS." HILL, U.S. 472 AT 455, 105 S.CT. 2767.

PLAINTIFF'S DO NOT DENY THEIR GANG ASSOCIATION AT THE TIME THEY WERE FIRST PLACED IN THE SEGREGATED HOUSING UNIT, BUT CLAIM THAT THE DEFENDANTS HAVE HAD THE OPPORTUNITY TO REVIEW THEIR CASES AND HAVE DECIDED TO CONTINUE THEIR SEGREGATION BASED ON JUST THE INFORMATION THEY HAVE.

INFORMATION THAT IS FOR THE MOST PART OUT DATED, AND AFTER FIFTEEN, TWENTY, YEARS HAS LOST ITS IMPACT.

FOR EXAMPLE PLAINTIFF PIÑA does NOT dispute HIS DISCIPLINARY HISTORY WHILE AT PBSP, or;

WHILE IN PRISON BEFORE ARRIVING AT PELICAN BAY STATE PRISON, BUT THE THINGS HE did BACK THEN, HE SERVED ALL THE (SHU) TERMS, LOST WHAT EVER CREDIT HE WAS SUPPOSE TO. YET HE IS STILL BEING KEPT IN THE (SHU) FOR HIS ACTIONS DURING THOSE YEARS.

AND THIS IS THE SAME WITH THE PLAINTIFFS TRUJILLO AND GARCIA. THEY WERE ALSO PLACED IN THE (SHU) IN THE EARLY 1990's FOR disciplinary REASONS, BUT POINT OUT THAT THEY SERVED THEIR (SHU) TERMS FOR THOSE disciplinary VIOLATIONS. BUT ARE BEING KEPT IN THE (SHU) INDEFINATELY because OF GANG MEMBERSHIP, OR ASSOCIATION.

PLAINTIFFS CONTEND THAT THE INFORMATION BEING RELIED ON IS MORE THAN TEN YEARS OLD, IT HAS BEEN USED OVER AND OVER THROUGHOUT THE YEARS AND HAS HAS LOST ITS EFFECT, OR SHOULD HAVE, AS PLAINTIFF'S HAVE SERVED THEIR TIME IN (SHU) FOR THOSE VIOLATIONS.

PLAINTIFFS NEXT CONTEND THAT THE defendants USE OF MERE GANG ASSOCIATION FOR CONTINUED RETENTION IN THE (SHU) VIOLATES THEIR RIGHTS TO A FAIR AND IMPARTIAL HEARING AND THE ABILITY TO disprove THOSE ALLEGATIONS, BY THE defendants disclosing ALL THE INFORMATION THEY HAVE IN THEIR FILES.

CONFIDENTIAL INFORMATION LOSES ITS CONFIDENTIALITY EFFECT AFTER SEVEN-TEN YEARS, ACCORDING TO THE PUBLIC RECORDS ACT AND GOVERNMENT Code AND ALSO IN THE CALIFORNIA PRISONS (D.U.M. DEPARTMENTAL OPERATION MANUAL. SEE

YET WHEN ASKED FOR THIS INFORMATION, THE defendants REFUSE CLAIMING IT IS CONFIDENTIAL MATERIAL.

PLAINTIFF'S CANNOT THERE FORE RECIEVE A FAIR HEARING UNDER THESE CONDITIONS.

IN HILL SUPRA, ADMONISHES THAT COURTS SHOULD REFRAIN FROM REWEIGHING THE EVIDENCE WHEN CONDUCTING A DUE PROCESS EXAMINATION, AND INSTEAD LOOK TO SEE IF "THERE IS ANY EVIDENCE IN THE RECORD THAT COULD SUPPORT THE CONCLUSION REACHED BY THE DISCIPLINARY BOARD." HILL, 472 U.S. AT 455 56, 105 S.CT. 2768.

AN EVEN MORE IMPORTANT CHARGE HOWEVER, IS THAT COURTS MUST NEVER LOSE SIGHT OF THE NATURE OF THE LIBERTY DEPRIVATION THAT IS AT STAKE IN THE FIRST INSTANCE.

THAT IS THE CENTRAL LESSON OF SANDIN 515 U.S. AT 478, 115 S CT. 2293, THE NATURE OF THE DEPRIVATION IS THE PARAMOUNT CONSIDERATION IN THE DUE PROCESS ANALYSIS, CRITICALLY RELEVANT AT BOTH THE LIBERTY AND PROCESS STAGES OF THE INQUIRY. AS WE HELD IN OUR PRIOR OPINION, "SANDIN WAS AN ATTEMPT TO RETURN TO BASIC DUE PROCESS PRINCIPLES WHICH STRESS PROPORTIONALITY AND A BALANCING OF THE INTERESTS INVOLVED. MORE PROCESS IS DUE WHERE THE DEPRIVATION IS GREATEST."

