

1    **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

2                                                                    **FILED**

3    Name  PIÑA              PABLO            P.                    APR 2 3 2008

4         (Last)           (First)          (Initial)        **RICHARD W. WIEKING**
                                                              **CLERK U.S. DISTRICT COURT**
5    Prisoner Number    D-28079                               **NORTHERN DISTRICT OF CALIFORNIA**

6    Institutional Address  P.O. BOX 7500

7                    CRESCENT CITY. CALIF  95531

8    ================================================================

9                         **UNITED STATES DISTRICT COURT**
                          **NORTHERN DISTRICT OF CALIFORNIA**
10
     PABLO PAUL PIÑA
11   (Enter the full name of plaintiff in this action.)            )
                                                                   )
12                        vs.                                      )    Case No. C07-4989 S.I.
                                                                   )    (To be provided by the clerk of court)
13   JAMES TILTON  DIRECTOR/SECRETARY                              )
                                                                   )    **COMPLAINT UNDER THE**
14   ROBERT HOREL  PBSP -WARDEN )                                       **CIVIL RIGHTS ACT,**
                                                                   )    **42 U.S.C §§ 1983**
15                             ETAL,                               )
                                                                   )    1ST  AMENDED
16                                                                 )
     (Enter the full name of the defendant(s) in this action))         COMPLAINT
17                                                                 )

18   *[All questions on this complaint form must be answered in order for your action to proceed..]*

19   I.    Exhaustion of Administrative Remedies

20         [**Note:** You must exhaust your administrative remedies before your claim can go

21         forward. The court will dismiss any unexhausted claims.]

22         A.    Place of present confinement  PELICAN BAY STATE PRISON
                                               CRESCENT CITY, CALIF. 95531
23         B.    Is there a grievance procedure in this institution?

24               YES (X)    NO ( )

25         C.    Did you present the facts in your complaint for review through the grievance

26               procedure?

27               YES(X)    NO ( )

28         D.    If your answer is YES, list the appeal number and the date and result of the

     COMPLAINT                    - 1 -

1    appeal at each level of review. If you did not pursue a certain level of appeal,
2    explain why.
3    1. Informal appeal _THE INACTIVE REVIEW STATUS ANd (DRB)_
4    _disposition IS NOT APPEALABLE. ANd WAS REJECTED._
5    _____ SEE EXHIBIT - R  dated 9/11/05 _____ 2. First
6    formal level _AND SECTION IV. EXHAUSTION OF APPEALS._
7    _____
8    _____
9    3. Second formal level _____
10   _____
11   _____ 4 Third
12   formal level _____
13   _____
14   _____

15   E.    Is the last level to which you appealed the highest level of appeal available to
16         you?
17              YES (X)    NO ( )
18   F.    If you did not present your claim for review through the grievance procedure,
19   explain why. _THERE ARE SEVERAL APPEALS WHICH WERE NOT APPEAL(ED) TO THE_
20   _hiGHEST LEVEL BECAUSE THEY WERE REJECTED BY THE APPEALS COORDINATOR._
21   _SEE SECTION IV OF COMPLAINT. EXHAUSTION OF APPEALS FOR FURTHER_
22   _EXPLANATION._
     II.   Parties
23   A.    Write your name and your present address. Do the same for additional plaintiffs,
24         if any.
25   _PABLO PAUL PIÑA  D-28079_
26   _P.O. BOX 7500_
27   _CRESCENTCITY, CALIF 95531_
28   B.    Write the full name of each defendant, his or her official position, and his or her

1  place of employment.

2  JAMES TILTON DIRECTOR/SECRETARY. ET AL.

3  SEE DEFENDANTS SECTION II OF COMPLAINT

4  FOR FURTHER INFORMATION. AS THEY ARE MORE THEN

5  WOULD FIT HERE.

6  _____III.

7  Statement of Claim

8  State here as briefly as possible the facts of your case. Be sure to describe how each

9  defendant is involved and to include dates, when possible. Do not give any legal arguments or

10  cite any cases or statutes. If you have more than one claim, each claim should be set forth in a

11  separate numbered paragraph.

12  CLAIM-I: DEF'S HAVE HELD PLAINTIFF PIÑA IN TOTAL SEGREGATION OVER 20 YEARS

13  DUE TO GANG AFFILIATION. REQUIRING HIM TO DEBRIEF BEFORE HE CAN BE

14  RELEASED TO A GENERAL POPULATION. IN VIOLATION OF THE EIGHTH AMENDMENT.

15  CLAIM II: DEF'S POLICY THAT AFTER SIX YEARS IN SHU PLAINTIFF CAN BE RELEASED

16  FROM SHU, BUT REFUSE TO APPLY IT TO PLAINTIFF WHO IS WELL WITHIN THEIR

17  CRITERIA. IN VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS.

18  CLAIM III: DEF'S HAVE RECENTLY IMPLEMENTED A POLICY WHICH REQUIRES

19  ALL MAIL TO BE STAMPED ACROSS THE WRITING PORTION. DAMAGING AND/OR

20  DEFACING THE MAIL. AND PERSONAL PROPERTY.

21  CLAIM IV: DEF'S APPEAL SYSTEM AT PBSP AND THROUGHOUT CALIF. PRISONS

22  IS BEING DENIED TO PLAINTIFF TO PROCESS HIS APPEALS AND EXHAUST ALL

23  ADMINISTRATIVE REMEDIES. IN VIOLATION OF DUE PROCESS. AS IT IS A

24  REQUIREMENT THAT HE EXHAUST BEFORE GOING TO THE COURTS.

25  IV.    Relief

26  Your complaint cannot go forward unless you request specific relief. State briefly exactly

27  what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

28  I: THAT PLAINTIFF BE RECLASSIFIED AS AN INACTIVE GANG MEMBER AND

COMPLAINT                                - 3 -

1  DEF'S FOLLOW THEIR OWN PROCEDURES ALREADY ESTABLISHED IN THEIR

2  DEPARTMENT OPERATIONS MANUAL AND CCR TITLE 15, REGARDING INACTIVE

3  STATUS, APPEALS PROCESSING, 2). THAT THE PRACTICE OF DEFACING MAIL AND

4  STAMPING LETTERS BE ABOLISHED. 3). THAT ALL REFERENCES TO MISCONDUCT

5  AND REPORTS FILED USING PLAINTIFF'S NAME AND MCCOVEY BE REMOVED

6  FROM HIS FILES. 4). AND FINALLY DAMAGES AT A RATE OF $100.00 A DAY FOR EVERY

7  DAY SPENT IN SHU FROM TIME THEY SHOULD OF KNOWN HE WAS INACTIVE YET HELD HIM
   I declare under penalty of perjury that the foregoing is true and correct.

8

9  Signed this ___15TH___ day of ___APRIL___, 20_08_

10

11  _____

12                  (Plaintiff's signature)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                            - 4 -

PABLO PIÑA D-28079
P.O. BOX 7500   D-4-102*
CRESCENT CITY, CALIF 95531
    IN PRO-SE

- UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF CALIFORNIA.

PABLO PIÑA                                    CIV # C07-4989 S.I.
        PLAINTIFF.                            AMENDED COMPLAINT.
                                              FED. RULES CIV. PROC.
                                              RULE 15(A).
V.
ROBERT HOREL.
JAMES TILTON.
CYNTHIA SCAVETTA.
R.S. MARQUES.
M. RANDOLPH.
LT. RICE.
SGT. MOORE
SGT. BARNEBURG.
SGT. RANGEL.
SGT. HARDING.
M. FERGUSON.
I. PARKER.
J. DIX.
EVERETTE FISHER.
M. COOK.
N. GRANNIS.
P. CARRIER.
D. DEPEW
C.E. WILBUR.
    JOHN DOE.        DEFENDANTS.

## I.
### JURISDICTION AND VENUE

1). THIS IS A CIVIL ACTION AUTHORIZED BY 42 U.S.C. SECTION 1983 TO REDRESS THE DEPRIVATION UNDER COLOR OF STATE LAW, THE RIGHTS SECURED BY THE CONSTITUTION OF THE UNITED STATES.

THE COURT HAS JURISDICTION UNDER 28 U.S.C. SECTION 1331 AND 1343 (A)(3). PLAINTIFF IS SEEKING DECLARATORY RELIEF PURSUANT TO 28 U.S.C. SECTION 2201 AND 2202. PLAINTIFF ALSO SEEKS COMPENSATORY DAMAGES AGAINST EACH DEFENDANT.
PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF ARE AUTHORIZED BY 28 U.S.C. SECTION 2283 AND 2284, AND RULE 65 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

2). THE NORTHERN DISTRICT OF CALIFORNIA IS THE APPROPRIATE VENUE AND COURT UNDER 28 U.S.C. SECTION 1391 (B)(2). BECAUSE IT IS WHERE THE VIOLATIONS TOOK PLACE GIVING RISE TO THESE CLAIMS.

## II.
### PLAINTIFF

3). PLAINTIFF PABLO PIÑA D-28079, IS AND HAS AT ALL TIMES BEEN AN INMATE OF THE STATE OF CALIFORNIA, IN THE CUSTODY OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS.
AND IS CURRENTLY CONFINED AT PELICAN BAY STATE PRISON (SHU) AT CRESCENT CITY, CALIFORNIA 95531.

## III.
### DEFENDANTS

4). DEFENDANT JAMES TILTON, IS THE SECRETARY / DIRECTOR OF CORRECTIONS AND IS LEGALLY RESPONSIBLE FOR EXERCISING HIS POWER AND AUTHORITY THAT COMES WITH HIS POSITION AS OVERALL CUSTODIAN OF PLAINTIFF.

5). DEFENDANT ROBERT HOREL, IS THE WARDEN AT PELICAN BAY STATE PRISON, AND IS LEGALLY RESPONSIBLE FOR THE OPERATION OF PELICAN BAY STATE PRISON AND THE SECURITY HOUSING UNIT. AND THE HEALTH AND WELFARE OF INMATES AND PRISON STAFF. AND AT ALL TIMES MENTIONED WORKED FOR THE CDCR. UNDER COLOR OF STATE LAW.

6). DEFENDANT CYNTHIA SCAVETTA, IS AN ASSOCIATE WARDEN AT PELICAN BAY STATE PRISON AND WAS AT ALL TIMES MENTIONED WORKING FOR THE CDCR UNDER COLOR OF STATE LAW.

7). DEFENDANT R.S. MARQUEZ. IS EMPLOYED AS A SPECIAL SERVICES UNIT OFFICER (SSU) BUT WAS FORMERLY THE INSTITUTIONAL GANG INVESTIGATOR'S SUPERVISOR AND LIEUTENANT AT PELICAN BAY STATE PRISON AND AT ALL TIMES MENTIONED WORKING FOR THE CDCR UNDER COLOR OF STATE LAW.

8). DEFENDANT RICE, IS THE INSTITUTIONAL GANG INVESTIGATOR SUPERVISOR AND ASSUMED THE POSITION AND RESPONSIBILITY VACATED BY LT. MARQUEL. AND AT ALL TIMES MENTIONED WORKED FOR THE CDCR UNDER COLOR OF STATE LAW.

9). DEFENDANT SGT. M. RANDOLPH. IS AN INSTITUTIONAL GANG INVESTIGATOR AND AT ALL TIMES MENTIONED WORKED FOR THE CDCR UNDER COLOR OF STATE LAW.

10). DEFENDANT SGT. BARNBURG. IS AN INSTITUTIONAL GANG INVESTIGATOR AND AT ALL TIMES MENTIONED WORKED FOR THE CDCR UNDER COLOR OF STATE LAW.

11). DEFENDANT J. DIX, IS A LAW ENFORCEMENT LIASON UNIT OFFICER, AND AT ALL TIMES WORKED FOR THE CDCR UNDER COLOR OF STATE LAW.

12). DEFENDANT EVERETTE W. FISHER, DIRECTORS REVIEW BOARD. IS RESPONSIBLE FOR REVIEWING PLAINTIFF' GANG STATUS AND MAKING FINAL DECISION AS TO RETAIN HIM IN (SHU) INDEFINATELY. AT ALL TIMES WORKED FOR CDCR UNDER COLOR OF STATE LAW.

13). DEFENDANT M. COOK, IS A CLASSIFICATION STAFF REPRESENTATIVE AND BY RELYING ON INFORMATION FROM PELICAN BAY STATE PRISON GANG INVESTIGATORS DECIDED TO RETAIN PLAINTIFF IN SHU INDEFINATELY. AT ALL TIMES MENTIONED WORKED UNDER COLOR OF STATE LAW.

14). DEFENDANT I. PARKER, IS A CORRECTIONAL OFFICER AT PELICAN BAY STATE PRISON, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT WAS ASSIGNED TO THE HOUSING UNIT D-4 (SHU). WHO INITIALLY STARTED THE FALSIFIED EVENTS AGAINST PLAINTIFF AND OFFICER MCCOVEY. AND WORKED UNDER COLOR OF STATE LAW.

15). DEFENDANT SGT. HARDING. IS A CORRECTIONAL SGT. AT PELICAN BAY STATE PRISON AND WAS THE THIRD WATCH PROGRAM SGT. AT THE D-FACILITY SHU AND OFFICER PARKER' SUPERVISOR AND CONFIDANT. AND WORKED AT ALL TIMES UNDER COLOR OF STATE LAW.

16). DEFENDANT SGT. RANGEL. IS A CORRECTIONAL SGT. AT PELICAN BAY STATE PRISON AND THE SECOND WATCH PROGRAM SGT. FOR D-FACILITY. AND THE SUPERVISOR FOR THAT FACILITY. HE IS ALSO THE MAIN OFFICIAL THAT INSISTED BANNING OFFICER MCCOVEY FROM WORKING IN PLAINTIFF' UNIT, OR EVEN WALKING INTO THE UNIT FOR ANY REASON. BASED ON FALSE ACCUSATIONS BY OFFICER PARKER. AND AT ALL TIMES WORKED UNDER COLOR OF STATE LAW.

17). DEFENDANT SGT. MOORE. IS A CORRECTIONAL SGT. AT PELICAN BAY STATE PRISON AND THE THIRD WATCH SGT. FOR D-FACILITY AND OFFICER PARKERS SUPERVISOR. AT ALL TIMES WORKING UNDER COLOR OF STATE LAW.

18). DEFENDANT M. FERGUSON. IS A CORRECTIONAL OFFICER AND CAPTAIN (ACTING FOR PELICAN BAY STATE PRISON SHU. AND THE FACILITY SUPERVISOR. FOR 2ND WATCH. AND PARKER'S AND MCCOVEY'S SUPERVISOR. AS WELL AS THE CHAIR-PERSON AT THE INMATE COMMITTEE. AT ALL TIMES WORKED AS CDCR EMPLOY-EE UNDER COLOR OF STATE LAW.

19). DEFENDANT N. GRANNIS, IS THE CHIEF INMATE APPEALS OFFICER AT THE THIRD LEVEL (DIRECTORS LEVEL). AT SACRAMENTO. AT ALL TIMES MENTIONED WORKED UNDER COLOR OF STATE LAW.

20). DEFENDANT C.E. WILBUR, IS THE APPEALS COORDINATOR AT PELICAN BAY STATE PRISON. AT ALL TIMES MENTIONED WORKED UNDER COLOR OF STATE LAW.

21). DEFENDANT P. CARRIER, IS THE MAIL ROOM SUPERVISOR AT PELICAN BAY STATE PRISON. AND IS RESPONSIBLE FOR OPENING PLAINTIFF' LEGAL MAIL. AT ALL TIMES MENTIONED WAS WORKING FOR, OR EMPLOYED BY CDCR UNDER COLOR OF STATE LAW.

22). DEFENDANT DIANE DEPEW. IS THE MAIL ROOM SUPERVISOR AND HAS OPENED OR INSTRUCTED HER STAFF TO OPEN LEGAL MAIL, AND PROCESS IT AS REGULAR MAIL. AT ALL TIMES WORKED FOR OR WAS EMPLOYED BY CDCR UNDER COLOR OF STATE LAW.

EACH DEFENDANT IS BEING SUED INDIVIDUALLY AND IN HIS OR HER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT EACH DEFENDANT ACTED UNDER THE COLOR OF STATE LAW.

UNDER PENALTY OF PERJURY I DECLARE THIS IS TRUE AND CORRECT.

RESPECTFULLY

Pablo Piña

DATED 4/15/08.

IN PRO-SE

1ST CAUSE OF ACTION
VIOLATION OF EIGHTH AMENDMENT
CRUEL AND UNUSUAL PUNISHMENT.
I. FACTS

23). PABLO PIÑA AS PLAINTIFF IN THIS ACTION WAS ARRESTED AND CHARGED IN 1984 IN SANTA CLARA COUNTY CALIFORNIA, FOR MURDER, AND UPON HIS ARREST PLACED IN THE MAXIMUM SECURITY SECTION OF THE JAIL. DUE TO GANG AFFILIATION.

24). HE WAS TRIED AND CONVICTED IN 1986 AND IN APRIL OF THAT YEAR WAS TRANSFERRED TO THE CALIFORNIA STATE PRISON RECEPTION CENTER AT VACAVILLE CALIF. AND PLACED IN THE SEGREGATION UNIT W-WING. DUE TO GANG AFFILIATION.

25). IN AUGUST 1986 HE WAS SENT TO THE SECURITY HOUSING UNIT AT SAN QUENTIN. TAMAL CALIFORNIA. DUE TO GANG AFFILIATION.

26). AT THAT TIME SAN QUENTIN STATE PRISON WAS CONSIDERED THE DEPARTMENT OF CORRECTIONS DESIGNATED SECURITY HOUSING UNIT (SHU) FOR ALL OF CALIFORNIA, AND MOST OF THE PRISON WAS ON LOCKDOWN 23 HOURS A DAY.

27). AT HIS FIRST INSTITUTIONAL COMMITTEE APPEARANCE IN THE SECURITY HOUSING UNIT, PLAINTIFF COMPLAINED ABOUT BEING PLACED IN SHU BECAUSE HE PAROLED IN 1982, AND WAS DISCHARGED FROM PAROLE ON HIS PREVIOUS CDC NUMBER #B-78117 AND IS NOW UNDER A NEW COMMITMENT.

28). THE PROGRAM ADMINISTRATOR WAS ROBERT HERNANDEZ WHO KNEW PLAINTIFF VERY WELL WHEN HE WORKED AT D.V.I. DUEL VOCATIONAL INSTITUTE IN 1975 THROUGH 1982.

29). HERNANDEZ TOLD PLAINTIFF THAT HE WAS PLACED IN SHU BECAUSE PLAINTIFF STILL OWED THEM SIX YEARS MORE SHU TIME FOR THE LAST TIME HE WAS IN PRISON.

30). IN JANUARY 1987 PLAINTIFF AND OTHERS IN SAN QUENTIN SHU WERE TOLD THAT THEY WOULD BE TRANSFERRED TO THE NEW SHU AT TEHACHAPI, CALIFORNIA.