## ARGUMENT II.

DEFENDANTS HAVE IMPLEMENTED A POLICY, OR REGULATION, CCR. TITLE 15 SECTION 3378(d)-(E). AND SECT. 3375 . WHICH IS WAS DESIGNED FOR PRISONERS THAT ARE IN THE SECURITY HOUSING UNIT (SHU) UNDER AN INDETERMINATE (SHU) TERM. THE POLICY STATES BRIEFLY THE CRITERIA THAT A SEGREGATED PRISONER MUST FIT, IN ORDER TO RECIEVE THE BENEFITS OF THIS NEW POLICY.

IN SHORT A GANG MEMBER WHO IS HOUSED IN THE (SHU) FOR INDETERMINATE STATUS AND HAS BEEN IN THE (SHU) FOR SIX YEARS. CAN APPLY FOR REVIEW AND IF HE CAN PROVE THAT HE HAS BEEN INACTIVE WITH HIS FORMER GANG FOR SIX YEARS. HE CAN BE RECLASSIFIED FROM ACTIVE TO INACTIVE GANG STATUS. AND BE RELEASED TO THE GENERAL POPULATION.

PLAINTIFF'S HAVE APPLIED FOR RECLASSIFICATION OF THEIR GANG STATUS AND
HAVE BEEN DENIED ON INFORMATION, THAT WAS SUPPLIED BY GANG INFORMANTS
WHO DEBRIEFED OR ON INFORMATION THAT WAS OBTAINED AND USED TO FIRST
RETAIN THEM IN THE (SHU) 10 15 20 YEARS AGO.

PLAINTIFF'S ARE NOT GIVEN ACCESS TO THE documents WHICH DEFENDANTS
RELY ON TO KEEP THEM IN THE (SHU) AS ACTIVE GANG MEMBERS, BUT ARE
EXPECTED TO ARGUE AND defend THEMSELVES AGAINST THIS INVISIBLE
EVIDENCE. A VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH
AMENDMENT OF THE UNITED STATES CONSTITUTION.

THE DEFENDANTS HAVE A RESPONSIBILITY TO CONDUCT INACTIVE HEARINGS AND
REVIEW OF PRISONERS (SHU) STATUS PERIODICALLY, AND AUTOMATICALLY AFTER
SIX YEARS REVIEW THEM FOR POSSIBLE INACTIVE STATUS.

WHILE DEFENDANTS MAY CONDUCT SUCH REVIEWS AS REQUIRED THEY HAVE
NO INTENTION OF RELEASING MOST PRISONERS FROM THE (SHU), AS IN PLAINTIFF'S
CASE THEY HAVE ALL BEEN DENIED RECLASSIFICATION, ON FLIMSY OR FALSE
EVIDENCE THAT WAS OBTAINED DURING THE DEBRIEFING PROCESS OF SOME
FORMER GANG MEMBERS.

PLAINTIFF'S CAN PROVE THAT THE INFORMATION RELIED UPON BY DEFENDANTS IS
FALSE AND INACCURATE, IF THEY CAN HAVE ACCESS TO ALL OF IT. BECAUSE THEY
KNOW THAT DEFENDANTS ARE ONLY SHOWING OR TALKING ABOUT THE ITEM'S
AND INFORMATION THAT IS HELPFUL AND HELPS CORROBORATE THEIR DISPOSITION.

INFORMATION THAT IS BEING RELIED ON TO KEEP A PLAINTIFF INDEFINATELY IN
THE (SHU) CANNOT BE KEPT FROM HIM, IF IT DEPRIVES HIM OF A LIBERTY
INTEREST. UNDER THE CONSTITUTIONS' FOURTEENTH AMENDMENT.

ARGUMENT III.

Defendants have recently implemented a new policy that requires that all mail either coming or being mailed by (SHU) prisoners is to be marked and defaced with a large red stamp across the written portion of the letter.
Thus destroying and defacing the letter, or artwork, photographs damaging them beyond repair before the letters are sent out of the prison.

Plaintiff Piña attempted to seek relief by filing a 602 appeal on date 12/3/06, arguing that the policy is an underground policy not approved by the director of prisons, or the office of administrative law.

The policy was written and put into effect by associate warden cynthia scavetta. See 602 appeal exhibit _E_ and attached memorandum dated 11/13/06.

Defendant scavetta decided that it was time to do something more to the (SHU) prisoners mail, it's not enough that the prison has mail procedures already in effect that are outlined in CCR TITLE 15 article 4, sect. 3130-3131-3132 etc, designed to screen all mail coming into the prison as well as being mailed out. See exhibit _E_. memorandum.

Then there's the institutional gang investigators who have their own mail procedures which are not written anywhere and are rogue policies.

Under there procedures mail is screened by the gang unit officers

and then the unit floor officers again. This usually delays the mail several days to weeks while they are searching it and reviewing it for any gang activity.

This is a violation of plaintiffs United States constitutional rights guaranteed under the First amendment.

Defendants are deliberately infringing on their right to correspond freely with people from the outside,

and damaging their letters and art work, photographs in the process.

Plaintiffs feel that the prisons administration is using these rogue and unapproved procedures to add to the already harsh treatment of every aspect of a (SHU) prisoners life, and adding to the hardship.