31). IN THE FOLLOWING MONTHS THOUSANDS OF INMATES WERE TRANSFERRED TO THE NEW SHU AT TEHACHAPI, PLAINTIFF INCLUDED. DUE TO GANG AFFILIATION.

32). AT TEHACHAPI SHU THE PROGRAM WAS MORE RESTRICTED, INSTEAD OF CELLS WITH BARS, WE WERE PLACED IN ROOMS WITH SOLID DOORS AND A SMALL WINDOW. THE CANTEEN WAS NOT AS GOOD AS SANQUENTIN BUT IT WAS DECENT. WITH A VARIETY OF ITEMS. THE ANNUAL PACKAGES WERE ALSO NOT LIKE SANQUENTIN BUT WERE FAIRLY GOOD. THE YARD TIME WAS TWICE A WEEK, AND THERE WAS A HANDBALL COURT AND BASKETBALL COURT FOR INMATES TO USE.

33). THEN IN 1989 PLAINTIFF AND OTHERS IN THE SHU WERE TOLD AGAIN THAT THEY WOULD BE TRANSFERRED TO ANOTHER NEWER SHU, CORCORAN OR PELICAN BAY STATE PRISON SHU.

34). IN DECEMBER 1989 PLAINTIFF WAS TRANSFERRED TO PELICAN BAY STATE PRISON SHU. TO FINISH THE SHU TERM HE OWED UNDER HIS OLD CDC NUMBER. AND BELIEVED THAT HE WOULD BE RELEASED FROM SHU ONCE IT WAS COMPLETED. ARRIVING AT PELICAN BAY STATE PRISON IT WAS MADE OBVIOUS THAT THERE WAS NO PROGRAM. AT ALL. EXCEPT THE HOUR AND HALF ON YARD.

35). IN 1993 PLAINTIFF WAS TOLD BY THE INSTITUTIONAL CLASSIFICATION COMMITTEE THAT HIS SHU TERM WAS COMPLETED, BUT THAT THEY WERE GOING TO RECOMMEND THAT HIS CASE BE REFERRED TO THE (CSR) CLASSIFICATION STAFF REPRESENTATIVE TO RETAIN HIM IN SHU AS INDETERMINATE FOR GANG AFFILIATION.

36). PLAINTIFF WAS TOLD THAT IF HE WANTED TO GET OUT OF THE (SHU) THAT HE WOULD HAVE TO DEBRIEF.

37). PLAINTIFF FILED A 602 APPEAL ASKING TO BE RELEASED TO THE GENERAL POPULATION BECAUSE HIS SHU TERM'S WERE COMPLETED. BUT WAS TOLD THAT DUE TO HIS GANG AFFILIATION HE WAS A THREAT TO THE SECURITY OF THE INSTITUTION.

38). PLAINTIFF DOES NOT DENY THAT HE WAS A GANG MEMBER, NOR THAT HE WAS INVOLVED IN GANG ACTIVITY, BUT THAT WAS THEN. AND A CHANGE CAN BE SEEN BY HIS MUCH FEWER RULES VIOLATIONS REPORTS IN LATER YEARS. NOTHING LIKE WHAT HE USED TO BE CAPABLE OF.

39). <u>INDEFINATE SEGREGATION:</u>

PELICAN BAY STATE PRISON SECURITY HOUSING UNIT WAS DESIGNED TO BE THE MAIN (SHU) IN CALIFORNIA FOR GANG MEMBERS. WHERE ALL INMATES WHO ARE GANG AFFILIATED WILL DO THEIR TIME, MOST OF WHOM ARE DOING LIFE SENTENCES.

40). AT FIRST THERE WAS NO WAY TO GET OUT OF THE (SHU) FOR A GANG MEMBER OR ASSOCIATE EXCEPT TO BY DEBRIEFING AND BECOMING AN INFORMANT FOR THE GANG UNIT. THAT OR PAROLE OR DIE THERE.

41). THEN IN 1997 THE DEPARTMENT OF CORRECTIONS AND DIRECTOR IMPLEMENTED A PROCEDURE AND REGULATION WHICH WOULD GIVE GANG MEMBERS IN THE SHU WHO ARE NOT ACTIVELY INVOLVED IN GANG ACTIVITY TO BE RECLASSIFIED AS INACTIVE GANG MEMBERS AND BE RELEASED TO A GENERAL POPULATION SETTING. THIS IF THEY'VE BEEN IN SHU SIX YEARS, AND UNINVOLVED IN GANG ACTIVITY. SEE EXHIBIT <u>A</u> RULES AND REGULATIONS CCR TITLE 15 § 3378, 3378-5(c)-(e).

42). IN NOVEMBER 2000 PLAINTIFF HAD HIS FIRST INACTIVE REVIEW AND WAS DENIED INACTIVE STATUS BECAUSE BECAUSE THEY HAD TWO DOCUMENTS OR ITEMS THEY USED TO CONSIDER THAT PLAINTIFF WAS STILL ACTIVE. ITEMS THAT PLAINTIFF WAS NEVER TOLD THEY HAD. OR DISCLOSED UNTIL THE TIME OF REVIEW.

43). DEFENDANT J. DIX. SPECIAL AGENT FOR (LEIU) FILED A REPORT THAT WAS CONTRADICTING WHAT WAS BEING USED TO DENY INACTIVE STATUS. BUT STILL RECOMMENDED THAT PLAINTIFF BE HELD IN SHU INDEFINATELY.

44). IN PLAINTIFF'S NEXT INACTIVE REVIEW PREPARATION, ON SEPTEMBER 28TH 2004 DEFENDANT M. RANDOLPH (I.G.I.) SGT. CALLED PLAINTIFF TO THE UNIT DOOR.

45). DEFENDANT RANDOLPH GAVE PLAINTIFF SOME CONFIDENTIAL 1030 FORMS THAT THEY PLANNED TO USE AGAINST PLAINTIFF AT THE HEARING. AND TOLD PLAINTIFF TO PREPARE FOR IT ON SEPTEMBER 30TH 2004.

46). PLAINTIFF DOES NOT HAVE THE 1030 FORMS AT THIS TIME. BUT THE CONSISTED OF A LETTER INTERCEPTED BY I.G.I. FROM SOMEONE WHOM SENT IT TO PLAINTIFF. IN 2001.

47). THEN THE OTHER WAS A VERY BRIEF DISCRIPTION ON A 1030 FORM THAT SAID THAT AN INMATE DEBRIEFED AND GAVE INFORMATION THAT PLAINTIFF WAS STILL ACTIVE. AND THAT PLAINTIFF HAD RECIEVED SOME GANG MATERIAL IN 1997. THIS WAS ALSO DATED IN 2001.

48). ON SEPTEMBER 30TH 2004 PLAINTIFF WAS TAKEN TO THE HEARING ON HIS INACTIVE STATUS. WHEN HE WALKED INTO THE ROOM HE SAW THE DEFENDANTS MARQUEZ, AND RANDOLPH.

49). THEY ARE THE SAME GANG INVESTIGATORS THAT ARE REQUIRED TO CONDUCT INVESTIGATIONS ON THE INMATES. THEN INTERVIEW INMATES THAT DEBRIEF OR AT THE LEAST READ THE DEBRIEFING REPORTS. THEN DECIDE WHAT INFORM- ATION THEY'LL USE. AND FINALLY SIT AS THE HEARING OFFICERS AND PASS JUDG- MENT.

50). PLAINTIFF WAS ASKED TO EXPLAIN WHY THAT OTHER PERSON AND ALLEGED GANG MEMBER WROTE HIM THAT LETTER DESCRIBING GANG ACTIVITIES.

51). PLAINTIFF TOLD DEFENDANTS MARQUEZ AND RANDOLPH THAT HE NEVER SAW THE LETTER, NOR READ IT. AND DIDN'T KNOW IT EXISTED TILL THEN. SO HE CAN'T EXPLAIN IT.

52). DEFENDANT MARQUEZ ASKED FOR PLAINTIFF TO EXPLAIN AND OR dispute WHAT THE PRISONER AND EX GANG MEMBER SAID IN HIS DEBRIEFING SESSION.

53). PLAINTIFF TOLD HIM AND DEFENDANT RANDOLPH THAT HE READ THE 1030 CONFIDENTIAL DISCLOSURE FORM. BUT IT'S TOO VAGUE. ALL IT SAYS IS THAT THEY RECIEVED INFORMATION FROM A CONFIDENTIAL SOURCE THAT PLAINTIFF IS STILL ACTIVE. AND RECIEVED GANG MATERIALS IN 1997 OR 1998.

54). PLAINTIFF TOLD DEFENDANTS MARQUEZ AND RANDOLPH THAT HIS CELL WAS SEARCHED TWICE BY I.G.I. AND THEY NEVER FOUND ANY MATERIAL THAT WAS DESCRIBED. AND IF THAT DEBRIEFING INMATE WAS SO RELIABLE THEN WHERE IS THAT PAPER WORK.

55). DEFENDANT MARQUEZ did ASK ME ABOUT THE LETTER AND THE DEBRIEFER, BUT THAT WASN'T WHAT HE WAS FOCUSED ON. WHAT HE WAS TELLING PLAINTIFF WAS THAT THEY COULDN'T LET OUT OF THE SHU. BECAUSE PLAINTIFF WAS STILL INFLUENCIAL, AND THAT THEY KNOW, THAT PLAINTIFF WAS THE MAIN PERSON THAT CAUSED A SPLIT AMONGST THE NUETRA FAMILIA AND NORTHERN STRUCTURE GANG MEMBERS, AND FEEL IF THEY LET HIM OUT HE WOULD REORGANIZE THEM.

56). PLAINTIFF POINTED OUT THAT WHAT HE JUST DESCRIBED IS WHAT HE HAS BEEN MORE LESS TELLING THEM, THAT HE IS NO LONGER ASSOCIATED WITH HIS FORMER GANG. WHICH IS WHAT THE CRITERIA IS TO QUALIFY FOR INACTIVE STATUS. THAT HE DON'T ASSOCIATE WITH HIS FORMER GANG.

57). DEFENDANT MARQUEZ NEXT SAID THAT PLAINTIFF IS ON ALOT OF GANGS HIT LIST, AND COULD BE ASSAULTED.

58). PLAINTIFF TOLD DEFENDANTS THAT HE HAS BEEN INVOLVED IN GANGS MOST ALL OF HIS LIFE. AND HAS DONE HIS JOB OF ASSAULTING RIVAL GANG MEMBERS MANY TIMES. FOR MANY YEARS. SO HE KNOWS HE HAS ENEMIES.

59) IT IS A KNOWN FACT THAT LIFE BEHIND THE WALLS IS NOT AN EASY ONE. BUT ITS A LIFE THAT A PRISONER, WHETHER A GANG MEMBER OR NOT MUST LEARN TO deal WITH. PLAINTIFF IS NOT GOING TO ACT LIKE HE did BEFORE. AND HIS ENEMIES KNOW WHAT HE CAN do.

60). DEFENDANT RANDOLPH Said IF THEY LET THE PLAINTIFF out OF SHU AND HE WAS ASSAULTED THEY WOULD BE LIABLE.

61). PLAINTIFF EXPLAINED THAT THEY do IT FOR OTHER PRISONERS WITH NOT PLAINTIFF, AND WAS TOLD THAT PLAINTIFF'S NAME IS TOO WELL KNOWN BY EVERYONE.

62). PLAINTIFF CAN ONLY SAY THAT WHEN HE WAS INVOLVED IN GANG ACTIVITY HE WAS VERY THOROUGH AND GOOD AT IT. BUT WHAT HIS ENEMIES THINK OF HIM SHould NOT BE WHAT THE DEFENDANTS BASE THEIR DECISIONS ON. PLAINTIFF CAN TAKE CARE OF HIMSELF.

63). DEFENDANT MARQUEZ Told PLAINTIFF THAT EVEN IF THE (DRB) BOARD DECIDES TO RECLASSIFY HIM AS INACTIVE THEY WILL RECOMMEND THAT HE SHould STILL BE HELD IN THE (SHU).

64). PLAINTIFF TOLD DEFENDANTS THAT THEY SHould LISTEN TO WHAT THEY ARE SAYING THEY CLAIM THAT I'M ON A LIST FOR ASSAULT. YET THEY WANT TO CONTINUE TO CLASSIFY PLAINTIFF AS AN ACTIVE GANG MEMBER. PLAINTIFF CAN NOT BE BOTH ACTIVE AND AN INTENDED TARGET. ITS ONE OR THE OTHER.

65). DEFENDANT MARQUEZ AFTER THE HEARING SENT PLAINTIFF A COPY OF HIS FINDINGS AND DUPOSITION, SEE EXHIBIT  B  . dATED 9/30/04. INACTIVE REVIEW REPORT.

66). ON MAY 24TH 2005 DEFENDANT EVERETTE FISHER DECIDED FROM THE REPORT AND RECOMMENDATIONS FROM DEFENDANTS MARQUEL and RANDOLPH THAT PLAINTIFF SHould BE CLASSIFIED AS AN ACTIVE GANG MEMBER. SEE EXHIBIT  C  dATED 5/24/05 .

67). PLAINTIFF BELIEVES THAT DEFENDANT FISHER DID NOT BOTHER TO REVIEW ALL THE FILE AND REPORTS ON PLAINTIFF'S GANG STATUS.

68). THE DEFENDANTS MARQUEZ, RANDOLPH AND FISHER, KNOWINGLY USED INFORMATION THEY KNEW OR SHOULD OF KNOWN WAS FALSE. AND OR AT THE LEAST QUESTIONABLE. TO CONTINUE TO CLASSIFY PLAINTIFF AS AN ACTIVE GANG MEMBER.

69). THE DEFENDANTS CLAIM HE IS ACTIVE IN GANG ACTIVITY BUT HAVE NO REAL EVIDENCE TO SUPPORT IT.

70). THE INSTITUTIONAL GANG INVESTIGATORS GATHER INFORMATION THATS PROVIDED BY EX-GANG MEMBERS, INFORMANTS THAT WILL SAY WHAT EVER TO GAIN THE INVESTIGATORS CONFIDENCE AND FAVOR.

71). THE INSTITUTIONAL GANG INVESTIGATORS HAVE MORE INFORMATION IN THEIR FILES RELATING TO PLAINTIFF THAT THEY ARE NOT RELEASING.

72). ON FEBRUARY 22nd 2006 PLAINTIFF'S CASE WENT BEFORE THE INSTITUTIONS CLASSIFICATION COMMITTEE AND DEFENDANT SCAVETTA AS CHAIR WOMAN.

73). DEFENDANT SCAVETTA REFERRED PLAINTIFF TO THE (CSR) BOARD CLASSIFICATION STAFF REPRESENTATIVE AND RECOMMENDED THAT HE BE RETAINED IN (SHU) AS AN ACTIVE GANG MEMBER AND AFFILIATE INVOLVED IN CRIMINAL ACTIVITIES WHICH THREATEN THE SAFETY OTHERS AND INSTITUTION SECURITY. AND THAT IT REQUIRES CONTINUED SEGREGATION FROM THE GENERAL POPULATION. SEE EXHIBIT __M__. 128-C2 CHRONO dated 2/22/06.

74). DEFENDANT SCAVETTA COULD NOT HAVE REVIEWED PLAINTIFF'S C-FILE AND ALL RELATED INFORMATION. OR SHE WOULD HAVE SEEN THAT IT CONTRADICTS ITSELF AND WHAT THE GANG UNIT CLAIMS.

75). DEFENDANT M. COOK, THE (CSR) CLASSIFICATION STAFF REPRESENTATIVE AGREED WITH DEFENDANT SCAVETTA'S RECOMMENDATION AND ENDORSED PLAINTIFF TO REMAIN IN (SHU) INDEFINATELY. SEE EXHIBIT M. CSR CHRONO dated 3/30/06.

76). PLAINTIFF WAS NOW WAITING FOR THE NEXT INACTIVE REVIEW AND BELIEVED THAT THERE IS NOTHING ELSE THEY CAN SAY OR DO, THEY WILL HAVE TO SERIOUSLY CONSIDER HIM IN 2007.

77). IN JANUARY 2006 PLAINTIFF WAS IN HIS CELL IN (D-9-223) WHEN HE WAS TOLD AFTER BREAKFAST TO PACK HIS PROPERTY BECAUSE HE WAS GOING TO BE MOVED. BUT AT FIRST WASN'T TOLD WHERE, SO HE REFUSED.

78). THEN SOME OFFICERS CAME TO HIS CELL AND TOLD PLAINTIFF THAT HUNDREDS OF INMATES WERE BEING MOVED NOT JUST HIM. AND THEY SAID IT WAS AN ORDER THAT CAME FROM SACRAMENTO.

79). THESE OFFICERS TOLD PLAINTIFF THAT ALL GANG AFFILIATED INMATES ARE BEING MOVED TO THE SHORT CORRIDOR UNITS. TO WHICH THERE ARE FOUR UNITS. AND SHOWED PLAINTIFF A LIST WITH HUNDREDS OF NAMES ON IT.

80). THESE UNITS AT THE SHORT CORRIDOR would ISOLATE PLAINTIFF and OTHERS FROM THE REST OF THE SHU INMATES.

81). BUT IT IS STILL WITHIN THE (SHU) AND THE SAME FACILITY JUST SEPARATE FROM THE OTHER UNITS.

82). AT NO TIME WAS PLAINTIFF ASKED IF HE WANTED TO MOVE THERE, OR GIVEN AN OPPORTUNITY TO CHALLENGE THE MOVE.

83). THE INSTITUTION GANG UNIT HAS ALWAYS MONITORED PLAINTIFF'S MAIL AND OTHER INMATES IN THE SHU. BUT NOW THEY CAN FOCUS ON IT EVEN MORE.

84). ALL MAIL THAT IS SENT TO PLAINTIFF IS FIRST READ AND/OR SCREENED BY THE UNIT FLOOR OFFICER. AND THEN ITS SENT TO THE GANG UNIT WHERE ITS READ AGAIN. THEN SENT BACK TO THE UNIT A FEW DAYS LATER TO BE PASSED OUT TO INMATES.

### 2ND CAUSE OF ACTION
### DELAY AND OPENING LEGAL MAIL
### A VIOLATION OF THE FIRST AMENDMENT
### OF THE UNITED STATES CONSTITUTION.

85). DEFENDANT PARKER RECIEVED A LEGAL LETTER FOR PLAINTIFF PIÑA THAT WAS FROM ATTORNEY TONY SERRA WHOM PRACTICES LAW IN SAN FRANCISCO. CALIF. INSTEAD OF DELIVERING THE MAIL. DEFENDANT TOOK IT TO THE GANG UNIT.

86). DEFENDANT PARKER TOOK PLAINTIFF'S LEGAL MAIL TO THE GANG UNIT KNOWING IT WOULD BE OPENED AND READ.