Plaintiffs rely on the mail to keep in contact with their family and friends,

Some of plaintiff's family and friends have complained that the letters they received were so badly stamped that they could not read the letter, and;

The exhibit memorandum attached to the 602 shows the dark stamp (which is a photo copy. and which is very it's dark). and how it destroys the letter.

The memorandum also shows that the policy was put into effect by the associate warden who does not have the authority to put such a policy into effect.

## Argument IV.

Plaintiff Piña has filed numerous 602 appeals since at Pelican Bay State Prison, and has noticed that Prison officials and the appeals coordinator have a double standard when it comes to processing prisoners appeals.

Plaintiffs have attempted to file appeals about the mail being destroyed, and about the indeterminate (SHU) procedures and inactive reviews of prisoners held in segregation. Along with medical issues and other issues.

The appeals coordinator and the administration process only the appeals they want to process. See attached exhibits __E__. various 602's which were screened out.

While prisoners have no constitutional right to the appeals process and a Grievance process under federal law.

Prisoners do have a constitutional right under federal law to access to the courts,

and in California the state courts demand that a prisoner first must exhaust all prison administrative remedies, before he can file any civil suits, petitions, small claims in any court.

This then changes the appeals process from one not protected by the constitution, to one that is. Because if the prison officials can screen out prisoners appeals any time they want.

They can, and have screened out appeals they don't want to end up in a court.

Plaintiffs have a right to appeal as is outlined in CCR Title 15 sections: Article-2, section 3084.1 (A) Right to Appeal;

## In conclusion

Plaintiff's have been retained in administrative segregation status since 1984 on the grounds that he has been validated as a member of the Nuestra Familia (NF) prison gang.

At the time Plaintiff's were told that they were active gang members and not qualified for the new inactive status in 1999.

Instead Plaintiff's were told that they must go through the debriefing process, whereby an inmate gives a detailed history of his involvement in a gang, revealing names of other gang members and their gang activity.

Plaintiff's now refer this court to the case which was heard recently in the northern District court of California, San Jose division, case number # C-98-21038 JW. In the case of Robert Lee Griffin V. James Gomez et.al.; decided by Judge James Ware. June 22nd 2006.

Plaintiff's maintain that no amount of evidence will persuade the respondents that they are inactive and should not be held in the (shu) under indeterminate (shu) status indefinitely.

Plaintiff Piña has more then twenty one years in the (shu) beginning from the time of his arrest and placed in the gang section in the county jail.

In summary Plaintiff's argue that the various components of the gang segregation and debriefing policies combine to establish conditions in violation of the eighth amendment. Keeping Plaintiff's in (shu) the rest of their lives.

In Madrid v. Gomez, 889 F.Supp. 1146 (N.D. Cal. 1995). The Court Found That Conditions in the Pelican Bay STATE PRISON (SHU) were Sufficiently harsh to constitute cruel and unusual punishment for inmates suffering from, or Partially Vulnerable to mental Illness, 889 F.Supp. at 1267. with regards to The General population, however. The court found That given the great deterrence accorded to prison administrators, conditions in The (shu) were not sufficient in and of Themselves to violate the eighth Amendment.

however these policies combined enhance the threat that each poses to Plaintiff's personal Safety. See wilson v. Seiter, 501 U.S. 294,304-05 (1991). (Individual conditions of confinement that do not violate the eighth amendment may combine to create an unconstitutional deprivation of an Identifiable human need).

Respondents/Defendents refusal to reconsider the classification of former gang Members who are unwilling to debrief to risk retaliation, renders these inmates Segregation not merely indeterminate, but effectively permanent.

and as in the case of Griffin has extended The Plaintiff's stay in The (SHU) for over twenty years.

The court in that case said that The sheer duration of the Plaintiff's Submission to The harsh conditions of The (SHU) crosses The line to become an unconstitutional Threat to Their mental health and safety.

The effect of duration on the Constitutionality of indeterminate Segregation depends on the facts of the individual case,

different courts, facing a variety of lengths of confinement under different circumstances, have come up with an array of conclusions. Periods of administrative segregation as short as five months have been found unconstitutional as in Jefferson v. Southworth, 447 F. Supp. 179, 188-189 (D.R.I. 1978).

No published decision, however has considered a period of administrative segregation as long as Griffin's and Plaintiffs.

The court said the longest period of segregation considered was twelve years.

The ware court found that under the circumstances of Griffin's case, further retention of the Plaintiff would violate the eighth amendment. The court said that the duration of Griffen's confinement in (SHU) for 20 years is a shockingly long period of time.

The court granted the petition in the behalf of Griffen and ordered that he be released from the (SHU). See Robert Lee Griffen v. Gomez. (Case # 5-98-cv-21033 J.W.);  See Appendix-1, court ruling.

Plaintiff's feel that their continued segregation will constitute a continued violation of their rights to be free of cruel and unusual punishment under the eighth amendment of the United States constitution.

I declare under penalty of perjury the following is true and correct.

Respectfully submitted.

Pablo Piña
PRO-SE.

Ralph Arujelo
Pro se.

Eddie Garcia
Pro-se.

Dated: 9/10/07