87). DEFENDANT PARKER WROTE ON A "POST IT" ...... "IS THIS LEGAL MAIL" AND SIGNED HER NAME AT THE BOTTOM OF THE POST IT. SEE EXHIBIT __D__. 602 APPEAL dated 10/22/06.

88). PLAINTIFF ATTATCHED THE ENVELOPE WITH THE "POST IT" STILL ATTATCHED TO IT TO THE 602 APPEAL, AND SENT IT TO BE PROCESSED THROUGH THE APPEALS SYSTEM.

89). ON FEBRUARY 25TH 2007, PLAINTIFF SENT THE 602 APPEAL TO THE THIRD LEVEL FOR REVIEW AND RELIEF. AT THE DIRECTOR/SECRETARY LEVEL. AS HE WAS NOT SATISFIED WITH THE FIRST AND SECOND LEVEL RESPONSE. SEE EXHIBIT __D__. 602 APPEAL dated 2/25/07. AT SECTION H.

90). DEFENDANT GRANNIS AT FIRST ATTEMPTED TO REJECT THE APPEAL AND RETURNED THE APPEAL TO PLAINTIFF WITH A LETTER. SEE EXHIBIT __D__. LETTER dated 6/15/07. ATTATCHED TO 602 APPEAL. CLAIMING IT WAS UNTIMELY.

91). PLAINTIFF AFTER WRITING AND ATTACHING A LETTER EXPLAINING WHY HIS APPEAL WASN'T UNTIMELY RESUBMITTED THE APPEAL TO THE THIRD LEVEL TO HAVE IT PROCESSED. SEE EXHIBIT __D__. 602 APPEAL WITH PLAINTIFF'S LETTER ATTACHED. dated 6/17/07.

92). DEFENDANT N. GRANNIS THEN PROCESSED THE 602 APPEAL. WHICH WAS THEN DENIED BY DEFENDANT GRANNIS AT THE DIRECTORS LEVEL. SEE EXHIBIT __D__. 602 APPEAL dated 10/22/06. WITH THE DIRECTOR'S LEVEL APPEAL DECISION dated 9/27/07.

93). WHEN PLAINTIFF RECIEVED THE APPEAL BACK HE SAW THAT THE ENVELOPE WAS MISSING THAT HAD THE POST IT ON IT. AND WROTE ASKING DEFENDANT GRANNIS TO RETURN IT. SEE LETTER ATTACHED TO 602 APPEAL EXHIBIT __D__. LETTER TO GRANNIS DATED 10/11/07.

94). THE ENVELOPE IS VERY IMPORTANT IN THIS LITIGATION AS IT WILL PROVE THAT THERE WAS NOTHING WRONG OR SUSPICIOUS ABOUT THE LEGAL LETTER EXCEPT THAT THE ATTORNEY HAD A SPANISH SURNAME.

95). DEFENDANT HOREL IN HIS SECOND LEVEL RESPONSE SAID THE REASON DEFENDANT PARKER WAS SUSPICIOUS OF THE LEGAL LETTER WAS BECAUSE THE ENVELOPE WAS TAMPERED WITH OR LOOKED AS IF IT HAD BEEN. WHICH MADE IT QUESTIONABLE.

96). THE ENVELOPE WAS ATTACHED SO THAT IT COULD BE EXAMINED BUT IT WAS REMINED.

99). IN THE RESPONSE FROM I.G.I. AND THE FIRST LEVEL RESPONSE AT NO TIME WAS ANYTHING SAID ABOUT WHITE OUT OR A STICKER BEING SUSPICIOUS, ONLY THE WARDEN MADE THAT CLAIM. SEE EXHIBIT __D__. 602 APPEAL dated 10/22/06. 2nd LEVEL RESPONSE.

98). IN ANOTHER 602 APPEAL FILED BY PLAINTIFF WHEN HE RECIEVED A LETTER THAT WAS FROM THE ACLU THAT WAS OPENED BY THE MAIL ROOM STAFF. ON THE ENVELOPE IT WAS STAMPED BY THE MAIL ROOM THAT IT DOES NOT FIT THE CRITERIA FOR LEGAL MAIL. SEE EXHIBIT E. 602 APPEAL dated 4/22/07 DEFENDANTS DEPEW AND CARRIER OPENED THE LETTERS. WHILE UNDER COLOR OF STATE LAW.

99). IN YET ANOTHER 602 APPEAL PLAINTIFF RECIEVED A LEGAL LETTER WHICH WAS OPENED BY THE MAIL ROOM STAFF. THE LEGAL LETTER WAS FROM ATTORNEY GLORIA ALLRED, MAROKO, & GOLDBERG. AND CLEARLY STAMPED LAW OFFICES. FOR THEIR FIRM. DEFENDANTS DEPEW, and CARRIER OPENED THESE LETTERS BASED ON RULES BY THE DIRECTOR SEE EXHIBIT F. 602 APPEAL DATED 9/20/07.

100). THE APPEALS WERE DENIED AT THE FIRST AND SECOND LEVEL BECAUSE OF THE PROCEDURES AND REGULATIONS IN THE CCR TITLE 15 RULES OF THE DIRECTOR.

101). THE DEFENDANT TILTON THROUGH HIS APPEALS CHIEF DEFENDANT GRANNIS. REVIEWED AND DENIED THE 602 APPEALS AS DID THE WARDEN HOREL BECAUSE THERE WAS NO SPECIFIC ATTORNEY'S NAME SIGNED ON THE ENVELOPE. BUT IN THE DEPARTMENT OPERATIONAL MANUAL PAGE ATTATCHED AS AN EXHIBIT BY DEFENDANTS DEPEW AND CARRIER. AND MAIL ROOM STAFF DOES NOT STATE IT MUST HAVE A SIGNATURE. WHAT IT SAYS IS IT MUST HAVE AN ATTORNEY'S NAME, TITLE, AND ADDRESS. NOR DOES IT SAY THAT THE THREE NAMES OF THE ATTORNEYS ON THIS ENVELOPE IS INSUFFICIENT.

102). THEIR PROCEDURE CLEARLY STATES THAT THE RETURN ADDRESS MUST INCLUDE THE NAME OR TITLE OF THE SPECIFIC ATTORNEY PRINTED ON THE OUTSIDE OF THE ENVELOPE. THE POLICY COULD BE UNDERSTOOD TO MEAN EITHER, BECAUSE IT IS VAGUE.

103). BUT THE PLAINTIFF IS ALLEGING THAT THE MAIL ROOM CAN NOT OPEN LEGAL MAIL JUST BECAUSE THEY HAVE POLICIES THAT ATTORNEYS DONT KNOW EXIST. AND FEELS THEY ARE ALL VIOLATING THE CONFIDENTIALITY OF LEGAL CORRESPONDENCE WHEN THEY OPEN IT. AND ITS CLEARLY MARKED LEGAL MAIL.

104). THE MAIL ROOM STAFF HAS DELIVERED OPENED LEGAL MAIL TO PLAINTIFF THAT WAS FROM THE STATE PUBLIC DEFENDERS OFFICE, POLICE DEPT., DISTRICT ATTORNEY, JUDICIAL COMMITTEE ON PERFORMANCE. THE MAIL IS OPENED BECAUSE THEIR PROCEDURES WERE DESIGNED FOR IT TO WORK IN THEIR FAVOR. SEE EXHIBIT I. CONFIDENTIAL MAIL.

105). ANY WHERE ELSE IN THE FREE WORLD THE MAIL WOULD BE TREATED AS LEGAL MAIL OR CONFIDENTIAL CORRESPONDENCE. AND SO SHOULD THE PRISON SYSTEM.

106). AND IF MAIL ARRIVES THAT IS LEGAL MAIL IF THEY WILL NOT RECOGNIZE IT AS SUCH THEN IT SHOULD BE RETURNED TO SENDER WITH A NOTICE OF WHY IT WONT BE ALLOWED. BUT THEY DO NOT HAVE A RIGHT TO OPEN IT.

107). DEFENDANT HOREL AS WARDEN AT PELICAN BAY STATE PRISON IS THE SECOND LEVEL REVIEWER. AND HIS DENIAL PROVES THAT HE AGREES WITH THE VIOLATIONS BEING APPEALED. AND VIOLATING CONFIDENTIALITY BETWEEN A PRISONER AND ATTORNEY.

108). DEFENDANT TILTON AS SECRETARY/DIRECTOR AND OVERALL CUSTODIAN AND THIRD LEVEL DIRECTORS LEVEL OF REVIEW. HIS DENIAL OF ALL 602 APPEALS PROVES THAT HE IS IN AGREEMENT WITH THE VIOLATIONS BEING DESCRIBED IN THE COMPLAINT.

109). ALL DEFENDANTS NAMED IN THE 2ND CAUSE OF ACTION, REGARDING THE OPENING OF LEGAL MAIL ARE ALL INTER-CONNECTED AS THEY ARE ALL IN A POSITION THAT PROMOTES, AND ALLOWS THE VIOLATION TO CONTINUE.

3RD CAUSE OF ACTION
VIOLATION OF DUE PROCESS
AND EQUAL PROTECTION
UNDER THE FOURTEENTH AMENDMENT
OF THE UNITED STATES CONSTITUTION.

110). PLAINTIFF PABLO PIÑA WAS MOVED TO D-4 102# IN THE SHORT CORRIDOR IN JANUARY 2006.

111). PLAINTIFF WAS PLACED IN A CELL CLOSE TO THE FRONT GRILL GATE AND THE ROTUNDA AREA WHERE THE OFFICERS HAVE THEIR DESK.

112). AT THE TIME THE UNIT OFFICER WAS DEFENDANT PARKER.

113). SHORTLY AFTER ARRIVING PLAINTIFF BEGAN HEARING DEFENDANT PARKER COMPLAINING ABOUT ANOTHER FEMALE OFFICER NAMED MCCOVEY.

114). DEFENDANT PARKER WAS TELLING THE LADY IN THE CONTROL BOOTH THAT SHE didn't LIKE MCCOVEY COMING IN HER UNIT. AT 3RD WATCH.

115). MCCOVEY HAD LIKE MANY OTHER OFFICERS do CAME IN THE UNIT TO HELP PASS OUT FOOD TRAYS, CANTEEN ETC.

116). PLAINTIFF QUICKLY GOT THE IMPRESSION THAT DEFENDANT PARKER didn't LIKE MCCOVEY.

117). THE REASON FOR THIS WAS BECAUSE PARKER WAS CONSTANTLY TALKING ABOUT MCCOVEY TO HER CO-WORKERS. AND NOT IN A GOOD WAY.

118). PLAINTIFF KNOWS WHO MCCOVEY IS AND CAN ONLY SAY SHE THAT SHE IS PRETTY ATTRACTIVE AND WITH AN ATTITUDE.

119). PLAINTIFF HAS NEVER SEEN OFFICER MCCOVEY DO ANYTHING THAT OTHER OFFICERS DON'T DO.

120). DEFENDANT HARDING IS A 3RD WATCH PROGRAM SGT. AND FROM THE SOUNDS OF IT A PERSONAL FRIEND OF DEFENDANT PARKER. HE WOULD COME IN THE UNIT AND SIT AND TALK TO PARKER FOR HOURS.

121). ONE OF THOSE DAYS THAT HE WAS OUT THERE DEFENDANT PARKER BROUGHT UP HOW SHE DIDN'T LIKE THAT OFFICER MCCOVEY WAS COMING INTO HER UNIT.

122). AND DEFENDANT HARDING TOLD PARKER THAT IF SHE WANTED TO DO SOMETHING ABOUT IT, SHE SHOULD FILE A REPORT ON MCCOVEY, BUT TO HAVE OTHERS DO IT TO OR IT WOULD BE HER WORD AGAINST MCCOVEY.

123). WITHIN DAYS AFTER THAT CONVERSATION DEFENDANT PARKER STARTED TELLING AN OLDER LADY IN CONTROL SHE SHOULD FILE A REPORT ON MCCOVEY TOO.

124). AT FIRST THE CONTROL BOOTH LADY SHE DIDN'T KNOW WHAT TO SAY OR DO AND SOUNDED LIKE SHE DIDN'T WANT TU AT FIRST.

125). BUT DEFENDANT PARKER KEPT TELLING HER SHE SHOULD FILE ON MCCOVEY TILL ONE DAY THE LADY SAID OKAY WHAT DOES SHE HAVE TO DO.

126). DEFENDANT PARKER TOLD HER JUST GO TO THE OFFICE, WHICH OFFICE PLAIN-TIFF DOESN'T KNOW.

127). DEFENDANT PARKER NEXT STARTED TALKING TO THE OTHER 3RD WATCH OFFICERS SHE WORKED WITH TO ALSO FILE ON MCCOVEY TU GET HER OUT OF THE UNIT.

128). OFFICER WILLIAMS WAS TELLING ANOTHER OFFICER HE WORKS WITH THAT HE HAS

KNOWN MCCOVEY A LONG TIME. THAT SHE WAS MARRIED FOR A LONG TIME. OR IS MARRIED. AT FIRST HE HESITATED. BUT PARKER KEPT ON HIM TILL HE AGREED. BUT ONCE HE AGREED. HE REALLY GOT INVOLVED SAYING HE DON'T WANT MCCOVEY IN HIS BLOCK.

128). DEFENDANT PARKER THEN ASKED THE 3RD WATCH S&E TO FILE A REPORT ON MCCOVEY AND HE AGREED QUICK.

129). AS SOON AS THESE THREE GOT TOGETHER THEY STARTED TALKING ABOUT MCCOVEY ALL THE TIME AND LOUD.

130). IT WAS ABOUT THIS TIME PLAINTIFF BEGAN HEARING HIS NAME AND MCCOVEY'S NAME IN THE SAME SENTENCE IN DEFENDANT PARKERS CONVERSATIONS.

131). EVERY TIME THEY DISCUSSED REPORTING MCCOVEY AND HER SUPPOSED MISCONDUCT PLAINTIFF'S NAME OR CELL NUMBER WOULD COME UP TO. SEE EXHIBIT Q AFFIDAVIT DATED 8/8/07.

132). WHEN OTHER OFFICERS CAME INTO THE UNIT TO WORK, THEY WOULD TELL THEM ABOUT MCCOVEY AND PLAINTIFF. NOT ALL OFFICERS JUST THOSE THEY KNEW WELL. TO TURN OTHERS AGAINST MCCOVEY.

133). DEFENDANT PARKER ALONG WITH HER CO-WORKERS AND DEFENDANT SGT. HARDING. MANAGED TO HAVE MCCOVEY RESTRICTED FROM WORKING OR COMING INTO D-4 ON 3RD WATCH.

134). DEFENDANT HARDING CAME INTO THE UNIT WITH THE NEWS ALL EXCITED TELLING PARKER THEY GOT MCCOVEY BANNED FROM COMING INTO D-4. AND SHE CAN'T GO INTO A-POD FOR ANY REASON. A-POD IS WHERE PLAINTIFF LIVES.

135). AFTER THE SGT. LEFT DEFENDANT PARKER TOLD HER CO-WORKERS SHE WANTS MCCOVEY OUT OF THE SHU ENTIRELY. BECAUSE HER S&E SAID MCCOVEY WAS STILL IN THE UNIT ON 2ND WATCH.

136). WHILE ALL OF THIS IS GOING ON PLAINTIFF WAS WAITING FOR HIS NEXT INACTIVE STATUS REVIEW AND FELT HE HAD A GOOD OPPORTUNITY THIS TIME AND COULD BE LET OUT OF THE SHU.

137). AFTER HEARING ALL OF THE RHETORIC GOING ON ABOUT MCCOVEY PLAINTIFF KNEW IT WOULD AFFECT HIM IN THE UP COMING REVIEW. SO PLAINTIFF WROTE UP HIS OWN COMPLAINT DESCRIBING WHAT DEFENDANT PARKER WAS TRYING TO DO TO MCCOVEY AND HIMSELF. THE COMPLAINT WAS SENT TO (IGI) SGT. DEFENDANT BARNEBURG. IN AUGUST/SEPT. OF 2006.

138). DEFENDANT BARNEBURG NEVER RESPONDED TO THE COMPLAINT.

139). DURING THIS TIME DEFENDANT PARKER WAS HAVING HER CO-WORKERS KEEP TRACK OF WHERE MCCOVEY WAS WORKING AND WHO SHE WAS SEEN TALKING TO. SHE WAS TOLD BY HER S&E WHO SAID HE WAS OUT ON A-YARD AND HEARD THAT MCCOVEY HAD THE SAME DAY'S OFF AS PARKER. AND WOULD WORK IN OR AROUND THE UNIT.

140). AS SOON AS DEFENDANT PARKER HEARD THIS SHE CALLED DEFENDANT HARDING AND HE CAME QUICK. PARKER TOLD HIM THAT MCCOVEY WAS IN THE UNIT AND WORKING IN D-4 ON 2ND WATCH. AND HARDING SAID HE'D TAKE CARE OF IT. AND LEFT.

141). RIGHT AFTER THAT A DAY. OR A FEW LATER DEFENDANT SGT. RANGEL CAME INTO D-4 ON 2ND WATCH. AND TOLD THE CONTROL BOOTH OFFICER THAT HE IS NOT TO LET MCCOVEY IN THE UNIT AT ALL. NOT TO OPEN THE DOOR FOR HER. AND SHE IS ESPECIALLY NOT TO GO INTO A-POD WHERE PLAINTIFF IS AT.

142). AFTER HEARING THAT PLAINTIFF SAW THAT THIS WAS GETTING OUT OF HAND AND THAT THE PROGRAM SGT.'S WERENT DOING ANYTHING ABOUT IT EXCEPT SUPPORTING PARKER. SO PLAINTIFF FILED A 602 APPEAL. AND SENT IT TO DEFENDANT BARNEBURG.

143). IN THE APPEAL PLAINTIFF EXPLAINED THAT HE'S AWARE OF ALL THE RUMORS BEING SPREAD AND ACCUSATIONS BEING DIRECTED AT HIMSELF AND MCCOVEY AND WOULD LIKE TO GET IT CORRECTED AND STOPPED RATHER THEN MAKE AN ISSUE OUT OF IT, BUT HE WOULD LIKE TO HAVE COPIES OF ANY REPORTS FILED ON HIM AND OR MCCOVEY USING HIS NAME IN ANY WAY.

144), DEFENDANT BARNEBURG CAME AND SPOKE TO PLAINTIFF OUT IN THE HOLDING CELL ON date 9/18/07. DEFENDANT PARKER WAS WORKING THAT DAY.

145), ONCE OUT IN THE HOLDING CELL PLAINTIFF TOLD DEFENDANT BARNEBURG THAT HE KNOWS REPORTS WERE FILED AGAINST MCCOVEY AND USED HIM AS THE REASON. AND HE WANTS TO CLEAR THIS UP. SO IT DON'T BECOME AN ISSUE. AND CREATE MORE PROBLEMS FOR MCCOVEY, THEY'VE ALREADY PUT HER THROUGH ENOUGH ALREADY. AND IT WASN'T ENOUGH TO GET HER BANNED FROM D-4. THEY'VE BEEN TALKING REAL BAD ABOUT HER AND USING PLAINTIFF TO DO IT.

146). DEFENDANT BARNEBURG SAID MCCOVEY IS NOT BANNED FROM D-4, WHERE DID PLAINTIFF HEAR THAT AT.

147). PLAINTIFF TOLD HIM HE HEARD SGT. HARDING ON 3RD WATCH TELL PARKER THAT AND ALSO SGT. RANGEL ON 2ND WATCH AND KNOWS MCCOVEY CAN'T COME INTO THE UNIT ON 2ND OR 3RD WATCH.

148), DEFENDANT BARNEBURG TOLD PLAINTIFF THAT MCCOVEY CAN WORK WHERE EVER SHE WANTED, WHEN EVER SHE WANTS. SHE IS NOT BANNED FROM D-4 OR ANY OTHER PART OF THE PRISON. SEE AFFIDAVIT EXHIBIT G. DATED 9/18/07

149). DEFENDANT BARNEBURG SAID MCCOVEY WAS WORKING VACATION & RELIEF OR SOMETHING LIKE THAT AND THAT'S WHY PLAINTIFF HAS NOT SEEN HER AROUND IN D-4 FOR MONTHS, SO THE PLAINTIFF CAN THROW AWAY THE 602 APPEAL IF HE WANT.

150). PLAINTIFF TOLD HIM THAT ITS NOT ABOUT SEEING MCCOVEY. ITS THE PROBLEMS THAT DEFENDANT PARKER STARTED WITH HER ACCUSATIONS. AND PLAINTIFF WANTS IT OUT OF HIS FILE.

151). DEFENDANT BARNEBURG SAID THERE IS NOTHING GOING ON WITH MCCOVEY NOR HAS THERE EVER BEEN. HE GAVE PLAINTIFF HIS WORD. SO PLAINTIFF THREW AWAY THAT 602 APPEAL. AND NOW WISHES HE HADN'T.

152). AS PLAINTIFF WAS WALKING AWAY FROM THE POD DOOR HE HEARD DEFENDANT BARNEBURG TELL PARKER IF SHE DID AS HE TOLD HER. AND FOR HER TO WRITE IT UP.

153). PLAINTIFF BELIEVES THAT PARKER EITHER LEFT SOMETHING OUT OF HER REPORT OR SHE WROTE SOMETHING SHE WASN'T SUPPOSE TO. SO IF SHE WROTE THAT REPORT AGAIN IT WAS IN AUGUST 18TH, 19TH, 2007.

154). PLAINTIFF ALSO BELIEVES THAT FROM WHAT HE HEARD BARNEBURG TELL PARKER THAT THEY WERE BOTH INVOLVED IN THIS AGAINST MCCOVEY AND PLAINTIFF.

155). OFFICER MCCOVEY AT THE TIME WAS STILL WORKING IN THE SHU BUT JUST WAS NOT ALLOWED TO WORK IN D-4. PLAINTIFF KNOWS THIS BECAUSE HE HEARD HER NAME ON THE INTERCOM. BEING PAGED.

156). THIS WAS UNTIL SOMETIME LATER DEFENDANTS PARKER AND HER FAT S&E ON 3RD WATCH CAME IN THE UNIT TO START THEIR SHIFT. HE TOLD HER HE WAS WORKING OUT ON A YARD AND HEARD MCCOVEY HAS THE SAME DAYS OFF AS PARKER. AND THAT WHEN PARKER WAS OFF MCCOVEY WAS WORKING IN OR AROUND D-4.

157). DEFENDANT PARKER PICKED UP THE PHONE AND CALLED DEFENDANT HARDING WHO SHOWED UP REAL QUICK. LIKE HE WAS STANDING IN THE CORRIDOR.

158). DEFENDANT PARKER TOLD DEFENDANT HARDING WHAT SHE WAS TOLD ABOUT MCCOVEY AND HE TOLD HER HE'D TAKE CARE OF IT.

159) - DEFENDANT PARKER WENT ON VACATION AND WAS GONE FOR ABOUT A MONTH.

160). WHILE SHE WAS ON VACATION, THERE WAS A SERIOUS CONFRONTATION OUT ON THE CORRIDOR BETWEEN DEFENDANT SGT. RANGEL AND MCCOVEY ON 2ND WATCH.

161). DEFENDANT RANGEL WAS ORDERING MCCOVEY TO ANOTHER JOB ASSIGNMENT AND SHE WAS REFUSING TO GO.

162). DEFENDANT RANGEL TOLD MCCOVEY IF SHE DON'T GO. THAT THEY WOULD SEARCH HER PROPERTY AND THAT OTHER GUYS TOO.

163). WHEN DEFENDANT PARKER CAME OFF VACATION DEFENDANT HARDING CAME IN THE UNIT ON HER FIRST DAY BACK. AND WAS LAUGHING AND HE TOLD PARKER THEY FINALLY GOT RID OF HER. AND PARKER SAID WHO! AND HE SAID MCCOVEY, SHE'S GONE. HE SAID THEY WON'T SEE HER AROUND FOR AT LEAST TWO YEARS.

164). PLAINTIFF WASN'T THE ONLY ONE WHO HEARD THIS, THE OTHER INMATES IN THE POD HEARD IT TOO.

165). PLAINTIFF WAS HEARING OFFICERS TALKING ABOUT THAT CONFRONTATION MCCOVEY HAD WITH RANGEL, THEY WERE SAYING THAT WAS SOMETHING PEOPLE WOULD BE TALKING ABOUT FOR A LONG TIME. SEE EXHIBIT __P__ DATED 10/30/07 .

166). AFTER HARDING TOLD PARKER ABOUT MCCOVEY BEING MOVED OUT OF THE (SHU) HE LEFT THE UNIT. AND PARKER TOLD THE CONTROL BOOTH OFFICER, "WELL THATS ONE PROBLEM I DON'T HAVE TO WORRY ABOUT ANY MORE".

167). PLAINTIFF FELT THAT DEFENDANT PARKER WAS REFERRING TO UN-FINISHED BUSINESS WHICH MAY BE PLAINTIFF, AS HE WAS PUSHED INTO THE SAME CORNER WITH MCCOVEY.

168). BECAUSE RIGHT AFTER THAT HE HEARD THE FAT S&E AND WILLIAMS TALKING ABOUT REGARDLESS OF WHAT HAPPENS. OR WHO THE NEW FLOOR OFFICER IS IN D-4 THE FIRST THING THEY MUST DO IS GET PLAINTIFF KICKED OUT OF D-4. BY THIS TIME EVERYONE KNEW PLAINTIFF FILED A CIVIL COMPLAINT.

169). PLAINTIFF MADE A REQUEST FOR INSPECTION OF ALL REPORTS WRITTEN BY DEFENDANT PARKER UNDER THE PUBLIC RECORDS ACT AND IT WAS DENIED SEE EXHIBIT __H__. PUBLIC RECORDS ACT FORM. dated 8/6/07. PLAINTIFF ALSO FILED A 602 APPEAL REQUESTING THIS INFORMATION AND IT IS AT THE DIRECTORS LEVEL SINCE 1-29-08 AND IS PAST THE TIME LIMIT FOR A FINAL DECISION. AND SO IS EXHAUSTED.

170). WHILE SHE WAS SORTING MAIL DEFENDANT PARKER SAW THE REQUEST AND CAME INTO THE POD AND GAVE PLAINTIFF THE FORM AND TOLD HIM SHE READ IT AND. SHE DON'T KNOW ANYTHING ABOUT IT, SAYING THAT SHE HAS NEVER FILED ANY REPORTS ON PLAINTIFF OR MCCOVEY THAT SHE WOULD NEVER DO THAT. SEE EXHIBIT __I__ AFFIDAVIT dated 8/20/07.

171). PLAINTIFF ASKED SEVERAL INMATES IN THE POD TO WRITE AFFIDAVITS AS TO WHAT PARKER SAID TO PLAINTIFF. INCASE SHE LATER DENIES SAYING THIS ABOUT FILING REPORTS ON MCCOVEY AND PLAINTIFF.

172). AFTER THE REQUEST FOR PUBLIC RECORDS ACT WAS DENIED. PLAINTIFF FILED A 602 APPEAL REQUESTING THAT THE INSTITUTION MAKE AVAILABLE ANY REPORTS FILED IN REGARDS TO OFFICER MCCOVEY AND PLAINTIFF WRITTEN BY DEFENDANT PARKER. DEFENDANT RANGEL, SGT. AND DEFENDANT BARNEBURG. AND OTHERS WHO MAY OF FILED ANY REPORTS ON PLAINTIFF AND MS. MCCOVEY.

173). UNDER RULES OF DIRECTOR CCR TITLE 15 SECTION 3450 (A). AN INMATE CAN REVIEW ANY INFORMATION KEPT BY THE DEPARTMENT OF CORRECTIONS. AND CAN HAVE IT CORRECTED, MODIFIED, OR CHANGED. THE APPEAL WAS DENIED AT THE FIRST AND SECOND LEVELS AND IS PRESENTLY AT THE DIRECTORS LEVEL REVIEW AND DEFENDANT JAMES TILTON.

174). PLAINTIFF ALLEGES THAT DEFENDANT SGT. HARDING WAS GROSSLY NEGLIGENT IN HOW HE MANAGED THE OFFICERS HE WAS SUPPOSE TO SUPERVISE. WHEN HE ENCOURAGED AND ASSISTED

DEFENDANT PARKER WITH FORMULATING THE PLAN TO ATTACK AND DISCREDIT OFFICER MCCOVEY. ACCUSING HER OF MISCONDUCT AND SERIOUSLY JEAPORDIZE MCCOVEY'S JOB. BY USING AN INMATE AS THE REASON FOR MCCOVEY'S MISCONDUCT. A SERIOUS ACCUSAT-ION.

175). DEFENDANT RANGEL CREATED A POLICY AND CUSTOM THAT APPLIED ONLY TO MCCOVEY THAT BANNED HER FROM DOING HER JOB. AND ALLOWED ILLEGAL ACTS AND ENCOURAGED OTHER CORRECTIONAL STAFF TO VERBALLY ABUSE AND ATTEMPT TO INTIMIDATE HER. DEFENDANT RANGEL WAS THE 2ND WATCH SGT. AND MCCOVEY'S SUPERVISOR. AND DIRECTLY PARTICIP-ATED IN THE ACTIONS AGAINST MCCOVEY BY ORDERING D-4 CONTROL TO NOT OPEN THE DOOR FOR HER. THROUGH HIS ACTIONS HE ALLOWED THE FALSE ACCUSATIONS TO CONTINUE TO DEVELOPE AND ALLOWED REPORTS TO BE FILED AGAINST PLAINTIFF WITHOUT ANY REGARD TO HIS RIGHT TO DUE PROCESS.

176). DEFENDANT BARNEBURG WHO PLAINTIFF SENT A WRITTEN COMPLAINT TO EXPLAINING WHAT DEFENDANT PARKER WAS TRYING TO DO TO MCCOVEY USING HIM AS A MEANS TO GET IT DONE. AND TELLING HIM IT WASN'T TRUE AND HE NEEDS TO SET PARKER STRAIGHT. DEFENDANT BARNEBURG WAS GROSSLY NEGLIGENT IN HIS SUPERVISION OF OFFICERS WHOM HE WAS IN CHARGED OF AS SUPERVISOR OF THESE FOUR BLOCKS. AND ALLOWED PARKER TO MAKE FALSE ACCUSAT-IONS AND FILE REPORTS ON THOSE SAME ACCUSATIONS.

177). DEFENDANT MOORE IS A PROGRAM SGT. IN D-FACILITY AND DEFENDANT PARKERS SUPERVISOR. WHO LEARNED OF THE ACCUSATIONS AND HAD TO KNOW THAT THEY LACKED CREDIBILITY YET LET THE ACCUSATIONS STAND AND FAILED TO GIVE PLAINTIFF THE SAFEGUARDS HE HAS AS A GUARANTEED RIGHT UNDER DUE PROCESS.

178). DEFENDANT RICE IS A LIEUTENANT FOR THE INSTITUTIONAL GANG INVESTIGATORS AND DEFENDANT BARNEBURGS SUPERVISOR. WAS GROSSLY NEGLIGENT IN MANAGING THE ACTIONS OF HIS STAFF. WHO HAD INFORMATION PERTAINING TO PLAINTIFF THAT WAS NOT SUPPORTED BY SOLID EVIDENCE BUT THAT WAS NOTHING MORE THEN A LADY OFFICER NOT LIKING ANOTHER LADY OFFICER. DEFENDANT RICE DID NOTHING TO CORRECT IT VIOLATING PLAINTIFF'S RIGHT TO DUE PROCESS.

179). DEFENDANT FERGUSON, IS THE FACILITY CAPTAIN AND WATCH COMMANDER FOR D-FACILITY AND IS RESPONDENT SUPERIOR WAS DIRECTLY INVOLVED IN THE VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS, HE WAS INFORMED OF THE PROBLEM THAT WAS BEING CREATED BY DEFENDANT PARKER, WHO WITH THE HELP OF DEFENDANT HARDING, KEPT INFORMING HIM OF MCCOVEY'S SUPPOSED MISCONDUCT TO GET HER REMOVED FROM SHU, AND BANNED FROM WORKING IN D-4. DEFENDANT FERGUSON REFUSED TO CORRECT ANY OF THESE VIOLATIONS.

180). DEFENDANT WARDEN HOREL, IS RESPONDENT SUPERIOR LEARNED OF THE ACCUSATIONS AGAINST MCCOVEY AND FAILED TO DO ANYTHING TO CORRECT IT. ALLOWING THAT HIS OFFICER ENDURE THE ABUSE FROM EVERYONE NAMED IN THIS LAWSUIT. THE WARDEN FAILED TO REACT TO WHAT CAN ONLY BE DESCRIBED AS ABUSE OF AUTHORITY BY HIS STAFF AND DEFENDANTS. WHO LOOKED THE OTHER WAY OR IGNORED WHAT WAS GOING ON. ALLOWING PLAINTIFF'S DUE PROCESS TO BE VIOLATED. REPORTS BEING FILED THAT HE WAS NOT BEING GIVEN A HEARING ON.

181). DEFENDANT TILTON THE SECRETARY/DIRECTOR OF PRISONS AND RESPONDENT SUPERIOR IS LIABLE FOR THE VIOLATION OF PLAINTIFF'S RIGHTS BECAUSE AS DIRECTOR, HE ESTABLISHES THE POLICES THAT HIS STAFF ARE SUPPOSE TO FOLLOW. AND IS RESPONSIBLE FOR THEIR TRAINING. AND IS ALLOWING DEFENDANTS TO ACT OUTSIDE ESTABLISHED PROCEDURES OF THE DEPARTMENT OPERATIONAL MANUAL.

182). ALOT OF CORRECTIONAL OFFICERS WHO WORKED WITH MCCOVEY KNOW THE ACCUSATIONS LACK FOUNDATION. BUT SAID NOTHING TO ASSIST HER.

183). DEFENDANTS FROM THE INSTITUTIONAL GANG INVESTIGATORS HAVE ALOT OF INFORMATION IN PLAINTIFF'S FILES WHICH IS INACCURATE AND FALSE AND PLAINTIFF IS ASKING TO HAVE IT CORRECTED AS A RIGHT AFFORDED HIM IN THE DEPARTMENTAL OPERATION MANUAL (DOM) ON GANGS.

184). THE RECORDS AND INFORMATION KEPT BY DEFENDANTS WILL BE USED BY THEM AGAINST THE PLAINTIFF AND WILL ADVERSELY AFFECT HIM REGARDING HIS CUSTODY, SECURITY CLASSIFICATIO AND JOBS. AS WELL AS LIVING ASSIGNMENTS IN THE FUTURE.

IT HAS ALREADY AFFECTED HIS ABILITY TO SPEAK TO McCOVEY ABOUT THIS CASE BECAUSE SHE WASN'T ALLOWED TO WORK IN D-4, AND PLAINTIFF DOES NOT WANT TO PUSH THE ISSUE WHEN EVER HE DOES SEE HER BECAUSE HE DOESN'T WANT TO CAUSE HER ANY MORE PROBLEMS.

185). IN SEPTEMBER 5TH 2006 PLAINTIFF'S CASE WENT BEFORE THE UNIT COMMITTEE 180 day REVIEW AND DEFENDANT FERGUSON WAS THE COMMITTEE CHAIRMAN. HE ORDERED PLAINTIFF SHOULD BE RETAINED IN SHU BASED ON CONFIDENTIAL INFORMATION IN A 128-B CHRONO dated 6/12/01. SEE EXHIBIT __J__ dated 9/5/06. DEFENDANT FERGUSON WROTE IN COMMENTS THAT PLAINTIFF SHOULD BE CONTINUED ON SINGLE CELL STATUS DUE TO SAFETY CONCERNS.

186). IN ANOTHER UNIT COMMITTEE 180 day REVIEW ON 9/25/07. AND BEFORE COMMITTEE CHAIR-MAN CAPTAIN JOHNSON. ALSO RECOMMENDED TO RETAIN PLAINTIFF IN SHU BASED ON THE CONFIDENTIAL INFORMATION IN 128-B CHRONO dated 6/12/01. THE SAME USED BY CAPTAIN FERGUSON IN 2006. AND THE I.G.I. TO VALIDATE HIM AS AN ACTIVE GANG MEMBER. THIS IS A LETTER SOMEONE WROTE TO PLAINTIFF, SOMETHING HE HAS NO CONTROL OVER. CAPTAIN JOHNSON ALSO ADDED COMMENTS THAT PLAINTIFF SHOULD REMAIN ON SINGLE CELL STATUS DUE TO POSSIBLE SAFETY CONCERNS. SEE EXHIBIT __K__. 128-B CHRONO dated 9/25/07.

187). IF PLAINTIFF WAS AS INVOLVED IN GANG ACTIVITY AS DEFENDANTS CLAIM OR ASSOCIATED WITH HIS FORMER GANG THERE WOULD BE NO NEED FOR CONCERN. AND ONLY SHOWS THAT THE INFORMATION RELIED ON IS INACCURATE. YET THEY CONTINUE TO CLASSIFY HIM AS AN ACTIVE GANG MEMBER.

188). PLAINTIFF ALLEGES THAT HE WAS MOVED TO THE SHORT CORRIDOR FOR THE PURPOSE OF USING THIS MOVE SO THAT IT FORCES PLAINTIFF TO ASSOCIATE WITH FORMER ASSOCIATES SO THEY CAN ACCUSE HIM OF ASSOCIATION.

189). PLAINTIFF WAS PLACED IN THE SETTING HE NOW FINDS HIMSELF IN AND IS NOT GOING TO JUST SIT IN HIS CELL AND TALK TO NO ONE.

190). PLAINTIFF FURTHER BELIEVES THAT BECAUSE OF HOW EVENTS MATERIALIZED IN D-4 WITH DEFENDANT PARKER. MAKING ACCUSATIONS AGAINST PLAINTIFF BECAUSE SHE WAS PUT UP TO IT BY THE IGI UNIT AND DEFENDANTS.

191). PLAINTIFF DOES NOT BELIEVE THAT DEFENDANT PARKER ACTED ALONE. FOR THIS TO GET. AS FAR AS IT HAS. HER SUPERVISORS HAD TO OF HELPED HER GET IT DONE. THIS ACCUSATION COULD RESULT IN FIRING MCCOVEY. AND GETTING PLAINTIFF IN SERIOUS TROUBLE AS WELL. THIS MAKES DEFENDANT PARKER LIABLE.

192). THOSE ACCUSATIONS WHICH HAD NO EVIDENCE WHATSOEVER HAVE ALREADY AFFECTED MCCOVEY FIRST BY GETTING MCCOVEY REASSIGNED FROM HER PRIOR JOB ASSIGNMENT AND BEING PLACED ON RESTRICTIONS. THIS IS AN OFFICER WE'RE TALKING ABOUT. NOT AN INMATE. PLAINTIFF CAN BE RESTRICTED BUT ONLY AFTER A HEARING.

193). PLAINTIFF ALSO KNOWS THAT MCCOVEY WAS THE ONLY OFFICER THAT WAS NOT ALLOWED TO REQUEST A JOB CHANGE. WHEN ALL OTHER OFFICERS WERE GIVEN AN OPPORTUNITY TO CHOOSE WHERE THEY WANT TO WORK FOR THE NEXT COUPLE OF YEARS. DEFENDANTS RANGEL. AND FERGUSON. HAD ALOT TO DO WITH THAT. BECAUSE OF DEFENDANTS PARKER AND OTHERS REPORTS.

194). PLAINTIFF ALSO KNOWS THAT DEFENDANT PARKER HAS A CLOSE RELATIONSHIP WITH A SUPERVISOR. WHO FROM THE SOUND OF IT IS EITHER A LIEUTENANT OR A CAPTAIN. BECAUSE PLAINTIFF HEARD THE CONTROL BOOTH OFFICER ASK HER ABOUT IT. SO PARKER HAD EVERYTHING IN HER FAVOR FROM THE START. ALL THE DEFENDANT SGT'S AND CAPTAIN FERGUSON. AND MCCOVEY HAS NO ONE HELPING HER.

195). THE INFORMATION INACCURATELY USED AGAINST MCCOVEY AND PLAINTIFF. CONTINUES TO CAUSE PROBLEMS. PLAINTIFF HAS HEARD DEFENDANT HARDING TALKING WITH THE NOW ASSIGNED 3RD WATCH OFFICERS ABOUT MCCOVEY. SAYING THEY CANT FIRE HER. BUT FOR THEM TO WATCH HER.

196). THEY KNOW THEY ORIGINALLY HAD NOTHING AND ACTED IMPULSIVELY. SO NOW ARE TRYING TO COME UP WITH SOMETHING THEY CAN USE. AND THAT MEANS ANYTHING AFFECTING MCCOVEY IS GOING TO AFFECT PLAINTIFF TOO. AMOUNTING TO SLANDER AND THEY'RE LIABLE.

4TH CAUSE OF ACTION
REFUSAL TO PROCESS 602 APPEALS
DUE PROCESS VIOLATION AND
VIOLATION OF FIRST AMENDMENT
INFRINGEMENT OF FREEDOM OF SPEECH.

197). DEFENDANT CYNTHIA SCAVETTA AN ASSOCIATE WARDEN AT THE TIME FOR THE SECURITY HOUSING UNIT, IMPLEMENTED A NEW PROCEDURE THAT ALL MAIL GOING OUT OF THE SHU WOULD BE STAMPED WITH A LARGE RED STAMP ACROSS ANY WRITTEN AREAS OF THE LETTER, POST CARDS, ART WORK, ANYTHING FROM THE SHU INMATES WOULD BE STAMPED. SEE EXHIBIT ___L___. 602 APPEAL dated 12/3/06 AND ATTACHED MEMORANDUM dated 11/13/06

198). THE PRACTICE OF STAMPING INMATE'S MAIL IN THIS FASHION DESTROYS THE LETTER, MAKING IT DIFFICULT FOR OUR FAMILY, FRIENDS TO READ. BY LOOKING AT THE STAMP ACROSS THE MEMORANDUM IT DISPLAYS HOW THE STAMP SHOULD LOOK.

199). AFTER FILING THE 602 APPEAL ON THIS NEW PROCEDURE AND DEFENDANT SCAVETTA THE APPEAL WAS NOT PROCESSED. DEFENDANT WILBUR REFUSED TO PROCESS IT, CLAIMING IT HAS NO EVIDENCE OF DEFACING ART WORK. SEE EXHIBIT ___L___. APPEALS SCREENING FORM dated 12/11/06. ATTACHED TO 602 APPEAL EXHIBIT dated 12/3/06.

200). PLAINTIFF WROTE A LETTER TO DEFENDANT WILBUR EXPLAINING THAT THE APPEAL IS NOT JUST ABOUT THE ART WORK, BUT ATTACHED IS COPIES OF ART WORK. THE APPEAL IS ABOUT DEFACING MAIL PERIOD. SEE 602 APPEAL EXHIBIT ___L___. AND PLAINTIFF'S LETTER ATTACHED dated 12/3/06.

201). THE MAIL IS ALREADY SCREENED AND RE-SCREENED, BY THE (IGI) AND UNIT OFFICERS. THERE IS NO REASON TO DESTROY OUR MAIL. JUST BECAUSE WE ARE IN SHU.

202). DEFENDANT WILBUR RETURNED THE 602 APPEAL AGAIN REFUSING TO PROCESS IT IN VIOLATION OF THE APPEALS PROCEDURES DESCRIBED IN CCR TITLE 15. AND WROTE IN ANOTHER SCREENING FORM THAT PLAINTIFF HAS NOT DEMONSTRATED HOW THE PROCEDURE ADVERSELY AFFECTS HIM. SEE EXHIBIT ___L___. APPEALS SCREENING FORM -II dated 12/22/06.

203). PLAINTIFF POINTED OUT THAT A PHOTOGRAPH COPY ATTACHED IN THE 602 APPEAL SHOWS HOW IT WAS STAMPED IN THE BACK OF THE PHOTO. AND THE INK WENT THROUGH IT AND CAN BE SEEN ON THE FACE ON THE OTHER SIDE. AND SEE A BEFORE AND AFTER PHOTO. IN EXHIBIT ___L___. IN 602 APPEAL dated 12/3/06.

204). PLAINTIFF HAS ATTACHED SEVERAL DRAWINGS SO THE STAMP ON THE BACK OF IT CAN BE SEEN. NO ONE WANTS TO RECIEVE A DRAWING WITH THAT STAMP ON THE BACK. SEE EXHIBIT L. 602 APPEAL dated 12/3/06.

205). PLAINTIFF ALLEGES THAT BY REFUSING TO PROCESS THE APPEALS IT DENIES HIM THE ABILITY TO EXHAUST ADMINISTRATIVE REMEDIES.

206). PLAINTIFF NEXT FILED AN APPEAL AFTER HIS CASE WENT BEFORE DEFENDANT SCAVETTA FOR HIS ANNUAL REVIEW. ON 2/22/06. DEFENDANT SCAVETTA REFERRED PLAINTIFF TO CSR BOARD TO CONTINUE ON INDETERMINATE SHU STATUS, BASED ON GANG ACTIVITY. PLAINTIFF ALLEGES THAT THE INFORMATION SHE RELIED ON IS FALSE, AND OUTDATED, AND DOES NOT PROVE HE IS INVOLVED IN ANY ILLEGAL ACTS. SEE EXHIBIT M. 602 APPEAL dated 4/17/06.

207). DEFENDANT WILBUR REFUSED TO PROCESS THE 602 APPEAL, MAKING EXCUSES FOR THE DEFENDANT SCAVETTA, INSTEAD OF LETTING SCAVETTA ANSWER THE APPEAL HER SELF, WHICH IS THE PROCEDURE. SEE EXHIBIT M. AND SCREENING FORM dated 5/9/06. ATTACHED TO 602 APPEAL dated 4/17/06.

208). PLAINTIFF WROTE AN EXPLANATION ON AN ATTACHED SHEET OF PAPER TO DEFENDANT WILBUR WHY THE APPEAL SHOULD BE PROCESSED ACCORDINGLY TO PROCEDURES OUTLINED IN THE APPEAL PROCEDURES. SEE EXHIBIT M. AND ATTACHED LETTER TO 602 APPEAL dated 5/10/06.

209). THEN ON MAY 19TH 2006 DEFENDANT WILBUR AGAIN REFUSED TO PROCESS THE APPEAL CLAIMING THAT THE COMMITTEE DOES NOT MAKE DECISIONS WHETHER AN INMATE IS A GANG MEMBER OR NOT.
YET DEFENDANT SCAVETTA IS CLEARLY MAKING A RECOMMENDATION TO THE CSR BOARD TO RETAIN PLAINTIFF AS INDETERMINATE due TO ACTIVE GANG ACTIVITY. SEE EXHIBIT M. AND SCREENING FORM dated 5/9/06 ATTACHED TO 602 APPEAL dated 4/17/06

### 5TH CAUSE OF ACTION
### HARDSHIPS CAUSED BY INDEFINATE
### SHU. A VIOLATION OF EQUAL PROTECTION
### AND CRUEL AND UNUSUAL PUNISHMENT.
### UNDER THE EIGHTH AND FOURTEENTH U.S.
### CONSTITUTIONAL AMENDMENTS.

210). THE SECURITY HOUSING UNIT CAUSES MANY HARDSHIPS FOR SHU INMATES DEPRIVING THEM OF BASIC NEEDS AND PRIVILEDGES THAT OTHER PRISONERS HAVE IN CALIFORNIA PRISONS AND SECURITY HOUSING UNITS.

211). PLAINTIFF IS NOT ALLOWED THE SAME PROPERTY AND CANTEEN PRIVILEDGES INMATES HAVE IN THE GENERAL POPULATION, MAJORITY OF PRISONERS IN THE SHU ARE NOT THERE FOR A DISCIPLINARY REASON. BUT DUE TO GANG MEMBERSHIP OR ASSOCIATION AND HELD INDEFINATELY IN SHU BY THE ADMINISTRATION.

212). PLAINTIFF AND OTHERS IN SHU ARE NOT ALLOWED CONTACT VISITS WITH THEIR FAMILY AND LOVED ONES. AND MUST VISIT IN A PLEXI GLASS BOOTH AND TALK BY A PHONE. PLAINTIFF'S FAMILY AND KIDS LIVE IN N. CAROLINA AND TENNESSEE AND THE VISIT IS NOT WORTH THE TROUBLE.

213). PLAINTIFF AND OTHERS IN SHU ARE NOT ALLOWED PHONE CALLS. ONLY IN THE CASE OF A DEATH IN THE INMATES FAMILY. PLAINTIFF DISAGREES WITH THIS AS WELL BECAUSE HIS GIRLFRIEND DIED IN AN ACCIDENT IN 1992 AND HE WAS NOT ALLOWED TO CALL HER PARENTS. THEY CLAIM SHE IS NOT IMMEDIATE FAMILY. IMMEDIATE FAMILY IS MOTHER, FATHER, BROTHERS, SISTERS, WIFE AND KIDS.

214). PHONE CALLS ARE AN ALTERNATIVE MEANS OF COMMUNICATING WITH FAMILY. AND CAN BE MONITORED BY PRISON OFFICIALS. AND ALLOWED OCCASIONALLY WOULD LET INMATES WHO DON'T GET VISITS TO STILL TALK TO THEIR FAMILY. PLAINTIFF HAS NOT SEEN HIS MOTHER IN 17 YEARS. AND HAS NOT SEEN OR SPOKEN TO HIS KIDS IN 24 YEARS. SEE EXHIBIT __9__. A LETTER FROM CHILD SUPPORT SERVICES. DATED AUGUST 1st 1997. THIS IS HOW PLAINTIFF FOUND HIS DAUGHTER. ALSO ATTACHED ARE TWO LETTERS FROM PLAINTIFF'S YOUNGEST DAUGHTER LIVING ON INDIAN RESERVATION.

215). IN 1993 PLAINTIFF ASKED TO TALK TO THE SHU PSYCHOLOGIST DOCTOR COSTELLOE BECAUSE AFTER HIS GIRLFRIEND DIED HE HAD TROUBLE SLEEPING. AND ASKED FOR SOME SLEEPING PILLS. AND TO TALK TO SOMEONE ABOUT IT.

216). AT THAT TIME PLAINTIFF WEIGHED 170-180 POUNDS AND EXERCISED TEN TIMES MORE THEN WHAT HE DOES TODAY. AND WAS VERY HEALTHY. TILL HE BEGAN LOSING ALOT OF WEIGHT AND IS ALWAYS HUNGRY.

217). THIS COULD OF HAD SOMETHING TO DO WITH THE STRESS, DEPRESSION, OR THE SMALL PORTIONS OF FOOD THEY GIVE IN SHU. OR A COMBINATION OF SOME OR ALL THE ABOVE.

218). AND THE FOOD THAT IS SERVED IS BROUGHT ON TRAYS ALREADY MADE. AND FOR SOME REASON THEY ALWAYS HAVE WATER IN THE FOOD.

219). PLAINTIFF IS IN A CELL 23 HOURS OF THE DAY, AND IS ONLY GIVEN AN HOUR AND A HALF OUT ON THE YARD TO EXERCISE, WHICH IS NOT NEARLY ENOUGH TIME TO BURN OUT EXCESS ENERGY. OR TO ENJOY THE OUTDOOR ELEMENTS. BY THE TIME PLAINTIFF IS HALFWAY THROUGH HIS EXERCISES ITS TIME TO GO IN. SO HE DON'T GET TO ENJOY THE OUTDOORS.

220). THE MAIL IN THE SHU IS ALWAYS DELAYED FOR DAYS. SOMETIMES WEEKS BY THE GANG UNIT BECAUSE THEY WANT TO SCREEN IT OVER AND OVER. HOPING TO FIND AN EXCUSE TO CONFISCATE IT.

221). PLAINTIFF AND OTHERS IN THE SHU ARE NOT ALLOWED TO TAKE PICTURES. THIS IS ALSO A MEANS OF COMMUNICATION WITH FAMILY, LOVED ONES. PLAINTIFF HAS NOT SEEN HIS KIDS IN 24 YEARS, NOR HAVE THEY SEEN HIS FACE SINCE HE WAS LAST OUT ON THE STREET. PLAINTIFFS MOTHER LAST VISITED HIM IN 1992. PHOTO'S WOULD BE A SMALL LUXURY FOR FAMILY. AND IT'S NOT A SECURITY ISSUE. THEY ALLOW CERTAIN INMATES TO TAKE PICTURES BUT ONLY THOSE THEY HAVE RECLASSIFIED AS INACTIVE. SEE EXHIBIT __N__. CANTEEN FORM AND PHOTO DUCAT SALE.

222). IF PLAINTIFF WAS ON A MAINLINE HE COULD OF REQUESTED A TRANSFER TO N. CAROLINA. OR TO TENNESSEE. AS PRISONERS WERE BEING SHIPPED OUT OF STATE TO EASE OVER CROWDING. THIS WOULD OF MEANT VISITS FOR PLAINTIFF WITH HIS KIDS AND GRANDKIDS LIVING ON THE INDIAN RESERVATION.

223). TO CONTINUE TO HOLD PLAINTIFF IN SHU BASED ON JUST GANG ACTIVITY. OR ASSOCIATION WITH NO EVIDENCE THAT HE'S COMMITTING ANY CRIMES OR PROMOTING GANG ACTIVITY IS A VIOLATION OF HIS CONSTITUTIONAL RIGHTS AND CRUEL AND UNUSUAL PUNISHMENT. SEE EXHIBIT __O__ dated 7/19/07. DECLARATION.

       I DECLARE UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION.

                                      REPECTFULLY SUBMITTED.

                                      Pablo Piña

DATED 4/15/08.

## IV.
## EXHAUSTION OF ADMINISTRATIVE
## REMEDIES.

224). PLAINTIFF PABLO PIÑA D-28079 USED THE PRISONS GRIEVANCE SYSTEM AND ITS PROCEDURES AT PELICAN BAY STATE PRISON TO ATTEMPT TO RESOLVE THE ISSUES IN THIS COMPLAINT.
IN 9/11/05 HE FILED A 602 APPEAL AFTER BEING DENIED INACTIVE STATUS. THE APPEALS OFFICER SAID THE (DRB) DECISIONS ARE NOT APPEALABLE THROUGH THE APPEALS SYSTEM, MAKING IT AN EXHAUSTED CLAIM. SEE EXHIBIT R dated 9/11/05.

225) PLAINTIFF FILED A 602 APPEAL ON 10/22/06 FOR LEGAL MAIL BEING SENT TO I.G.I. BY OFFICER PARKER, APPEAL DENIED AT THE DIRECTORS LEVEL ON 9/27/07. EXHAUSTED. SEE EXHIBIT D.

226). PLAINTIFF FILED A 602 APPEAL ON 4/22/07 BECAUSE HIS LEGAL MAIL WAS OPENED. THE APPEAL WAS DENIED AT THE DIRECTORS LEVEL ON 10/13/07 EXHAUSTED SEE EXHIBIT E.

227). PLAINTIFF FILED A 602 APPEAL ON 9/20/07 BECAUSE HIS LEGAL MAIL WAS OPENED. THE APPEAL WAS DENIED AT THE DIRECTORS LEVEL ON 3/17/08. EXHAUSTED. SEE EXHIBIT F.

228). PLAINTIFF FILED A 602 APPEAL ON 12/3/06 BECAUSE ASSOCIATE WARDEN SCAVETTA IMPLEMENTED A NEW POLICY THAT ALL MAIL IS TO BE STAMPED WITH SHU IDENTIFICATION MARK ACROSS IT. THIS APPEAL WAS NOT PROCESSED IN DISREGARD FOR THE APPEALS PROCEDURES IN CCR TITLE 15 RULES OF THE DIRECTOR. SEE EXHIBIT L.

229). PLAINTIFF FILED A 602 APPEAL ON 4/17/06 BECAUSE THE ASSOCIATE WARDEN SCAVETTA USED INFORMATION THAT IS INACCURATE TO CONTINUE TO HOLD PLAINTIFF IN SHU. ON INDETERMINATE STATUS. THIS APPEAL WAS NOT PROCESSED. IN VIOLATION OF APPEALS PROCEDURES. SEE EXHIBIT M.

ANYTIME THAT PRISON OFFICIALS REFUSE TO PROCESS A 602 APPEAL IT IS DEEMED EXHAUSTED.

# V.
## LEGAL CLAIMS

230). PLAINTIFF PABLO PIÑA REALLEGES AND INCORPORATES BY REFERENCE
PARAGRAPHS 1 THROUGH 223.

231). THE CONTINUED RETENTION IN THE SECURITY HOUSING UNIT BY USE OF FALSE AND
INACCURATE INFORMATION, IS A VIOLATION OF HIS CONSTITUTIONAL RIGHTS TO
THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.
BY DEPRIVING THE PLAINTIFF PABLO PIÑA THE ABILITY TO FACE HIS ACCUSERS AND
OR CHALLENGE THE CONFIDENTIAL INFORMATION USED TO CONTINUE HIS INDEFINATE
SHU, A VIOLATION OF DUE PROCESS AND CRUEL AND UNUSUAL PUNISHMENT, THE
RIGHTS GUARANTEED BY THE UNITED STATES CONSTITUTION.

232). PLAINTIFF HAS NO PLAIN ADEQUATE OR COMPLETE REMEDY AT LAW TO REDRESS THE
WRONGS DESCRIBED HEREIN.
PLAINTIFF HAS BEEN AND WILL CONTINUE TO BE IRREPARABLY INJURED BY THE
CONDUCT OF THE DEFENDANTS UNLESS THIS COURT GRANTS THE DECLARATORY
AND INJUNCTIVE RELIEF PLAINTIFF SEEKS.

# VI.
## PRAYER FOR RELIEF

233). WHEREFORE PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT ENTER A JUDGMENT
GRANTING PLAINTIFF'S,
1). DECLARATORY JUDGMENT THAT DEFENDANTS ACTS AND POLICIES AND PRACTICES
DESCRIBED VIOLATE PLAINTIFF'S RIGHTS UNDER THE UNITED STATES CONSTITUTION.

2). A PRELIMINARY AND PERMANENT INJUNCTION REQUIRING DEFENDANTS AND ALL
THEIR SUCCESSORS TO FOLLOW ALL PROCEDURES REQUIRED IN THE RECLASSIFYING
OF SHU PRISONERS WHO QUALIFY FOR INACTIVE STATUS. AND RELEASE TO A
GENERAL POPULATION.

3). REQUIRE THAT DEFENDANTS ABIDE BY THE 602 APPEALS PROCEDURES ALLOWING
INMATES TO EXHAUST STATE REMEDIES.

4). REQUIRE THAT THE PROCEDURES REGARDING DEFACING SHU INMATES MAIL BE ABOLISHED

5). REQUIRE THAT INMATES IN SHU BE ALLOWED TO MAKE PHONECALLS PERIODICALLY AS ARE INMATES IN ALL GENERAL POPULATIONS. IF THEY ARE SERVING AN INDETERMINATE SHU TERM.

6). REQUIRE THAT DEFENDANTS PROVIDE A BETTER COMMISSARY FOR SHU INMATES SERVING AN INDEFINATE SHU TERM. LIKE THE ONES FOR GENERAL POPULATION.

7). REQUIRES THAT PLAINTIFF BE ALLOWED TO GATHER AFFIDAVITS OR DECLARATIONS FROM OTHER INMATES, AND OR PRISON STAFF, AND ESPECIALLY TO COMMUNICATE WITH MCCOVEY WHEN NEEDED, AND ANY RESTRICTIONS OR BAN BE REMOVED FROM HER BARRING HER FROM WORKING IN D-4.

8). COMPENSATORY DAMAGES IN THE AMOUNT OF $100,000 ONE HUNDRED THOUSAND DOLLARS AGAINST DEFENDANTS MARQUEZ, RANDOLPH, SCAVETTA, RANGEL, HARDING, RICE, HOREL, TILTON, FERGUSON, PARKER, GRANNIS, BARNEBURG, J. DIX, FISHER, COOK. ALL ARE SUED IN THEIR INDIVIDUAL CAPACITY. AND OFFICIAL CAPACITY SEEKING INJUNCTIONS.

9). PUNITIVE DAMAGES IN THE AMOUNT OF $_____, AT THE COURTS DISCRETION AS TO EACH DEFENDANTS CULPABILITY.

10). TRIAL BY EITHER THE COURT, OR A PANEL OF JURORS.

11). ANY AND ALL COSTS FOR THE SUIT AGAINST PLAINTIFF.

12). AND ANY ADDITIONAL RELIEF THE COURT MAY DEEM NECESSARY, JUST AND PROPER, OR EQUITABLE.

RESPECTFULLY SUBMITTED.

Pablo Jung

PRO-SE

DATED 4/15/08

## MEMORANDUM OF LAW
## AND POINTS OF AUTHORITY

### ARGUMENT I.
CRUEL AND UNUSUAL PUNISHMENT
IN VIOLATION OF EIGHT AMENDMENT
OF UNITED STATES CONSTITUTION.

PLAINTIFF PABLO PIÑA CONTENDS THAT THE CONTINUED SEGREGATION IN THE SECURITY HOUSING UNIT VIOLATES THE UNITED STATES CONSTITUTION'S RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT.

PLAINTIFF HAS BEEN HELD IN THE (SHU) SECURITY HOUSING UNIT SINCE HIS ARREST IN 1984. DUE TO GANG MEMBERSHIP AND OR ASSOCIATION, AND ALLEGES THAT THE DEFENDANTS AND DEPARTMENT OF CORRECTIONS ARE WAREHOUSING PRISONERS IN SEGREGATION UNITS FOR THE DURATION OF THEIR PRISON SENTENCE.
IN MOST CASES AS IN PLAINTIFF PIÑA'S THAT CONSTITUTES A LIFE SENTENCE IN THE (SHU).

PLAINTIFF ORIGINALLY WAS PLACED IN THE SECURITY HOUSING UNIT IN 1975 WHILE SERVING HIS FIRST PRISON COMMITMENT. DUE TO DISCIPLINARY VIOLATIONS UNDER AN OLD PRISON CDCR COMMITMENT NUMBER #B-78117. BUT PAROLED IN 1982 AND WAS DISCHARGED FROM PAROLE.

PLAINTIFF WAS ARRESTED, CONVICTED AND SENTENCED TO PRISON ON THE PRESENT COMMITMENT AND NEW CDCR NUMBER #D-28079. BUT ON HIS ARRIVAL TO STATE PRISON WAS PLACED IN THE (SHU) TO SERVE (SHU) TIME THAT HE HAD BEEN SERVING UNDER THE PRIOR PRISON TERM.

PLAINTIFF ALLEGES THAT THE ACTIONS BY ALL DEFENDANTS WHILE ACTING UNDER COLOR OF STATE LAW VIOLATE HIS CONSTITUTIONAL GUARANTEED RIGHTS.

AFTER TWENTY FOUR YEARS IN THE (SHU) FOR GANG MEMBERSHIP THAT PLAINTIFF DOES NOT DENY. BUT NOW PETITIONS THE COURT FOR CLARIFICATION AS TO HOW LONG DEFENDANTS CAN HOLD HIM IN THE (SHU) FOR WHAT HE MAY OF DID IN THE PAST.

DEFENDANTS RELY ON INFORMATION THAT IS OUTDATED. AND OR SUSPECT AS IT COMES FROM INFORMANTS AND IS MERELY WORD OF MOUTH. WITH NO SOLID EVIDENCE THAT PLAINTIFF HAS COMMITED CRIMINAL ACTS RELATED TO ANY GANG ACTIVITY RECENTLY.

THERE IS NO REAL EVIDENCE DEFENDANTS CAN PRODUCE WHICH WILL PROVE THAT PLAINTIFF IS AN ACTIVE PARTICIPANT IN GANG CRIMINAL ACTS OR OF ASSOCIATION WITH HIS FORMER GANG ASSOCIATES.

PLAINTIFF HAS REQUESTED TO BE RECLASSIFIED AS AN INACTIVE GANG MEMBER. BECAUSE HE HAS NOT BEEN INVOIVED IN ANY GANG ACTIVITY SINCE 1996-1997.
AND BECAUSE THE DEPARTMENT OF CORRECTIONS HAS A NEW REGULATION THAT A PRISONER CAN ASK TO BE RECLASSIFIED AS AN INACTIVE GANG MEMBER AFTER BEING IN THE (SHU) SIX YEARS. AND NOT PARTICIPATE IN ANY GANG ACTIVITY. THERE IS NO OTHER CRITERIA.

UNDER CALIFORNIA CODE OF REGULATIONS C.C.R. TITLE 15 SECTION 3378(e). AN INMATE HOUSED IN A SECURITY HOUSING UNIT (SHU) AS A GANG MEMBER OR ASSOCIATE MAY BE CONSIDERED FOR REVIEW OF INACTIVE STATUS BY THE DEPARTMENT REVIEW BOARD WHEN THE INMATE HAS NOT BEEN IDENTIFIED AS HAVING BEEN INVOIVED IN GANG ACTIVITY FOR A MINIMUM OF SIX (6) YEARS. VERIFICATION OF AN INMATE'S INACTIVE STATUS SHALL BE APPROVED OR REJECTED BY THE CHIEF, OCS, OR A DESIGNEE. THE APPROVAL OR REJECTION SHALL BE FORWARDED FOR PLACEMENT IN THE INMATE'S C-FILE.

DEFENDANTS HAVE KNOWN PLAINTIFF IS NOT INVOLVING HIMSELF IN GANG ACTIVITY AND HAVE INFORMATION IN THEIR FILES THAT SUPPORT THAT.

BUT REFUSE TO CONSIDER HIM FOR INACTIVE STATUS DESIGNATION AS IS HIS RIGHT ACCORDING TO THE POLICIES DESCRIBED IN CCR TITLE 15. INSTEAD THE DEFENDANTS WOULD RATHER RELY ON EVIDENCE WHICH WOULD NOT STAND UP IN A COURT OF LAW. BECAUSE ITS HEARSAY.

INFORMATION FROM INFORMANTS IS CONSIDERED RELIABLE REGARDLESS IF ITS TRUE OR NOT, AND BASED ON JUST THAT INFORMATION ITS ENOUGH TO hold HIM IN THE SHU

AN INMATE IN ARIZONA DEPARTMENT OF CORRECTIONS WHO WAS IN MUCH A SIMILAR SITUATION FILED SUIT ALLEGING THAT INDEFINATE DETENTION IN NEAR SOLITARY CONFINEMENT BASED ON ALLEGED GANG MEMBERSHIP VIOLATED DUE PROCESS.
IN THAT CASE THE COURT HELD THAT INMATES FIVE AND A HALF YEARS IN SHU WITH NO END IN SIGHT GAVE RISE TO PROTECTED DUE PROCESS LIBERTY INTEREST, AND THAT HE COULD NOT BE INDEFINATELY DETAINED IN SPECIAL MANAGEMENT UNIT (SMU) BASED SOLELY ON HIS STATUS AS A GANG MEMBER AND ABSENT OF EVIDENCE OF OVERT MISCONDUCT. SEE   KOCH .V. LEWIS (D. ARIZ. 2001) 216 F.SUPP. 2d 994.

IN THAT CASE IN ARIZONA, THE INMATE WAS HELD IN SEGREGATION UNITS FOR ONLY FIVE YEARS. WHERE AS PLAINTIFF HAS BEEN IN THE SECURITY HOUSING UNIT (SHU) ALL OF THE 24 YEARS HE'S BEEN IN PRISON. HE HASN'T EVEN BEEN GIVEN THE OPPORTUNITY TO EITHER PROGRAM OR MESS UP AGAIN.
PLAINTIFF PIÑA DOESN'T DENY THAT IN HIS YOUTH HE WAS ACTIVE IN GANG ACTIVITIES AND HAS AN EXTENSIVE DISCIPLINARY HISTORY, BUT THAT WAS A VERY LONG TIME AGO.

AND THE NEWLY ESTABLISHED PROCEDURES AFFORDING INACTIVE STATUS TO GANG MEMBERS THAT HAVE NOT BEEN INVOLVED IN GANG ACTIVITY APPLY TO PLAINTIFF.

BUT DEFENDANTS WILL ALWAYS COME UP WITH JUST ENOUGH INFORMATION OR EVIDENCE TO HOLD HIM IN THE (SHU) ANOTHER SIX YEARS.

THEN AT THE END OF THOSE SIX YEARS THEY'LL DO IT AGAIN, AND AGAIN, AND IN BETWEEN ARE HOPING PLAINTIFF EITHER DEBRIEFS OR DIES. THERE IS NO END IN SIGHT.

THE SEGREGATION WILL CONTINUE AS NOTHING WILL SATISFY THE DEFENDANTS UNLESS PLAINTIFF DEBRIEFS.

MORE RECENT IN A CALIFORNIA CASE THE DISTRICT COURT FOR THE NORTHERN DISTRICT, HELD THAT THE DEPARTMENT OF CORRECTIONS PROCEDURES FOR THE RECLASSIFICATION OF GANG MEMBERS HOUSED IN THE SECURITY HOUSING UNIT AT PELICAN BAY STATE PRISON ARE NOTHING MORE THEN A JOKE. THE COURT DID NOT USE THOSE EXACT WORDS BUT THE MEANING IS THE SAME. SEE APPENDIX 1.

IN THE CASE OF GRIFFIN V. GOMEZ 139 F.3d 905 (C.A.9 (CAL.) 1998. GRIFFIN FILED A HABEAS CORPUS PETITION CHALLENGING HIS INDEFINATE CONFINEMENT IN THE SECURITY HOUSING UNIT (SHU) AT PELICAN BAY STATE PRISON. AND CLAIMS THAT HIS INDEFINATE CONFINEMENT WHICH IS BASED ON ALLEGED GANG MEMBER-SHIP VIOLATES THE DUE PROCESS CLAUSE AND THE EIGHTH AMENDMENT OF THE CONSTITUTION.

HE ALSO CLAIMS THAT THE DEBRIEFING REQUIREMENT VIOLATES THE DUE PROCESS CLAUSE AS WELL AS THE FIFTH AND EIGHTH AMENDMENTS.

PLAINTIFF PIÑA ALSO CONTENDS THAT REQUIRING HIM TO DEBRIEF BEFORE HE CAN BE RELEASED FROM THE (SHU) AS IS WHAT THE DEFENDANTS WANT RATHER THEN RECLASSIFY HIM AS AN INACTIVE GANG MEMBER, VIOLATES HIS DUE PROCESS RIGHTS AND THE RIGHTS SECURED UNDER THE FIFTH AMENDMENT.

THERE NEW PROCEDURE TO CLASSIFY GANG MEMBERS THAT HAVE BEEN SITTING IN THE (SHU) OVER SIX YEARS AS INACTIVE AS LONG AS THEY ARE NOT INVOLVED IN DISRUPTIVE ACTIVITY, OR CRIMINAL ACTIVITIES HAVE NO SUCH REQUIREMENTS.

AND PLAINTIFF ARGUES THAT DEFENDANTS INSISTANCE THAT PLAINTIFF DEBRIEF IN ORDER TO BE RECLASSIFIED AS INACTIVE WHEN IT'S NOT EXPECTED FROM OTHERS VIOLATES DUE PROCESS AND THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.

THE QUESTION ASKED BY PLAINTIFF IS DOES HE HAVE A STATE-CREATED LIBERTY INTEREST IN REMAINING FREE FROM ADMINISTRATIVE SEGREGATION.
AND IT WAS WELL ESTABLISHED THAT A PRISONER HAS A COGNIZABLE LIBERTY INTEREST IN REMAINING FREE FROM CONFINEMENT IN THE (SHU). SEE CATO V. RUSHER 824 F2d. 703, 704 (9TH CIRC. 1987).

THEN IN SANDIN V. CONNER. 515 U.S. 472, 115 S.CT. 2293, 132 LEd.2d 418 (1995). A RULING WHICH ALTERED THE CONTOURES OF STATE-CREATED LIBERTY INTERESTS IN THE PRISON DISCIPLINARY CONTEXT. WHICH NOW DEMANDS A SHOWING OF "ATYPICAL AND SIGNIFICANT HARDSHIP".

PLAINTIFF PIÑA CONTENDS HIS INDETERMINATE SEGREGATION IN THE (SHU) COUPLED WITH THE DEBRIEFING REQUIREMENT CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

PLAINTIFF ALSO CONTENDS THAT PRIOR TO THE IMPLEMENTATION OF THE INACTIVE GANG STATUS PROCEDURES. BY THE CDCR DIRECTOR. THERE WAS NO MEANS OF RELEASE FROM THE (SHU) UNLESS HE DEBRIEFS.
THIS INVOLVES A PROCESS WHERE AN INMATE GIVES A DETAILED DISCRIPTION OF HIS INVOIVEMENT IN GANG ACTIVITY. AND REVEALS THE NAMES OF OTHER GANG MEMBERS AND THEIR ACTIVITIES.

IN GRIFFIN. THE COURT GRANTED SUMMARY JUDGMENT IN FAVOR OF RESPONDENTS REGARDING GRIFFIN'S FIFTH AMENDMENT CLAIMS. AND FOUND THAT IT DOES NOT IMPLICATE THE FIFTH AMENDMENT BECAUSE RESPONDENTS POLICY IS NOT TO USE ANY OF THE INFORMATION REVEALED DURING A DEBRIEFING PROCEDURE.

PLAINTIFF CONTENDS THAT DEFENDANTS USE OF THE DEBRIEFING PROCESS AS EXCUSE TO CONTINUE HIS SEGREGATION UNTIL HE DOES, VIOLATES DUE PROCESS, AND THE CRUEL AND UNUSUAL CLAUSE OF THE CONSTITUTION.
BECAUSE THEY ARE HOPING PLAINTIFF AND OTHERS REFUSE THIS AVENUE SO THEY CAN LET THEM SIT IN THE SHU FOREVER.

THIS IS REGARDLESS OF THE PLAINTIFF'S DISCIPLINE-FREE YEARS, AND HIS LACK OF ANY ACTIVITY IN HIS GANGS PROMOTION OF THE GANG,
UNDER THE INACTIVE STATUS REGULATIONS AN INMATE CAN BE AUTHORIZED FOR RELEASE FROM (SHU) IF HE CAN ESTABLISH HE IS NO LONGER ACTIVE IN HIS PRISON GANG,
THIS IS EASIER SAID THEN DONE, FIRST OF ALL EVEN THOUGH THEY CLAIM THAT THE INMATE MUST ESTABLISH HE'S NOT ACTIVE, WHEN ALL THE INMATE CAN DO IS SIT IN HIS CELL AND HOPE SOME INFORMANT DOES NOT MENTION HIS NAME, BUT HE HAS NO CONTROL OF WHAT'S SAID OR NOT.
THEN THE DEFENDANTS RELY ON THINGS THEY MAY FIND IN THE INMATES CELL SUCH AS ADDRESSES OF PAST ASSOCIATES, NAMES AND NUMBERS OF OLD FRIENDS AND ASSOCIATES WHO HE NO LONGER STAYS IN CONTACT WITH. THIS TYPE OF INFORMATION IS STILL USED TO KEEP HIM IN THE (SHU) EVEN THOUGH IT DOES NOT PROVE HE IS ACTIVE IN ANYTHING.

PLAINTIFF MAINTAINS THAT HIS FAILURE TO RECIEVE A CHANGE IN HIS GANG STATUS AND RELEASE FROM THE (SHU) AFTER OVER TEN YEARS OF EFFORTS TO PROVE HE IS NOT INVOLVED IN GANG ACTIVITY,
DEMONSTRATES THAT NO AMOUNT OF EVIDENCE OF DISASSOCIATION FROM A GANG WILL PERSUADE DEFENDANTS TO RELEASE AN INMATE FROM THE (SHU).

PLAINTIFF HAS NOT SEEN ANY (SHU) INMATES RECLASSIFIED AND RELEASED FROM THE (SHU) SINCE ITS IMPLEMENTATION.

PLAINTIFF MAINTAINS THAT THE SHEER DURATION OF HIS CONFINEMENT UNDER THE HARSH CONDITIONS OF SEGREGATION CROSSES THE LINE TO BECOME CRUEL AND UNUSUAL PUNISHMENT.

THERE HAVE BEEN VARIOUS CASES BEFORE THE COURTS REGARDING CONFINEMENT IN THE SEGREGATION UNITS, AND THE CONSTITUTIONALITY OF THE TIME SPENT THERE. SEE TOUSSAINT V. YOCKEY, 722 F.2d. 1490 (9TH CIRC. 1984). AND HUTTO V. FINNEY, 437 U.S. 678, 686 (1978).

MANY COURTS HAVE HELD THAT OTHERWISE PERMISSIBLE SEGREGATION MAY VIOLATE THE EIGTH AMENDMENT IF IT LASTS TOO LONG.

IN THE MADRID V. GOMEZ, 889 F. SUPP. 1146 (N.D. 1995). THE COURT OBSERVED THAT ITS FINDINGS WERE BASED ON THE SHU'S EFFECTS ON INMATES WHO HAD ONLY BEEN IN SHU FOR THREE YEARS OR LESS, AND EXPLICATELY DECLINED EVEN TO SPECULATE WHAT IMPACT THOSE CONDITIONS MIGHT HAVE ON INMATES CONFINED THERE FOR TEN YEARS OR MORE.

THE DISTRICT COURT IN GRIFFIN FOUND THAT TWENTY YEARS IN THE (SHU) VIOLATED THE EIGHTH AMENDMENT'S CRUEL AND UNUSUAL PUNISHMENT. AND PLAINTIFF'S CASE IS SIMILAR TO THAT OF GRIFFIN. AND SHOULD BE GIVEN THE SAME RULING.

## ARGUMENT

DEFENDANT HOREL IS WELL AWARE OF THE INFORMATION THAT THE DEFENDANTS I.G.I UNIT HAS. AND COLLECTS REGARDING PLAINTIFF AND HIS GANG ACTIVITY. AS WELL AS THE INFORMATION FILED BY DEFENDANT PARKER REGARDING ALLEGATIONS OF MISCONDUCT BY MCCOVEY THAT INVOLVED PLAINTIFF. AND ALLOWED THAT THIS DEFAMATION AND SLANDER OF BOTH MCCOVEY AND PLAINTIFF CONTINUE AND AT ALL STAGES FAILED TO NOTIFY PLAINTIFF IN WRITING OF THE FALSE AND INNACURRATE ACCUSATIONS AGAINST HIM.

IN THE DEPARTMENT OPERATIONS MANUAL (DOM) CHAPTER 5, ARTICLE 22 GANG MANAGEMENT 52070.15, THE I.G.I.s SHALL BE DIRECTLY RESPONSIBLE THROUGH THEIR CHAINS OF COMMAND TO THEIR RESPECTIVE WARDENS.

ALL DEFENDANTS NAMED ARE A PART OF THAT CHAIN OF COMMAND IN ONE WAY OR OTHER. AND EACH MUST REPORT HIS OR HER ACTIONS. COMPLAINTS, OR DAILY REPORTS TO A SUPERVISOR, ALL DEFENDANTS ACTED WHILE UNDER THE COLOR OF STATE LAW. WHEN THEY EITHER WROTE A REPORT USING PLAINTIFF AS PARTLY THE CAUSE OF MCCOVEY'S ALLEGED MISCONDUCT. AND FAILED TO NOTIFY OF SUCH ACCUSATIONS. VIOLATION OF HIS DUE PROCESS.

PLAINTIFF MADE A LEGITIMATE REQUEST. FOR COPIES OF ANY REPORTS WRITTEN USING HIS NAME BY DEFENDANT PARKER AND OTHERS UNDER THE PUBLIC RECORDS ACT. AND THE REQUEST WAS DENIED.

THE DEPARTMENT OF CORRECTIONS AS AN AGENCY IS REQUIRED TO TAKE REASONABLE STEPS TO MAINTAIN ACCURATE INFORMATION TO INSURE FAIRNESS TO THE INDIVIDUAL. AND ONE OF THOSE STEPS IS TO ALLOW THE INDIVIDUAL TO VIEW IT. AND REQUEST CORRECTIONS IF ITS NEEDED,
IN 2006-2007 DEFENDANT PARKER WHILE EMPLOYED FOR THE DEPT. OF CORRECTIONS AND WHILE ACTING WITHIN THE SCOPE OF HER EMPLOYMENT. FILED A SLANDEROUS AND LIBELOUS REPORT AGAINST PLAINTIFF AND MCCOVEY THAT WAS PLACED IN HIS FILE.

DEFENDANTS HAVE REFUSED TO TURN OVER COPIES OF THAT REPORT IN VIOLATION OF HIS RIGHT TO CHALLENGE ANY REPORTS PLACED IN HIS FILES. THAT CAN BE USED AGAINST HIM WITHOUT HIM KNOWING ITS CONTENTS. AND IS CLEARLY A DUE PROCESS VIOLATION. SEE WOLF V. MCDONNELL 418 U.S. 539, 94 S.CT. 2963, 41 LED 2d 935.

ACCORDING TO THE SETTLEMENT IN THE CASTILLO CASE THE DEPARTMENT OF CORRECTIONS AGREED TO REVISE THEIR VALIDATION PROCEDURES AND SOURCE ITEMS USED IN VALIDATING ACTIVE GANG MEMBERS.

IN PARAGRAPH NUMBERED *15) WRITTEN MATERIAL AND COMMUNICATION: STATES STAFF MUST HAVE AN ARTICULABLE BASIS FOR WHY A WRITTEN MATERIAL IS RELIABLE EVIDENCE OF GANG ASSOCIATION OR MEMBERSHIP.

IN PARAGRAPH *21). CONFIDENTIAL SOURCES: STATES WHEN A CONFIDENTIAL SOURCE, INCLUDING DEBRIEFERS IDENTIFY A PRISONER AS AN ASSOCIATE OR MEMBER, BY LISTING NAMES OF INMATES WITHOUT REFERENCES TO GANG RELATED ACTS PERFORMED BY THE INMATES, SHALL NOT BE RELIED UPON AS A SOURCE ITEM. THEY AGREED THAT THE CONFIDENTIAL SOURCE MUST IDENTIFY SPECIFIC GANG ACTIVITY OR CONDUCT PERFORMED BY THE ALLEGED ASSOCIATE OR MEMBER.

IN PARAGRAPH *22). SINGLE SOURCE RULE: STATES INFORMATION BY MULTIPLE SOURCES ON THE SAME INMATE. THE INFORMATION COUNTS AS ONLY ONE SOURCE ITEM.

IN PARAGRAPH *23). HEARSAY: IT WAS AGREED THAT EXCLUSIVE RELIANCE ON HEARSAY FROM A CONFIDENTIAL SOURCE WILL NOT BE USED AS A SOURCE ITEM FOR VALIDATION.

IN PARAGRAPH *24). CURRENT ACTIVE GANG DETERMINATION: STATES A PRISONER WILL NOT RECIEVE AN INDETERMINATE SHU TERM AS VALIDATED MEMBER OR ASSOCIATE WITHOUT FIRST BEING FOUND TO BE A CURRENT ACTIVE GANG MEMBER OR ASSOCIATE CONSISTENT WITH THE PROCEDURES AND SAFEGUARDS

ESTABLISHED IN THIS SETTLEMENT AGREEMENT. EACH I.C.C. COMMITTEE AND UCC COMMITTEE REVIEW OF AN INDETERMINATE SHU TERM, WILL REVIEW THE INMATES CURRENT GANG STATUS AND INDICATE THAT STATUS ON THE 128-G CHRONO. CURRENTLY ACTIVE GANG STATUS IS DEFINED AS ANY DOCUMENTED GANG ACTIVITY WITHIN THE PAST SIX YEARS CONSISTENT WITH CCR § 3341.5 (c)(5). SEE THE SETTLEMENT AGREEMENT AS APPENDIX 2

THE DEFENDANTS IN PLAINTIFF'S COMPLAINT HAVE DISREGARDED THOSE AGREEMENTS. AND MODIFIED OR ALTERED THE MEANINGS SO THEY CAN FIT IN THEIR EXPECTED DISPOSITIONS.

IN THE WRITTEN MATERIAL IT MUST SHOW WHY A LETTER LIKE USED AGAINST THE PLAINTIFF IS RELIABLE. THEY CLAIM IT HAD GANG ACTIVITY DESCRIBED IN IT. BUT THATS THEIR WORD. PLAINTIFF NEVER SAW THE LETTER.

THEN THE CONFIDENTIAL SOURCES. IT CLEARLY STATES THE DEBRIEFER MUST ALSO PROVIDE WHAT EXACTLY PLAINTIFF WAS DOING AS FAR AS PARTICIPATING IN GANG ACTIVITY. A PERSON CAN NOT JUST SAY SOMEONE IS INVOLVED IN ACTIVITY AND NOT SHOW EXACTLY WHAT IT IS HE DID OR IS DOING.

BUT MOST OF ALL THE PARAGRAPH ON HEARSAY INFORMATION. THIS IS WHAT THE DEFENDANTS HAVE DONE IN THE PAST AND ARE STILL DOING TODAY. AND A PERFECT EXAMPLE IS THIS INFORMATION REGARDING MCCOVEY. IT WAS STARTED BY PARKER BECAUSE SHE DON'T LIKE MCCOVEY. AND EVERYONE KNOWS THIS, BUT STILL IT WAS LEFT TO HANG IN THE AIR SO OTHERS CAN PICK UP ON IT, AND SPREAD RUMORS. BUT THERE WAS NEVER ANY EVIDENCE OF WRONG DOING ON MCCOVEY'S PART OR PLAINTIFF. IT AMOUNTS TO HEAR-SAY.

ARGUMENT II.
LEGAL MAIL
VIOLATION OF FIRST AMENDMENT.

PLAINTIFF IS NOT SEEKING MONETARY DAMAGES FROM DEFENDANTS FOR THEIR VIOLATION OF DELAYING AND OPENING HIS LEGAL MAIL.
BUT WANTS IT CLARIFIED THAT LEGAL MAIL FROM ANY LEGAL ORGANIZATION OR AGENCY THAT DEMANDS CONFIDENTIALITY BE TREATED AS CONFIDENTIAL.

DEFENDANT DEPEW AND CARRIER SUPERVISORS IN THE PRISON MAIL ROOM HAVE OPENED OR INSTRUCTED THEIR STAFF TO OPEN ANY LEGAL MAIL THAT DOES NOT HAVE AN ATTORNEY'S PERSONAL HANDWRITTEN SIGNATURE ON THE OUTSIDE OF THE ENVELOPE.
AS IS REQUIRED BY THE DEPARTMENT OF CORRECTIONS OPERATIONAL MANUAL.

PLAINTIFF HAS READ THE SECTIONS FROM THE OPERATION MANUAL AND IT CONTRADICTS ITSELF.
IN (D.O.M.) 54010.20 CONFIDENTIAL CORRESPONDENCE IT STATES, CONFIDENTIAL CORRESPONDENCE IS A RIGHT GUARANTEED BY LAW. THAT IT SHOULD NOT BE USED FOR PERSONAL USE. OR TO TRANSPORT CONTRABAND.

IN 54010.21 PROCESSING INCOMING CONFIDENTIAL MAIL.
INCOMING LETTERS BEARING A RETURN ADDRESS OF PERSONS AND OFFICES LISTED IN (D.O.M) 54010.21.1 SHALL BE PROCESSED AS CONFIDENTIAL CORRESPONDENCE A NOTICE OF OR A REQUEST FOR CONFIDENTIALITY IS NOT REQUIRED, DESIGNATED STAFF SHALL OPEN THE LETTER IN THE PRESENCE OF THE INMATE.

AT NO TIME DOES IT SAY THAT THE ATTORNEY MUST SIGN HIS NAME. THAT THE NAME OF HIS OR HER LAW FIRM IS NOT ENOUGH.

AS CAN BE SEEN FROM THE EXHIBITS IN THE COMPLAINT. SEVERAL OF THE LETTERS THAT WERE OPENED ARE FROM WELL KNOWN SOURCES FROM THE LEGAL COMMUNITY.

MAIL THAT IS SENT FROM ATTORNEY'S, COURTS, AND GOVERNMENT OFFICIALS IS
PROTECTED BY THE FIRST AND SIXTH AMENDMENTS
AND MEANS PRISON OFFICIALS ARE NOT ALLOWED TO READ OR CENSOR THIS
TYPE OF INCOMING MAIL.
BUT, THEY CAN OPEN IT AND INSPECT IT FOR CONTRABAND AS LONG AS ITS
INFRONT OF THE INMATES. SEE WOLF V. MC DONNELL. 418 U.S. 539 (1974).

THE DEFENDANTS HAVE PROCEDURES THAT ALLOW THEM TO OPEN MAIL BECAUSE
THE ATTORNEY did NOT SIGN THE OUTSIDE OF THE ENVELOPE.
THERE IS NO LAW THAT REQUIRES THE SIGNATURE. SO ATTORNEY'S ARE NOT
AWARE OF THIS AND ONLY SIGN THE LETTER INSIDE.

ATTORNEY'S SEND MAIL TO INMATES EXPECTING IT TO BE delivered AS CONFIDENTIAL
MAIL. BUT IN MOST CASES IT'S NOT AS ALMOST ALL ATTORNEYS DON'T SIGN
THE ENVELOPES. THEY HAVE THEIR NAMES AND LAW FIRM LOGO ON THE OUTSIDE.
AND BELIEVE THATS ENOUGH.

THE DEFENDANTS PROCEDURES AND PRACTICE OF OPENING ANY LEGAL MAIL IS VIOLATING
THE PLAINTIFF'S RIGHTS AS WELL AS THE ATTORNEYS.

IF THE DEFENDANTS MUST OPEN A CONFIDENTIAL LETTER IT SHOULD BE done IN THE
PRESENCE OF THE INMATES.
AND IF THEY DONT WANT TO CLASSIFY A LETTER AS CONFIDENTIAL UNDER THEIR
CRITERIA, THEN IT SHOULD BE RETURNED TO SENDER UN-OPENED. OR NOTIFY
THE INMATE IF HE WANTS IT OPENED OR RETURNED, THEY SHOULD NOT HAVE
THE RIGHT TO OPEN IT.

IN DEFENDANT PARKERS CASE SHE HAD A LEGAL LETTER DELAYED FOR NO OTHER
REASON THEN IT HAD A SPANISH SURNAME.

IN A RECENT CASE  FONTROY V. BEARD, 485 F.supp. 2d 592 (E.D. PA. 2007).
IMATES SUED STATE PRISON OFFICIALS FOR OPENING LEGAL MAIL OUTSIDE
THERE PRESENCE WHICH VIOLATED THEIR FIRST AMENDMENT RIGHTS.
AND THE DISTRICT COURT HELD THAT, THE PRISON'S POLICY VIOLATED THE FIRST
AMENDMENT.

EVEN THOUGH IN THAT CASE PRISON OFFICIALS WERE OPENING LEGAL MAIL OUT
SIDE THE INMATES PRESENCE TO SEARCH FOR CONTRABAND THEN WOULD
RE-SEAL IT.

IT STILL VIOLATED THE INMATES FIRST AMENDMENT RIGHT TO HAVE LEGAL MAIL
OPENED IN THEIR PRESENCE.

PLAINTIFF CONTENDS THAT THE SAME APPLIES IN THE CASE AT HAND, THEY MAY NOT
BE RE-SEALING THE MAIL. THEY DON'T HAVE TO WHEN THEY HAVE A POLICY
TAILOR MADE FOR THEM TO OPEN IT LEGALLY.

THE DEFENDANTS HAVE A PRACTICE THAT OPENING LEGAL MAIL IS NOT A SERIOUS
ISSUE. BECAUSE THEY ALSO OPEN MAIL WHICH IS COVERED BY THEIR POLICY.
AND ITS DONE ALL THE TIME.

AND ALL THEY WILL SAY IS THAT IT WAS ACCIDENTALLY OPENED. BUT ITS
DONE ALOT.

FOR THIS REASON PLAINTIFF SEEKS THAT THEY MODIFY THEIR LEGAL MAIL
PROCEDURES SO THAT ALL MAIL THAT ARRIVES MARKED LEGAL MAIL BE
TREATED AS THAT, AND OPENED IN THE PRESENCE OF THE INMATES.

IN THE RULES OF THE DIRECTOR C.C.R. TITLE 15 § 3144 INSPECTION OF CONFIDENTIAL
MAIL. ALL MAIL IS INSPECTED FOR CONTRABAND OR NOT, ITS INSPECTED INFRONT
OF THE INMATE. SEE EXHIBIT  T   MAIL REGULATIONS.

ARGUMENT III.
TELEPHONE ACCESS DENIAL.
VIOLATION OF FIRST AMENDMENT.

PLAINTIFF PIÑA MAINTAINS THAT THE DEFENDANTS DENIAL OF PHONE ACCESS JUST BECAUSE THE PLAINTIFF AND OTHERS ARE IN THE (SHU) VIOLATES HIS FIRST AMENDMENT RIGHTS.

PRISONERS ALL OVER CALIFORNIA AND OTHER STATES ARE ALLOWED TO USE THE PHONE FOR EMERGENCY AND NON-EMERGENCY USE.
SUBJECT TO REASONABLE SECURITY LIMITATIONS, SEE STRANDBERG V. CITY OF HELENA, 791 F2d. 744-747 (9TH CIRCT 1986).

PLAINTIFF'S GIRLFRIEND DIED WHILE IN (SHU) AT THE TIME IN 1992 AND IN 1993 THE PRISON WAS UNDER A LOT OF PRESSURE FOR THEIR TREATMENT OF SHU INMATES;
BUT THE (SHU) HAS ALWAYS HAD A NO PHONE ACCESS FOR PRISONERS AT ALL. ONLY IF AN IMMEDIATE FAMILY MEMBER PASSED AWAY.

PLAINTIFF FEELS THAT THE DEFENDANTS WHILE SECURITY CAUTIOUS AND IT IS UNDER STANDABLE. STILL CAN ALLOW PHONE CALLS FOR SHU INMATES.
THEY CAN MONITOR THE CALLS EITHER BY LISTENING TO THE CALL. OR HAVE THE INMATE CALL WHILE AN OFFICER STANDS CLOSE BY.

WITH THE TECHNOLOGY THE WAY IT IS TODAY DEFENDANTS CAN MAKE THAT HAPPEN OVER NIGHT. PHONE ACCESS IS AN ALTERNATIVE TO MAIL, AND VISITS.

AND IF PRISONERS EVERY WHERE ELSE ARE GIVEN PHONE ACCESS THEN IT BECOMES A RIGHT FOR PLAINTIFF AND SHU INMATES UNDER THE EQUAL PROTECTION ACT OF THE FOURTEENTH AMENDMENT OF THE CONSTITUTION.

PLAINTIFFS KIDS AND GRANDKIDS LIVE IN NORTH CAROLINA, TENNESSEE, AND IDAHO, THEY CANNOT COME AND VISIT. AND PLAINTIFF'S MOTHER IS TO OLD TO COME VISIT HIM.

ARGUMENT IV.
PRISON OFFICIALS DEFACING
INMATE'S MAIL WITH A STAMP.
VIOLATES THE FIRST AMENDMENT

PLAINTIFF CONTENDS THAT THE DEFENDANT SCAVETTA'S PROCEDURE OF DESTROYING INMATES LETTERS BY PLACING A STAMP ACROSS THE LETTER'S WRITTEN PARTS VIOLATES HIS RIGHT TO FREEDOM OF EXPRESSION WITHOUT UNNECESSARY INFRINGEMENTS BY PRISON OFFICIALS.

THERE IS NO LEGITIMATE PENOLOGICAL REASON FOR THE STAMPING OF INMATE'S MAIL THE WAY THAT ITS BEING DONE, EXCEPT TO DESTROY THE LETTER OR OTHER WRITTEN MATERIALS FROM INMATES.

PLAINTIFF HAS MAILED OUT LEGAL MATERIAL TO GET IT TYPED OR PHOTO COPIED, AND IT IS STAMPED BECAUSE OF THIS NEW PROCEDURE. AT FIRST THE MEMORANDUM WAS SUPPOSED TO BE JUST FOR WRITTEN NOT TYPED ITEMS FROM PRISONERS GOING OUT. BUT NOW ITS STAMPING EVERYTHING AND DESTROYING MATERIALS.

IN PROCUNIER V. MARTINEZ, 416 U.S. 396, 413, 94 S.CT. 1800, 1811, 40 led. 2d 224 (1974).
IN THE SECOND PRONG TEST REQUIRES PRISON REGULATIONS TO BE GENERALLY NECESSARY TO A GOVERNMENT INTEREST.

THE DEFENDANTS HAVE IMPLEMENTED THIS POLICY AND REGULATION TO GIVE VIRTUALLY UNBRIDLED DISCRETION TO PRISON OFFICIALS TO LEGALLY DEFACE PERSONAL PROPERTY SUCH AS PHOTOGRAPHS, DRAWINGS, MANUSCRIPTS, NOT TO MENTION THEIR LETTERS.
THE STAMP COULD HAVE BEEN PLACED ELSE WHERE, AT THE TOP OF THE LETTER OR AT THE BOTTOM OF IT. ANY WHERE THAT DOES NOT DISRUPT THE MESSAGE BEING CONVEYED.

AT NO TIME DOES IT STATE IN ANY OF THE DEPARTMENT OF CORRECTIONS OPERATION MANUAL THAT PRISON OFFICIALS CAN OR SHOULD DESTROY INMATES PROPERTY AND OR DEFACE OR ALTER INMATES WRITTEN CORRESPONDENCE.

ARGUMENT V.
DENIAL OF EXHAUSTION
OF GRIEVANCES
VIOLATES DUE PROCESS UNDER
FOURTEENTH AMENDMENT.

THE APPEALS PROCESS IS AN INTERNAL ADMINISTRATIVE GRIEVANCE PROCESS THAT
ALLOWS PRISONERS TO SEEK RELIEF FROM THE PRISON'S ADMINISTRATION WITH
AN ATTEMPT TO RESOLVE ISSUES AT THE PRISON LEVEL.
AS IS DESCRIBED IN THE RULES OF THE DIRECTOR/SECRETARY C.C.R. TITLE 15
ARTICLE 8. SECTION'S 3084, 3084.1 (A)-(B)-(C)(D) and (E)., AND AS. PRESCRIBED
IN THE CALIFORNIA PENAL CODE SECTIONS 5054 - 5058.

ANY INMATE UNDER THE DEPARTMENTS JURISDICTION MAY APPEAL ANY DECISION OR
ACTION, CONDITION, POLICY THAT THE INMATE CAN DEMONSTRATE AS HAVING AN
ADVERSE AFFECT UPON HIM.

IN PARAGRAPH - D  IT STATES THAT NO REPRISALS SHALL BE TAKEN AGAINST AN INMATE
FOR FILING A 602 APPEAL. BUT THE DEFENDANTS REFUSAL TO PROCESS APPEALS IS
A FORM OF REPRISAL.

SECTION 3084.3 SCREENING APPEALS:
     IN PART STATES EACH INSTITUTION HEAD (WARDEN) SHALL DESIGNATE AN APPEALS
COORDINATOR AT A STAFF POSITION LEVEL NO LESS THEN CORRECTIONAL COUNSLOR-
-II, WHO SHALL PRIOR TO ACCEPTANCE FOR REVIEW. SCREEN AND CATEGORIZE
EACH APPEAL ORIGINATING IN THEIR AREA FOR COMPLIANCE WITH THESE RULES
AND SHALL COORDINATE THE PROCESSING OF APPEALS.

THE APPEALS COORDINATOR AT PELICAN BAY STATE PRISON GOES BEYOND SCREENING
APPEALS AND LOGGING THEM. DEFENDANT WILBUR RESPONDS TO APPEALS AND WILL
REJECT THEM NOT BY PROCEDURE BUT ON A PERSONAL LEVEL.
AND DEPRIVING INMATES THE NEED TO EXHAUST GRIEVANCES BEFORE THEY CAN FILE
A COMPLAINT IN THE COURTS.

## CONCLUSION

PLAINTIFF ARGUES THAT AS A PRISONER HE HAS A RIGHT TO BE TREATED EQUALLY UNDER THE UNITED STATES CONSTITUTION'S EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.

AND HAS THE RIGHT TO BE TREATED AND RECIEVE THE SAME BENEFITS AND PRIVILEDGES THAT ALL PRISONERS RECIEVE.

THIS BEGINS WITH THE EQUALITY OF HOW THE STATE PRISONS RULES AND REGULATIONS ARE APPLIED TO PRISONERS IN CALIFORNIA'S PRISONS. INCLUDING THE SECURITY HOUSING UNITS.

THE DEFENDANTS HAVE A DUTY TO FOLLOW THE ESTABLISHED RULES AND REGULATIONS SET FORTH IN THE DEPARTMENT OF CORRECTIONS RULES OF THE DIRECTOR/SECRETARY AND DEPARTMENTAL OPERATIONS MANUAL. AND CALIFORNIA CODE OF REGULATIONS CCR TITLE 15. AND THESE REGULATIONS ARE TO BE APPLIED TO EVERY PRISONER EQUALLY.

THE CRITERIA FOR PRISONERS IN THE SECURITY HOUSING UNIT (SHU) THAT ARE THERE ONLY BECAUSE OF GANG VALIDATION, WHO WANT TO BE RECLASSIFIED FROM ACTIVE GANG MEMBERS TO INACTIVE GANG MEMBERS ARE REVIEWED BY SET PROCEDURES DESCRIBED IN THE TITLE 15.

THE MAIN CRITERIA IS THAT THE PRISONER NOT BE INVOLVED WITH HIS GANG'S ACTIVITY FOR SIX YEARS.

IT DOES NOT SAY HE CAN'T TALK TO OTHER GANG MEMBERS. OR HAVE OLD ADDRESSES AND MATERIALS OF HIS FORMER ASSOCIATES.

THE DEFENDANTS PLACE WAY TOO MUCH IN DISCOVERING OLD PAPERWORK, LETTERS OR ARTWORK. THAT DOES NOT PROVE CURRENT GANG ACTIVITY. ALL IT PROVES IS THAT THE INMATE HAS IN HIS POSSESSION ITEMS THAT MAY SHED doubts AS TO HIS SINCERITY.

BUT IF THOSE ITEMS CAN BE EXPLAINED AWAY BY THE PRISONER OR IF IT HAS NOTHING TO do WITH CURRENT GANG ACTIVITY, IT should NOT BE USED TO RETAIN HIM IN (SHU).

IN ANY CASE THE PRISONER should NOT BE FORCED TO WAIT ANOTHER SIX YEARS BEFORE HE CAN APPLY FOR INACTIVE REVIEW,

WHEN THE INMATE'S OUT ON GENERAL POPULATION CAN HAVE INACTIVE REVIEWS EVERY TWO YEARS.

WHEN PRISONERS IN THE (SHU) HAVE MUCH MORE AT STAKE THEN THOSE OUT ON THE
MAINLINE. IF A SHU PRISONER IS DENIED INACTIVE STATUS TWICE. THATS TWELVE
YEARS.
 MOST OF THOSE IN (SHU) HERE ALREADY HAVE FIFTEEN - TWENTY YEARS IN THE SHU
TWO DENIALS IS LIKE A LIFE TIME. THIS IS NOT EQUALITY.

THERE ARE PROCEDURES FOR WHEN A PRISONER IS WRITTEN UP FOR A RULES VIOLATION
REGARDLESS. WHETHER SERIOUS OR NOT. ONCE A REPORT IS WRITTEN. THE PRISONER
MUST BE NOTIFIED THAT HE IS BEING WRITTEN UP OR THAT HE WAS RECIEVING ANY
TYPE OF CHRONO PLACED IN HIS FILE.

ANY TIME A CDCR OFFICER FILES A REPORT INVOLVING AN INMATES ACTIVITY. THE INMATE
HAS A CONSTITUTIONAL RIGHT TO DUE PROCESS

AND THE BASIC RIGHT TO DUE PROCESS IS THE RIGHT TO NOTICE AND AN OPPORTUNITY TO
BE HEARD.

DEFENDANT PARKER FILED A REPORT AS A CDCR OFFICER AND AS PART OF HER DUTY. THAT
DUTY GOES BEYOND JUST FILING THE REPORT, IT REQUIRES HER TO FOLLOW THE POLICES
DESCRIBED IN CDCR'S RULES AND REGULATIONS. BY FAILING TO GIVE PLAINTIFF NOTICE
SHE VIOLATED HIS RIGHT TO DUE PROCESS.
AND THEN BY FILING A REPORT BASED ON FALSE INFORMATION, IN WHICH SHE ACCUSED
ANOTHER OFFICER OF MISCONDUCT THAT INVOLVED PLAINTIFF VIOLATED PLAINTIFF'S
DUE PROCESS.

WHEN PLAINTIFF ASKED FOR COPIES AND OR TO VIEW THE REPORTS WRITTEN BY DEFENDANTS
PARKER, RANGEL, HARDING AND OTHERS WHO MAY OF WROTE REPORTS AND THAT REQUEST
WAS DENIED, IT VIOLATED PLAINTIFF'S DUE PROCESS.

THE DEFENDANTS CLAIMED THAT THERE ARE NO REPORTS. THAT NO INCIDENT OR SITUATION EXIST'S
INVOLVING MCCOVEY. WITH CLAIMS MCCOVEY COULD WORK WHERE EVER SHE WANTS AND
THAT INCLUDED D-4.

PLAINTIFF KNOWS THIS IS UNTRUE. AND THE ONE THAT KNOWS IT BEST IS OFFICER McCOVEY. AN INMATE HAS THE RIGHT TO BE INFORMED OF EVIDENCE BEING USED AGAINST HIM. SEE WOLF V. McDONNELL. 94 S.CT. 2963, 418 U.S. 539 (U.S. NEB. 1974).

PLAINTIFF IS SUEING ALL DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES AND ANY FUTURE DEFENDANTS WHOSE NAMES ARE NOT KNOWN AT THIS TIME.

DEFENDANTS HARDING, RANGEL, BARNEBURG, FERGUSON AND THE WARDEN AS SUPERVISORS TO PARKER AND McCOVEY KNEW OF ALL THAT TRANSPIRED AND FAILED TO INTERVENE AND CORRECT IT. SOME OF THE DEFENDANTS EVEN PARTICIPATED IN THE ACTS THAT SUPPORT THIS COMPLAINT. DIRECTLY OR INDIRECTLY. ALLOWING FALSE INFORMATION TO BE USED TO PUT McCOVEY AND PLAINTIFF IN A BAD AND UNCOMFORTABLE POSITION.
PLAINTIFF IS NOT SUEING DEFENDANTS SOLELY FOR WHAT THEY HAVE DONE TO McCOVEY. THATS ONLY PART OF IT. BUT IT'S MORE FOR HOW THEY USED PLAINTIFF'S NAME AND PERSON TO DO IT. THE DEFENDANTS IN A SUPERVISOR POSITION ARE SUED FOR PERSONAL AND OR SUPERVISORY LIABILITY. SEE VALDEZ V. CROSBY. 450 F3d 1231 (11TH CIRC. 2006).
THE SERGEANTS WERE ALL IN A POSITION TO KNOW OF THESE PROBLEMS AND BECAUSE THE PLAINTIFF FILED A LETTER AND 602 APPEALS REGARDING THIS ISSUE AND DID NOTHING EXCEPT TURN AGAINST McCOVEY. BLAMING HER FOR EVERYTHING. MAKING HER CHANGE JOBS. AND ALLOWING PARKER AND OTHERS TO SPREAD LIES AND RUMORS ABOUT McCOVEY'S MISCONDUCT DRAGGING AN INNOCENT PRISONER INTO THEIR PLOT. SEE JET V. PENNER, 439 F3d 1091. (9TH CIRC. 2006).

DEFENDANT BARNEBURG TOLD PLAINTIFF THAT EVEN IF THERE ARE REPORTS WRITTEN BY PARKER THAT PLAINTIFF WILL NEVER SEE THEM BECAUSE THEY ARE CONFIDENTIAL.
BUT INFORMATION FILED BY PARKER AND OTHER DEFENDANTS CANT BE CONFIDENTIAL BECAUSE ITS COMING FROM AN OFFICER NOT AN INFORMANT. THERE'S A DIFFERENCE WHEN AN OFFICER WITNESSES A VIOLATION OR A CRIME AND FILES A REPORT, THE REPORT IS PART OF THE JOB. AND THE ONLY REASON THEY WOULD WANT TO KEEP THIS INFORMATION FROM PLAINTIFF IS SO HE CANT CHALLENGE IT. AND SHOW THAT WHAT THEY'RE ACCUSING McCOVEY AND HIMSELF OF IS NOT TRUE.

PLAINTIFF CONTENDS THAT IF DEFENDANTS ARE ALLOWED TO MAKE UP INFORMATION AS THEY HAVE OBVIOUSLY DONE IN THIS CASE. PLAINTIFF WILL NEVER HAVE ANY OPPORTUNITY OF GETTING OUT OF THE SHU.

BEING IN THE (SHU) AS PLAINTIFF HAS OVER TWENTY YEARS, WITH LESS PRIVILEDGES THEN THOSE IN OTHER SHU UNITS. AND MAINLINES. CAUSING UNNECESSARY HARDSHIPS FOR PRISONERS WHO THEY WANT TO HOLD IN SEGREGATION INDEFINATELY.

PLAINTIFF IS NOT IN THE SHU FOR DISRUPTIVE BEHAVIOR. HE AND OTHERS ARE HELD IN SHU ON ADMINISTRATIVE DECISIONS DUE TO GANG MEMBERSHIP. SO WHY THEN ARE THEY NOT ALLOWED TO HAVE THE SAME PRIVILEDGES THAT THE PRISONERS IN THE GENERAL POPULATION HAVE. IF THEY WANT TO KEEP PRISONERS IN THE (SHU) FOR YEARS, WITH NO END IN SIGHT. THEY MUST PROVIDE A DECENT PROGRAM. RESTRICTIVE, BUT A PROGRAM THAT PRISONERS CAN LIVE WITH.

IT'S THE DEFENDANTS WHO don't WANT TO RELEASE INMATES FROM THE SHU. FOR NO OTHER REASON THEN GANG MEMBERSHIP. AND OR ASSOCIATION. WHEN THEY HAVE HALF OF CALIFORNIA PRISON POPULATION THAT ARE ON MAINLINES WHO ARE ALSO GANG MEMBERS. THIS IS DENYING PLAINTIFF AND OTHERS OF EQUAL PROTECTION UNDER THE UNITED STATES CONSTITUTION.

SEE CLEVELAND BOARD OF EDUCATION V. LA FLEUR, 414 U.S. 632-639-640,, AND OVERTON.V. BAZETTA, 123 S.CT. 2162 (2003). AND TURNER V. SAFLEY. 482 U.S. 78,89, 107 S.CT. 2254, 96 LED. 2d 64 (1987).

A JUDGMENT IN PLAINTIFF'S FAVOR SHOULD ISSUE ON HIS CAUSE OF ACTION FOR VIOLATIONS OF HIS FEDERAL CIVIL RIGHTS. BASED ON VIOLATIONS OF HIS EIGHTH AND FOURTEENTH AMENDMENT RIGHTS, WHICH ARE GUARANTEED BY THE UNITED STATES CONSTITUTION.

JUST BECAUSE A PRISONER IS SENT TO STATE PRISON HE DOES NOT COMPLETELY FORFEIT ALL HIS RIGHTS UNDER THE UNITED STATES CONSTITUTION.

RESPECTFULLY
SUBMITTED

PRO-PER

DATE: 4/15/08

## VERIFICATION

I HAVE READ THE FOREGOING COMPLAINT AND HEREBY VERIFY THAT THE
MATTERS ALLEGED THEREIN ARE TRUE, EXCEPT AS TO MATTERS ALLEGED
ON INFORMATION AND BELIEF, AND AS TO THOSE I BELIEVE THEM
TO BE TRUE.

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS
TRUE AND CORRECT.

RESPECTFULLY SUBMITTED.

Pablo Ojuña

PRO-SE

DATED: 4/15/08