# EXHIBIT A

(4) Escape History. An inmate with a documented escape history as described in this section shall be assigned to Close B Custody.

(A) Upon completing at least eight (8) years of Close A Custody, an inmate who is convicted of or found guilty of a serious RVR or whose commitment offense includes Escape With Force or Attempted Escape With Force from any correctional setting or armed escort shall serve the subsequent two (2) years at Close B Custody before he or she shall be eligible for further reduction of custody. Following completion of the required Close B Custody period, an inmate with an escape history shall be eligible for custody reduction to Medium A Custody, but shall be housed in no less than a Designated Level II facility for a minimum of three (3) years before he or she shall be eligible for less restrictive housing. The inmate shall be ineligible for Minimum Custody.

(B) Upon completing at least five (5) years at Close A Custody, an inmate convicted of or whose commitment offense includes Escape Without Force or Attempted Escape Without Force From Secure Perimeter Facility or Armed Escort shall serve the subsequent five (5) years at Close B Custody before he or she shall be eligible for further reduction of custody. Following completion of the required Close B Custody period, an inmate with an escape history shall be eligible for custody reduction to Medium A Custody, but shall be housed in no less than a Designated Level II facility for a minimum of three (3) years before he or she shall be eligible for less restrictive housing. The inmate shall be ineligible for Minimum Custody.

(C) Upon completing at least two (2) years at Close A Custody, an inmate involved in a documented plot to escape from a secure perimeter facility shall serve the subsequent two (2) years at Close B Custody before he or she shall be eligible for further reduction of custody. Following completion of the required Close B Custody period, an inmate with an escape history shall be eligible for custody reduction to Medium A Custody, but shall be housed in no less than a Designated Level II facility for a minimum of three (3) years before he or she shall be eligible for less restrictive housing. The inmate shall be ineligible for Minimum Custody. An inmate with a history of walkaways from nonsecure settings shall not be placed in minimum custody settings for at least ten (10) years following the latest walkaway.

(5) Holds. An inmate who is subject to an active law enforcement hold as described below shall require Close B Custody as follows:

(A) After at least five (5) years at Close A Custody, an inmate verified to be subject to an active law enforcement hold for an offense that could result in sentencing as an LWOP, to Multiple Life Terms, or to a Determinate Sentence or Total Term of 50 years or more shall be Close B Custody until the hold is removed.

(B) After at least one (1) year at Close A Custody, an inmate verified to be subject to an active law enforcement hold for an offense that could result in sentencing to a Total Term of Life or a determinate term or Total Term of fifteen (15) years or more shall be Close B Custody until the hold is removed.

(6) Disciplinary History. An inmate whose disciplinary history includes any of the criteria described in this subsection shall require Close B Custody:

(A) An inmate found guilty of an in custody serious RVR for the Murder of a Non-Inmate or convicted of Murder of a Non-Inmate shall require Close A Custody during his or her remaining term after release from SHU. The inmate shall be ineligible for Close B Custody or any reduction of custody.

(B) Upon completing at least six years at Close A Custody, an inmate found guilty of an in custody serious RVR for the Murder of an Inmate or convicted of Murder of an Inmate shall serve the subsequent four (4) years at Close B Custody before he or she shall be eligible for consideration of further reduction of custody.

(C) An inmate found guilty of a Division A-1 or Division A-2 serious, as set forth in section 3323, or who is determined by a classification committee to demonstrate a pattern of, or a continuing propensity for, violence, escape or narcotic distribution, shall serve two (2) years at Close B Custody before he or she shall be eligible for consideration of further reduction of custody.

(D) An inmate designated as a former gang member ("dropout") shall be required to undergo a period of observation and be designated by classification committee action as a Close B Custody inmate for one (1) year before he or she shall be eligible for consideration of further reduction of custody.

(7) Notoriety. After at least five (5) years at Close A Custody, an inmate designated as a Public Interest Case or determined to have High Notoriety shall serve at least five (5) years in Close B Custody before consideration of further reduction of custody.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; *Americans with Disability Act (ADA)*, 42 U.S.C., Section 12131, et seq.; and *Pennsylvania Department of Corrections v. Yeskey* (1998) 524 U.S. 206.

HISTORY:

1. New section filed 3-27-2000 as an emergency; operative 3-27-2000 (Register 2000, No. 13). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 9-5-2000 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 3-27-2000 order transmitted to OAL 9-5-2000; disapproval and order of repeal and deletion repealing section by operation of Government Code 11346.1(g) filed 10-18-2000 (Register 2000, No. 42). •
3. New section filed 10-19-2000 deemed an emergency pursuant to Penal Code section 5058(e); operative 10-19-2000 (Register 2000, No. 42). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 3-27-2001 or emergency language will be repealed by operation of law on the following day.
4. Certificate of Compliance as to 10-19-2000 order, including further amendment of section and Note, transmitted to OAL 3-27-2001 and filed 5-3-2001 (Register 2001, No. 18).

## 3378.   Documentation of Critical Case Information.

(a) Any information regarding an inmate/parolee which is or may be critical to the safety of persons inside or outside an institution shall be documented as required below on a CDC Form 812 (Rev. 8/01), Notice of Critical Case Information-Safety of Persons (Nonconfidential Enemies); a CDC Form 812-A (9/92), Notice of Critical Information-Prison Gangs Identification; CDC Form 812-B (9/92), Notice of Critical Information-Disruptive Group Identification; and CDC Form 812-C (Rev. 8/01), Notice of Critical Information-Confidential Enemies. The CDC Forms 812, 812-A, 812-B, and 812-C and all documents referred to on the forms shall be filed in the central file of each identified inmate/parolee. Any confidential material affecting the critical case factors of an inmate/parolee shall conform to the provisions of section 3321. Entries on these forms shall not be a substitute for detailed documentation required elsewhere in the central file.

(b) A CDC Form 812, and when applicable a CDC Form 812-C, shall be completed for each newly committed or returned inmate/parolee.

(1) The CDC Forms 812 and 812-C shall be updated as any critical information becomes known and is documented in the inmate/parolee's central file. The forms shall also be reviewed and updated at the time of any change in the inmate/parolee's status or placement.

(2) Any inmate/parolee who claims enemies shall provide sufficient information to positively identify the claimed enemy. Any inmate/parolee identified as an enemy shall be interviewed unless such interview would jeopardize an investigation or endanger any person. The results of the interview or investigation which

supports, verifies or disproves the information shall be documented on a CDC Form 128-B, General Chrono.

(3) Notations on the CDC Forms 812 and 812-C, or absence thereof, shall not be the sole basis for a staff decision or action which may affect the safety of any person.

(c) Gang involvement allegations shall be investigated by a gang coordinator/investigator or their designee.

(1) CDC Form 812-A or B shall be completed if an inmate/parolee has been verified as a currently active member/associate, inactive member/associate or dropout of a gang (prison gang or disruptive group) as defined in section 3000. Current activity is defined as any documented gang activity within the past six (6) years consistent with section 3341.5(c)(5).

(2) Information entered onto the CDC Form 812-A or B shall be reviewed and verified by a gang investigator to ensure that the identification of an inmate/parolee as a currently active gang member or associate is supported by at least three independent source items in the inmate/parolee's central file. The independent source items must contain factual information or, if from a confidential source, meet the test of reliability established in section 3321. The verification of an inmate/parolee identified as a gang dropout shall require a formal debriefing conducted or supervised by a gang investigator.

(3) A member is an inmate/parolee who has been accepted into membership by a gang. This identification requires at least three (3) independent source items of documentation indicative of actual membership. Validation of an inmate/parolee as a member of a prison gang shall require that at least one (1) source item be a direct link to a current or former validated member or associate of the gang.

(4) An associate is an inmate/parolee who is involved periodically or regularly with members or associates of a gang. This identification requires at least three (3) independent source items of documentation indicative of association with validated gang members or associates. Validation of an inmate/parolee as an associate of a prison gang shall require that at least one (1) source item be a direct link to a current or former validated member or associate of the gang.

(5) A dropout is an inmate/parolee who was either a gang member or associate and has discontinued gang affiliation. This identification requires the inmate/parolee to successfully complete the debriefing process.

(6) The verification of an inmate/parolee's gang identification shall be validated or rejected by the chief, office of correctional safety (OCS), or a designee.

(A) Prior to submission of a validation package to the OCS, or during the inactive status review process, the subject of the investigation shall be interviewed by the Institution Gang Investigator, or designee, and given an opportunity to be heard in regard to the source items used in the validation or inactive status review.

(B) Inmates shall be given written notice at least 24 hours in advance of the interview. The interview may be held earlier if the inmate waives, in writing, the 24-hour preparation period.

(C) All source items referenced in the validation or inactive status review shall be disclosed to the inmate at the time of notification. The inmate shall be given copies of all non-confidential documents unless otherwise requested in writing by the inmate. Confidential information used in the validation or inactive status review shall be disclosed to the inmate via a CDC Form 1030 (Rev. 12/86), Confidential Information Disclosure Form.

(D) The interview shall be documented and include a record of the inmate's opinion on each of the source items used in the validation. Staff shall record this information and provide a written record to the inmate within fourteen (14) calendar days and prior to submission of the validation package to OCS.

(E) The documented interview shall be submitted with the validation package to the OCS for consideration to approve or reject the validation. The documented interview shall be submitted with the inactive status review to the OCS for consideration of the inmate's continued current active or inactive status.

(F) The inmate's mental health status and/or need for staff assistance shall be evaluated prior to interview. Staff assistance shall be assigned per guidelines set forth in section 3318.

(G) The validation and/or rejection of evidence relied upon shall be documented on a CDC Form 128-B2 (Rev. 5/95), Gang Validation/Rejection Review, and forwarded to the facility or parole region of origin for placement in the inmate/parolee's central file. Upon receipt of the CDC Form 128-B2, the Classification and Parole Representative or Parole Administrator I, or their designee, shall clearly note in some permanent manner upon the face of every document whether or not the item met validation requirements.

(7) The CDC Forms 812-A and 812-B shall be reviewed by a classification committee at each annual hearing and upon any review for transfer consideration. This shall be documented on a CDC Form 128-G (Rev. 10/89), Classification Chrono. Questionable gang identifications, notations, or new information shall be referred to a gang investigator for investigation.

(8) The determination of a gang identification shall reference each independent source item in the inmate/parolee's central file. The sources shall be based on the following criteria:

(A) Self admission. Staff shall document information about the inmate/parolee's self-admission and specific involvement with the gang. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(B) Tattoos and symbols. Body markings, hand signs, distinctive clothing, graffiti, etc., which have been identified by gang investigators as begin used by and distinctive to specific gangs. Staff shall describe the tattoo or symbol and articulate why it is believed that the tattoo is used by and distinctive of gang association or membership. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(C) Written material. Any material or documents evidencing gang activity such as the membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific gangs. Staff shall articulate why, based on either the explicit or coded content, the written material is reliable evidence of association or membership with the gang. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(D) Photographs. Individual or group photographs with gang connotations such as those which include insignia, symbols, or validated gang affiliates. The date of a photograph shall be reasonably ascertained prior to any photo being relied upon for inclusion as a source item. No photograph shall be considered for validation purposes that is estimated to be older than six (6) years. Any photograph being utilized as a source item that depicts gang members shall require that at least one of the individuals be previously validated by the department, or validated by the department within six (6) months of the photograph's established or estimated date or origin. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(E) Staff information. Documentation of staff's visual or audible observations which reasonably indicate gang activity. Staff shall articulate the basis for determining the content or conduct at issue is gang related. Staff shall document and disclose this

information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(F) Other agencies. Information evidencing gang affiliation provided by other agencies. Verbal information from another agency shall be documented by the staff person who receives such information, citing the course and validity of the information. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(G) Association. Information related to the inmate/parolee's association with validated gang affiliates. Information including addresses, names, identities and reasons why such information is indicative of association with a prison gang or disruptive group. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(H) Informants. Documentation of information evidencing gang affiliation from an informant shall indicate the date of the information, whether the information is confidential or nonconfidential, and an evaluation of the informant's reliability. Confidential material shall also meet the requirements established in section 3321. Staff shall articulate how the information specifically relates to the inmate's involvement with the gang, as a member or associate. The information may be used as a source of validation if the informant provides specific knowledge of how he/she knew the inmate to be involved with the gang as a member or associate. Multiple confidential sources providing information regarding a single gang related incident or behavior shall constitute one (1) source item. Exclusive reliance on hearsay information provided by informants will not be used for validation purposes. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(I) Offenses. Where the circumstances of an offense evidence gang affiliation such as where the offense is between rival gangs, the victim is a verified gang affiliate, or the inmate/parolee's crime partner is a verified gang affiliate. Staff shall articulate why an offense is gang related. Multiple sources of information relative to the single incident or offense will be considered one (1) source of validation. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(J) Legal documents. Probation officer's report or court transcripts evidencing gang activity. Staff shall assure the document containing this information is disclosed to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(K) Visitors. Visits from persons who are documented as gang "runners", or community affiliates, or members of an organization which associates with a gang. Staff shall articulate the basis for determining that the relationship between the visitor and inmate is gang related in nature or that the visitor and inmate engaged in a gang related discussion or gang conduct. Staff shall articulate the basis for identifying the visitor as associated with the gang. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(L) Communications. Documentation of telephone conversations, conversations between inmates, mail, notes, greeting cards, or other communication, including coded messages evidencing gang activity. Staff shall articulate why, based on either the explicit or coded content, the communication is reliable evidence of association or membership with the gang. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(M) Debriefing reports. Documentation resulting from the debriefing required by (c)(2), above. Only information referencing specific gang related acts or conduct shall be considered as a source item. Multiple sources of information relative to a single gang related offense or activity shall be considered a single source of validation. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(d) An inmate housed in the general populations as a gang member or associate may be considered for review for inactive status when the inmate has not been identified as having been involved in gang activity for a minimum of two (2) years. Verification of an inmate's inactive status shall be approved or rejected by the OCS, chief or a designee. The approval or rejection shall be forwarded for placement in the inmate's central file. The Institution Classification Committee shall review and consider this determination at the next hearing and upon review for transfer consideration.

(e) An inmate housed in a security housing unit (SHU) as a gang member or associate may be considered for review of inactive status by the Department Review Board when the inmate has not been identified as having been involved in gang activity for a minimum of six (6) years. Verification of an inmate's inactive status shall be approved or rejected by the chief, OCS, or a designee. The approval or rejection shall be forwarded for placement in the inmate's central file.

(1) A gang member or associate, who is categorized as inactive or validated as a dropout of a prison gang and released from a SHU, may be removed from the general population or any other placement based upon one reliable source item identifying the inmate as an active gang member or associate of the prison gang with which the inmate was previously validated. The source item must identify the inmate as a gang member or associate based on information developed after his or her release from SHU. The source item need not be confidential, but must meet the test of reliability established at section 3321.

(g) The procedures relating to the initial validation or rejection of gang members or associates as described in this section shall be followed when reviewing the present status of an inactive gang member or associate. Verification of an inmate's active status shall be approved or rejected by the chief, OCS, or a designee. This determination shall be forwarded for placement in the inmate's central file.

(h) A classification committee is authorized to return an inmate to a SHU based upon the restoration of the inmate's gang status and a determination that the inmate's present placement endangers institutional security or presents a threat to the safety of others. As provided at section 3341.5, placement in a SHU requires approval by a classification staff representative.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D. Cal. 1995) 889 F.Supp. 1146; *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800; *Toussaint v. Yockey* (9th Cir. 1984) 722 F.2d 1490; and *Castillo v. Alameida, et al.* (N.D. Cal., No. C94-2847).

HISTORY:
1. New section filed 8-7-87 as an emergency; operative 8-7-87 (Register 87, No. 34). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 12-7-87.
2. Certificate of Compliance as to 8-7-87 order transmitted to OAL 12-4-87; disapproved by OAL (Register 88, No. 16).
3. New section filed 1-4-88 as an emergency; operative 1-4-88 (Register 88, No. 16). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 5-3-88.
4. Certificate of Compliance as to 1-4-88 order transmitted to OAL 5-3-88; disapproved by OAL (Register 88, No. 24).

# EXHIBIT B

DEPARTMENT OF CORRECTIONS

CDC #:D-28079

CDC 128B (REV. 4/14)

On Monday September 27, 2004, an investigation was initiated in reference to inmate **Pablo PINA, D-28079,** a.k.a. "**Pantera**" per the California Code of Regulations (CCR), Section 3378 (d) (e), regarding his current gang status. **PINA** was validated on March 20, 1979 as a member of the Nuestra Familia (NF) prison gang. An Inactive Review conducted on November 3, 2000 documented two documents that retained **PINA** as an active NF member until January 2004. The Institutional Classification Committee (ICC) referred **PINA** to the Institutional Gangs Investigation (IGI) Unit for an Inactive Review as the source items used to validate **PINA** are all over six (6) years old. Per the CCR, 3378 (d) (e), **PINA** meets the criteria for an Inactive Status Review. An investigation into the Central File of **PINA** revealed the following documents that contained recent activity with the NF prison gang:

1.  A confidential CDC 128B dated June 12, 2001 documents the discovery of NF prison gang information in a letter addressed to **PINA**. The author of the letter was a validated associate of the NF prison gang and utilized a third party mail drop to provide **PINA** with NF information.

2.  A Confidential Memorandum dated April 17, 2001 documents an interview with a reliable informant. The informant reported that **PINA** was involved in NF prison gang activity in November 1999.

On September 28, 2004 Sergeant M. Randolph issued **PINA** a CDC 1030 Confidential Disclosure Forms for the confidential reports used in the Inactive Review. **PINA** was informed that the Institutional Gangs Investigation (IGI) Unit would interview him after 24 hours regarding the information used in the Inactive Review. **PINA** was informed that during the interview he would have the opportunity to present his responses regarding the information used.

On September 30, 2004 the IGI Unit interviewed **PINA** regarding the two confidential reports. Concerning the 6/12/01 report, **PINA** stated that he is not responsible for what other people send him in the mail. **PINA** indicated that he has not associated with the hierarchy of the NF for many years and associates only with a few other individuals. **PINA** would not elaborate on the status of the individuals. Concerning the 4/17/01 report, **PINA** stated that he is not responsible for what other people say about him. **PINA** believed that the informant divulged the information to better his standing with the IGI Unit. **PINA** stated that he has not participated in gang activity and wanted to be validated Inactive so that he could program in a general population setting. **PINA** was advised of information indicating that he is targeted for assault by members and associates of the NF. **PINA** acknowledged that he was aware of this information. **PINA** was informed that if he were validated as an Inactive member, this information could preclude his placement in a general population program. The Departmental debriefing program was explained to **PINA**. **PINA** did not express a desire to participate in the program. **PINA** had no further comments regarding the Inactive Review.

There are confidential reports located in **PINA**'s Central File that identify **PINA** as being targeted for assault by the NF. In the event **PINA** is validated as an Inactive NF member, these reports should be reviewed by the Departmental Review Board (DRB).

Based on the above information and documentation, it is reasonable to believe that **PINA** is active with the NF prison gang. The documents reviewed comply with the Department Operations Manual (DOM), Section 61020.7 and requirements established in the CCR regarding prison gangs. The information contained in the confidential CDC 128B dated 6/12/01 is considered reliable based on the CCR Title 15 3321 (C) (4), part of the information is corroborated through investigation. The information contained in the confidential report dated 4/17/01 is considered reliable based on the CCR Title 15 3321 (C) (2) (3) (4).

INACTIVE REVIEW

DEPARTMENT OF CORRECTIONS

*CDC #:D-28079*

CDC 128-B (REV. 4/74)

Pursuant to the CCR, Section 3378 (d) (e), the IGI Unit recommends that the gang status of **Pablo PINA D-28079, as a validated member of the NF prison gang, remain unchanged.** PINA will be eligible for an Inactive Gang Status Review in June 2007. This date is based upon information contained in the above reports. This information will be forwarded to the Law Enforcement Investigations Unit (LEIU) to update PINA's gang status.

**M. LUJAN**
Correctional Officer
**Institution Gang Investigator**
Pelican Bay State Prison

**M. RANDOLPH**
Correctional Sergeant
**Institution Gang Investigator**
Pelican Bay State Prison

**R. S. MARQUEZ,**
Correctional Lieutenant
**Institution Gang Investigator**
Pelican Bay State Prison

Central File
Special Services Unit
Inmate/Parolee
Gang Unit Copy

*DATE: September 30, 2004*

*ACTIVE/INACTIVE GANG STATUS REVIEW*

*CDC 128B*

# EXHIBIT C

DEPARTMENT OF CORRECTIONS

CDC NUMBER: D28079

E: Pablo PINA

1979, a gang validation package regarding subject was received from Institution Gang Investigator Gloria at DVI. Additional ceived and added to the gang validation at a later date. On November 3, 2000 an Inactive review was conducted at PBSP. On 4, an Inactive review was completed by Institutional Gang Investigator Marquez at PBSP recommending subjects status remain

**TOTAL NUMBER OF ITEMS SUBMITTED FOR REVIEW: (12)**

Items meet the validation requirements: **VALIDATION REVIEW RESULTING IN CDC 128B-2 DATED 12/11/03:**

Item (1) Confidential Memorandum dated 7/24/89 (Debrief)

Item (2) Confidential Memorandum dated 5/22/89 (Debrief)

Item (3) CDC 128A dated 8/7/78 (Written Material)

Item (4) CDC 128B dated 9/22/77 (Written Material)

Item (5) CDC 128B dated 9/19/77 (Written Material)

**ACTIVE/INACTIVE REVIEW dated 11/03/00:**

Item (6) Confidential Memorandum dated 6/15/00 (Debrief)

Item (7) Confidential Memorandum dated 7/13/00 (Debrief)

**ACTIVE/INACTIVE REVIEW dated 9/30/04:**

Item (8) Confidential CDC 128B dated 6/12/01 (Communications)

Item (9) Confidential Memorandum dated 4/1/04 (Informant)

**TOTAL NUMBER OF ITEMS WHICH MEET VALIDATION REQUIREMENTS: (9)**

The following items do not meet the validation requirements and were/shall not be used as a basis for validation:

Item (1) Case Summary Report dated 12/15/76 (Additional Documents)

Item (2) CDC 128B dated 3/13/78 (Written Material)

Item (3) CDC 128B dated 11/30/77 (Written Material)

**TOTAL NUMBER OF ITEMS WHICH DO NOT MEET VALIDATION REQUIREMENTS: (3)**

---

## ACTION OF REVIEWER

Pursuant to the validation requirements established in 15 CCR Section 3378, Pablo PINA is:

☒ **VALIDATED**      ☐ **REJECTED**

as a member of the Nuestra Familia prison gang.



| | | |
|---|---|---|
| SIGNATURE | SIGNATURE | SIGNATURE |
| CHAIRPERSON | MEMBER | MEMBER |
| Everett W. Fischer | | DAVE L. Speer |
| Printed name | Printed name | Printed name |

**DATE:** 5-24-05

**GANG VALIDATION/REJECTION REVIEW**
**GENERAL CHRONO**
**LEIU/SSU**

**DISTRIBUTION:**
Original - Central File
Copy - Classification & Parole Representative/Parole Administrator I
Copy - Institutional Gang Investigator/Region Gang Coordinator
Copy - Law Enforcement Liaison Unit
Copy - Inmate/Parolee



INMATE COPY

# EXHIBIT D

UNIT D-4




APPEALS OFFICE

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region     Log No     Category
1. PBSP                                  D06-0284     3/9
2.                                       2.           C/O PARKER

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| PABLO PIÑA | D-28079 | SHU | D-4 102 |

**A. Describe Problem:** ON 10-20-06 I WAS GIVEN A LEGAL LETTER FROM ATTY. ANTHONY. J. SERRA, BY C/O T. WILLIAMS ON 3rd WATCH. WHEN I RECIEVED THE LETTER I SEEN THAT IT HAD ARRIVED ON 10/17/06 AND INSTEAD OF ISSUING IT TO ME C/O PARKER 3rd WATCH SENT IT TO I.G.I. ASKING THEM IF THE LETTER WAS INFACT LEGAL MAIL. EVENTHOUGH THE ENVELOPE WAS CLEARLY MARKED LEGAL MAIL ALL OVER THE ENVELOPE. AND THE MAIL ROOM OBVIOUSLY FELT IT WAS TOO AS IT WAS DESIGNATED AS LEGAL BY C/O PARKER SENDING MY LEGAL MAIL TO I.G.I. IS A VIOLATION OF C.C.R. TITLE 15 § 3144 (A) (B) AND I.G.I. HAS NOTHING TO DO WITH THE PROCESS OF LEGAL MAIL. YET C/O PARKER SENDS IT TO THEM, INSTEAD CHECKING WITH MAIL ROOM, OR THE PROGRAM SGT. ON DUTY. HER ACTIONS DELAY THE LEGAL MAIL, AND THE PROBABILITY OF I.G.I. OPENING AND READING THE CONTENTS THEN RESEALING IT IS COMMON PRACTICE. **If you need more space, attach one additional sheet.** SEE ATTACHED ENVELOPE AND C/O PARKERS NOTE AS EXHIBITS

**B. Action Requested:** THAT PARKER UNDERSTAND THE PROCESS OF LEGAL MAIL AND ITS HANDLING AS IS DESCRIBED CCR TITLE 15. NO WHERE IN THE TITLE IS DOES IT SAY THAT A C/O SHOULD SEND ONE LEGAL MAIL TO I.G. TO CONFIRM IF ITS LEGAL MAIL OR NOT. THIS IS WHY LEGAL MAIL IS OPEN BY STAFF IN FRONT OF THE INMATE SO AS TO PREVENT CONTRABAND ENTERING THE PRISON. AND C/O PARKER SHOULD FOLLOW THOSE SET POLICIES.

Inmate/Parolee Signature: _Pablo Piña_     Date Submitted: 10/22/06

**C. INFORMAL LEVEL** (Date Received: 11/2/06 )

Staff Response: C/O PARKER HAD SOME DOUBTS AS TO THE AUTHENTICITY OF THE CONFIDENTIAL STATUS OF YOUR CORRESPONDENCE. SHE REFERRED THE MAIL TO I.G.I./FACILITY CAPTAIN FOR A REVIEW/DECISION.

Staff Signature: _N. HEDSTROM SGT._     Date Returned to Inmate: ___

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

I'M NOT SATISFIED FIRST BECAUSE THE FLOOR OFFICER ONCE AGAIN HAS NOT DONE WHAT TITLE 15 CLEARLY DESCRIBES IN APPEAL PROCESS. THE FLOOR OFFICER IS THE INFORMAL LEVEL. NOT I.G.I. YET SHE TOOK THE 602 TO THEM/ 2nd THE REASON I FILED THE 602 IS BECAUSE THE FLOOR C/O COULD OF CALLED THE PROGRAM SGT. ON THE SPOT THIS ISSUE WOULD NOT BE AN ISSUE INSTEAD SHE TAKES IT TO I.G. AND I ASK MYSELF WHY?? AND I ONLY SEE ONE REASON THAT IT HAS A SPANISH NAME AS ATTORNEY.

Signature: _Pablo Piña_  NOTHING ELSE SEEMS OUT OF PLACE.     Date Submitted: 11/2/06

**Note:** Property/Funds appeals must be accompanied by a completed     CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

NOV 0 3 2006  1ST/AWSHU     DEC 2 7 2008  2ND APPEALS

73

⊢L

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _11-03-06_    Due Date: _12-20-06_

Interviewed by: _Sgt Harding (See attached)_

Staff Signature: _____    Title: _C/I_    Date Completed: _12-20-06_

Division Head Approved: ☐    Signature: _N. Dube_    Title: _A W/O_    Returned: _____    Date to Inmate: _12/21/06_

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Im still NOT SATISFIED BECAUSE EVEN THOUGH THERE ARE POLICIES IN EFFECT, And THEY CITE THEM IN THEIR RESPONSE, THEY ARE NOT FOLLOWING THEM, AND THERE IS NO POLICY THAT SAYS LEGAL MAIL IS TO BE SENT TO I.G.I. FOR ANY REASON.

Signature: _Pablo Luna_    Date Submitted: _12/24/06_

Second Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _12-27-06_    Due Date: _01-26-07_
☒ See Attached Letter

Signature: _B. Lampley CCII_    Date Completed: _1-23-07_

Warden/Superintendent Signature: _____    Date Returned to Inmate: FEB 02 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Im NOT SATISFIED BECAUSE THE PROCEDURES IN THE TITLE 15 ARE NOT BEING Followed WHEN IT COMES TO LEGAL MAIL, And REGULAR MAIL. THERE WAS NO REASON FOR MY LEGAL MAIL TO BE HELD UP BY THE FLOOR OFFICERS INEXCUSABLE BEHAVIOR, THEY INSTEAD HELD IT FOR days AND THERE WAS NO REASON FOR IT. UNLESS THEY WANTED TO OPEN IT AND READ IT AND THEN RESEAL IT. CDC OFFICIALS ARE REQUIRED TO FOLLOW THE PROCEDURES IN THE TITLE 15. NOT MAKE UP THEIR OWN POLICIES AS THEY SEE FIT.

Signature: _Pablo Luna_    Date Submitted: _2/25/07_

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
☒ See Attached Letter

Date: SEP 27 2007

CDC 602 (12/87)

## FIRST LEVEL APPEAL RESPONCE

**RE:**    PELICAN BAY STATE PRISON
Appeal Log Number PBSP-D06-02841
First Level Reviewer's Response

PELICAN BAY S.H.U.
UNIT D-4

Inmate:    PINA, D-28079

**APPEAL DECISION:** DENIED

**APPEAL ISSUE:** LEGAL MAIL

**ACTION REQUESTED:** Instructing Correctional Officer Parker on legal mail policies and procedures.

**FINDINGS:**

Your complaint, including your requested remedial action has received careful consideration. Sergeant W. Harding was assigned to investigate your allegations by the First Level Reviewer. On Monday, November 27, 2006, Sergeant Harding interviewed you. You basically stated the same information as contained in your appeal. During the course of this investigation, the following information was noted:

The California Code of Regulations (CCR) Title 15, Section 3144, Inspection of Confidential Mail states, (a) Cause may include, but is not limited to, the reasonable belief by correctional officials that the letter is addressed to or is not from an official or office listed in section 3141 or when other means of inspection indicates the presents of physical contraband in the envelope. In such instances the mail will be opened in the presence of the inmate for determination. (b) Upon determining that the envelope contains prohibited material or that there is misrepresentation of the sender's or the addressees identity the letter and any enclosures may be examined and read in its entirety to determine the most appropriate of the following actions.

Operational Procedure (OP) 205 Supplements, if the return address is incomplete or from someone not authorized to send confidential mail under his/her own name, the mail is considered non-confidential mail. The mail will be forwarded to the Security Squad to document the reason why the mail is not confidential and distributed or disposed of according to these procedures.

O P 205 will remain in effect on this issue. Correctional Officer Parker was correct in sending your letter to the Institutional Gang Investigations Unit or the Security Squad to determine the validity of the sender. Section B Action Requested is about Legal Mail, Section D is about Appeals which you addressed to the Security Housing Unit.

**DETERMINATION OF ISSUE:**

A thorough review of your complaint has been completed. Therefore based on the findings above your appeal is **DENIED** at the First Level of Review.

G. A. KELLEY
Facility Captain (A)
Facility D

*C. M. Scavetta*    11-29-06
C. M. SCAVETTA
Associate Warden
Security Housing Unit

| PELICAN BAY STATE PRISON |
| SECOND LEVEL REVIEW |

DATE: **JAN 2 9 2007**

Inmate PINA, D-28079
Pelican Bay State Prison
Facility D, Security Housing Unit
Building 4, Cell 102

RE:    WARDEN'S LEVEL DECISION                           APPEAL: DENIED
           APPEAL LOG NO. PBSP-D-06-02841                ISSUE: MAIL

This matter was reviewed by ROBERT A. HOREL, Warden, at Pelican Bay State Prison (PBSP).
Correctional Sergeant W. Harding interviewed the inmate on November 27, 2006, at the First Level of
Appeal Review.

## ISSUES

The inmate requests training be provided to staff regarding the processing of confidential mail.

## FINDINGS

### I

On October 20, 2006 the inmate was issued a confidential letter from an attorney three days after it was
processed by mailroom staff. He claims the letter was delayed due to unit staff referring the correspondence
to the Institution Gang Investigator (IGI) to determine its authenticity. However, the inmate claims the
referral of the letter to IGI was inappropriate and caused an unnecessary delay.

### II

California Code of Regulations (CCR) Section 3141(c) (6) allows an inmate to confidentially correspond
with an attorney at law who is listed with a state bar association.

CCR Section 3084.1 (a) allows an inmate to appeal any departmental decision, action, condition or policy
which they can demonstrate as having an adverse effect upon their welfare.

## DETERMINATION OF ISSUE

The inmate claims staff's referral of the confidential correspondence to IGI was unwarranted, however there
is not a departmental regulation which precludes such a referral particularly when staff's suspicions are
raised about its authenticity due to the attorney's return address being printed on a sticker and white out
being used to correct the inmate's mailing address. Additionally, the inmate has failed to demonstrate how
any delay had adversely affected his welfare to warrant an appeal, therefore, the APPEAL IS DENIED.

Supplement Page 2
Pina, D-28079
Appeal # PBSP-D-06-02841

MODIFICATION ORDER

No modification of this action or decision is required.

ROBERT A. HOREL
Warden
Pelican Bay State Prison

BDS #47 2-23-07

602 APPEAL ATTACHMENT:
RE: LEGAL MAIL:

# PELICAN BAY S.H.U.
## UNIT D-4

DATE 12/26/06

WILBUR, I'M BEGINING TO SEE THAT YOUR ACTIONS REGARDING INMATES APPEALS. REFUSING TO PROCESS LEGITIMATE APPEALS. THAT ARE WITHIN THE RIGHTS OF PRISONERS AS DESCRIBED IN THE TITLE 15. IS MERELY SO YOU CAN DISCOURAGE PRISONERS FROM FILING APPEALS.

THIS 602 APPEAL YOU SENT ALL THE WAY BACK TO ME INSISTING I REMOVE A PIECE OF TAPE FROM THE LEFT HAND CORNER, WHICH I PUT THERE TO hold ALL THE PAGES IN TACT BECAUSE YOU OFFICIALS TEND TO LOSE PAGES. AND THIS HAS NEVER BEEN AN ISSUE BEFORE,

BUT YOU TOOK THE TIME TO REMOVE THE STAPLE THAT WAS UNDER THE TAPE BUT COULDN'T TAKE THE TAPE OFF YOURSELF IF IT WAS SUCH HINDRENCE TO YOUR PROCESSING THIS APPEAL.

AND THEN YOU YOURSELF WITHOUT THINKING PUT A PIECE OF TAPE ON IT (602) TO ATTATCH YOUR NOTE _____. SO MAKE SURE YOU REMOVE THAT YOURSELF, BECAUSE ITS CONTRIBUTING CONTRABAND!

RIÑA PABLO
D-28679

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: **SEP 2 7 2007**

In re:    Pina, D-28079
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0617887          Local Log No.: PBSP 06-02841

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner K. J. Allen. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that he was harmed by the actions of custody staff at Pelican Bay State Prison (PBSP). The appellant states that staff delayed him from receiving his legal mail three extra days without cause. The appellant states the actions of housing unit custody staff is in violation of departmental rules and regulations. The appellant requests on appeal that staff be required to follow the rules regarding when issuing inmates their legal mail.

**II   SECOND LEVEL'S DECISION:** The reviewer found that an appeal inquiry was conducted into the appellant's complaint. The review revealed that custody staff were suspicious in regards to the appellant's legal mail. Housing unit staff forwarded the mail to Institution Gang Investigator staff as there were questions raised about the letter's authenticity due to the attorney's return address being printed on a sticker and white-out being used to correct the inmate's mailing address. Based upon the department's overriding concern for the safety and security of inmates, staff, and the public as required in the California Code of Regulations, Title 15, Section (CCR) 3270, the actions of staff were appropriate. The appeal was denied at the Second Level of Review.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.   FINDINGS:** Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and properly evaluated by administrative staff. The appeal was investigated by supervising custody staff, and reviewed by the institution's warden. The appellant has failed to support his position that the actions of staff were inconsistent with the rules cited herein. Additionally, pursuant to the CCR 3084.1(a), an inmate may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare. The appellant has failed to provide any information as to how the actions of staff have had a significant adverse effect upon his welfare. In accordance with safety and security concerns staff verified the appellant's mail, by using appropriate investigative staff, and the mail was returned in a very timely manner to the appellant. In that the appellant has suffered no adverse affect from receiving his mail three days later than he would have; no relief is warranted at the Director's Level of Review.

**B.   BASIS FOR THE DECISION:**
CCR: 3001, 3084.1, 3130, 3131, 3143, 3160, 3270, 3271, 3391

**C.   ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, PBSP
Appeals Coordinator, PBSP

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                ARNOLD SCHWARZENEGGER, GOVERNOR

**INMATE APPEALS BRANCH**
1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



June 5, 2007

PINA, CDC #D-28079
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA  95531-7000

Re:

Dear Mr. PINA:

The enclosed documents are being returned to you for the following reasons:

An appellant must submit the appeal within 15 working days of the event or decision being appealed, or of receiving a lower level decision in accordance with CCR 3084.6(c).

Your assigned counselor, the Appeals Coordinator, or your Parole Agent can answer any questions you may have regarding the appeals process. Library staff can help you obtain any addresses you need.

N. GRANNIS, Chief
Inmate Appeals Branch

**\*\*\*\*PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE\*\*\*\***

LETTER TO N. GRANNIS
3RD LEVEL OF APPEALS.

6-17-07

DEAR SIR,

I JUST RECIEVED YOUR LETTER, WHERE YOU ARE REFUSING TO PROCESS MY 3RD LEVEL 602 APPEAL. BECAUSE YOU CLAIM THAT I DIDNT MAIL IT IN A TIMELY FASHION. AND BEYOND THE 15 DAY TIME LIMIT AS REQUIRED IN CCR TITLE 15.

AND I SIMPLY MUST STATE THAT, THE PRISON OFFICIALS DON'T EVER MEET THE TIME RESTRANTS, THE APPEAL IS SIGNED AND DATED AS IN THIS CASE ON THE FEBRUARY 2ND 07. BUT DO YOU REALLY THINK THEY RUSHED IT TO ME ON THAT DAY. OR WITHIN A WEEK OR TWO. IT DONT WORK LIKE THAT. THEY RESPOND ABOUT THREE WEEKS TO A MONTH LATER.

I SEEN THE NEED TO FILE MY APPEAL ASAP TO THE 3RD LEVEL AS SOON AS I GOT IT. BECAUSE OF THE DEADLINE. THAT'S NOT MY FAULT. I MAILED IT AS SOON AS I GOT IT.

BUT LIKE ALL THE PROBLEMS WE HAVE WITH THE APPEALS PROCESS IN CALIF. PRISONS. THIS IS JUST ONE MORE.

AND YOU YOURSELF TOOK SEVERAL MONTHS TO RESPOND TO THIS WHICH ONLY SHOWS HOW INEFFICIENT THE WHOLE SYSTEM IS.

INSTEAD OF LOOKING AT THE ISSUES BEING APPEALED AND ATTEMPTING TO CORRECT THEM YOU WOULD RATHER LOOK FOR AN EXCUSE TO DISMISS THE APPEAL.

I KNOW IVE COMPLAINED ABOUT THE DELAYS VARIOUS TIMES AND HAVE EVEN WROTE TO YOUR OFFICE ABOUT THIS. COMPLAINED HERE TO PBSP OFFICIALS. AND I ALSO KNOW THAT SO HAS MANY OTHER PRISONERS I AGAIN ASK YOU PROCESS MY 602 APPEAL.    THANKS FOR YOUR

OCT. 11TH 07.
Thurs. AM.

Dear Sir.

This letter is in response to your disposition to my appeal * 06-02841 PBSP. In your response you claim that the envelope that came as legal mail looked suspicious, and thats why officer Parker sent it to (IGI) Gang unit. You further state that the envelope looked like it was tampered with, that white out was used to erase an address or name. None of this was ever mentioned by the officer or the (IGI) unit. and thats because what your saying was not the case.

I attatched the envelope with my appeal and sent it to you as proof that the envelope was a legitimate legal letter, that it was not tampered with. Everything was clearly readable including the stamp legal mail.

But I see that you removed my envelope from the appeal so that it can't be checked, or used as an exhibit, I would like the envelope returned to me as im in a court case regarding legal mail being opened by (CDCR) officials.

Or that you provide a response to this letter explaining why it was removed.

Respect Fully
Pablo Piña

EXHIBIT - E

PELICAN BAY STATE PRISON

SECURITY HOUSING UNIT

**INMATE/PAROLEE**
**APPEAL FORM** UNIT D-4

CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

Institution Parole Region   Log No.   Category

1. PBSP   D- 07-01007   3/9

2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| PIÑA PABLO | D-28079 | SHU | D-4 102 |

**A. Describe Problem:** I JUST RECIEVED A LETTER AND SOME MATERIALS FROM THE ACLU. AND YOU OPENED IT AND MARKED IT THAT IT WASN'T LEGAL MAIL. I'VE GONE THROUGH ALL THIS BEFORE WITH YOUR STAFF. ONE DAY YOU'LL CONSIDER HANDLING MAIL IN ACCORDANCE WITH THE CCR TITLE 15 AND MAIL PROCEDURES THEN THE NEXT DAY FORGET WHAT YOU SAID IN A PRIOR APPEAL. THE ACLU AND SEVERAL OTHER LEGAL ORGANIZATIONS ARE described IN THE TITLE 15 AS RECOGNIZED LEGAL SOURCES THAT LIKE THE COURTS AND OTHERS don't NEED TO HAVE AN ATTORNEYS NAME ON THE ENVELOPE IT SAYS AS MUCH IN THE TITLE 15 SO why did you OPEN MY LEGAL MAIL. AND THEN YOU DIDN'T WRITE MY CELL AND UNIT NUMBER ON IT SO IT WAS GIVEN TO ANOTHER PERSON BY ONE OF THESE FLOOR OFFICIALS.

If you need more space, attach one additional sheet.

**B. Action Requested:** THE TITLE 15. 3141 CONFIDENTIAL CORRESPONDENCE describes WHAT CDCR CONSIDERS AS LEGAL ORGANIZATIONS. AND THE ACLU IS ONE OF THEM. EVEN THOUGH ALL LEGAL RESOURCES SHOULD BE ALLOWED TO CORRESPOND WITH PRISONERS AS THOSE LISTED. IT'S A VIOLATION OF CCR RULES TO OPEN MAIL JUST BECAUSE YOU WANT TO LOOK INSIDE. (SEE ATTACHED LETTER).

Inmate/Parolee Signature: _Pablo, Piña_   Date Submitted: 4/22/07

**C. INFORMAL LEVEL** (Date Received: APR 23 2007 )

Staff Response: ACLU is not legal in it self. If Pat Johnson would have put their name on the return address it would have been confidential. attached is explaination.

Staff Signature: _Diane DeLew_   Date Returned to Inmate: 4/23/07

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

THE dept. OF CORRECTIONS SHOULD NOT BE dictating WHAT IS CONSIDERED LEGAL MAIL WHEN THERE IS NO LAW OR STATE REGULATION THAT ALL CONFIDENTIAL MAIL MUST HAVE THE NAME OF THE PERSON SENDING IT. SEE ABOUT ALL GOVERNMENT AGENCIES AND COURTS. AND LEGAL ORGANIZATIONS don't put THEIR NAMES ON THE ENVELOPES. IT ONLY HAS THEIR OFFICE AND TITLE AND address. THIS does NOT GIVE CDCR THE RIGHT TO OPEN MY WHICH IS LEGAL MAIL OUTSIDE OF THE PRISON.

Signature: _____   Date Submitted: 4/29/07

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

MAY 01 2007

MAY 30 2007

AW-BS   2ND APPEALS

First Level  ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days). Date assigned: 5-1-07   Due Date: 6-13-07

Pamela Carrier ASST

I have explained to inmate Pina that per title 15 section 3143 legal confidential mail must contain name of sender in return address. Your mail from ACLU did not.

Staff Signature: _____   Title: ISO #(A)   Date Completed: 5/16/07

Division Head Approved _____   Returned _____ MAY 2 5 2007

Signature: _____   Title: AWBS (A)   Date to Inmate: 5/24/07

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

LEGAL MAIL REGARDLESS OF THE ATTORNEYS. AGENCY HEAD'S NAME ON THE OUTSIDE OF TH ENVELOPE SHOULD STILL BE HANDLED AS CONFIDENTIAL MAIL AND STILL OPENED IN FRONT OF TH PRISONER. THE MAIL IS STILL BEING INSPECTED AND IS STILL HANDLED APPROPRIATELY. THE CDC DOESN'T HAVE A NAME ON THE ENVELOPE, NOR THE COURTS- SO WHY TREAT OTHER MAIL ANY DIFFERENT.

Signature: _____   Date Submitted: 5/26/07

Second Level  ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 5-30-07   Due Date: 6-27-07

☐ See Attached Letter

Signature: _____ O'Enios, CCII(A)   Date Completed: 6-18-07

Warden/Superintendent Signature: _____   Date Returned to Inmate: JUN 2 6 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

THE PRISON ADMINISTRATION SHOULD NOT BE ALLOWED TO DETERMINE WHAT MAIL IS LEGAL AND CONFIDENTIAL CORRESPONDENCE. AS LONG AS THE ADDRESS IS FROM A LEGAL ORGANIZATION, ATTORNEY, OR COUNTY, GOVERNMENT, OR STATE OFFICIAL IT SHOULD BE LEGAL MAIL AS IT IS ON THE OUTSIDE WORLD. PRISON OFFICIALS USE THEIR POLICY SO THEY CAN READ LEGAL MAIL NOTHING MORE OR NOTHING LESS. PRISON OFFICIALS CAN OPEN ALL LEGAL MAIL INFRONT OF THE INMATE AS IS THE PROCEDURE IN CCR TITLE 15. AND THERE SHOULD BE NO DIFFERENCE WITH THIS MAIL.

Signature: _____   Date Submitted: 7/11/07

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____

☐ See Attached Letter   Date: OCT 1 3 2007

CDC 602 (12/87)

3 x 3

## PELICAN BAY STATE PRISON
### SECOND LEVEL REVIEW

DATE: JUN 2 0 2007

Inmate PINA, D-28079
Pelican Bay State Prison
Facility D, Security Housing Unit
Building 4, Cell 102

RE: WARDEN'S LEVEL DECISION                    APPEAL: DENIED
    APPEAL LOG NO. PBSP-D-07-01007              ISSUE: MAIL

This matter was reviewed by ROBERT A. HOREL, Warden, at Pelican Bay State Prison (PBSP). P. Carrier, Office Services Supervisor I, Mailroom, interviewed the inmate on May 18, 2007, at the First Level of Appeal Review.

### ISSUES

Inmate Pina requests an investigation into his complaint claiming violation of California Code of Regulations (CCR), Title 15, Section 3141; inappropriate opening of confidential legal mail.

### FINDINGS

I

The inmate claims confidential mailings he received on April 22, 2007, were inappropriately processed by mailroom staff, without his presence.

II

The mailing of April 22, 2007, from the American Civil Liberties Union (ACLU) was opened by mailroom staff and inspected for contraband per Departmental policy. The inmate was advised at the First Level of Review that the envelope must contain the name of the sender and the return address in order to be deemed confidential legal mail.

The First Level Reviewer also advised the inmate that the mailing of April 22, 2007, from the ACLU were appropriately processed as non-confidential correspondence; as it did not reflect the name of the individual responsible for the correspondence in accordance with the CCR, Title 15, Section 3143.

III

The CCR, Title 15, Section 3143, states incoming correspondence bearing only a department or agency return address without any reference to the name or title of the officials or persons listed in Section 3141 will be processed as non-confidential correspondence.

The CCR, Title 15, Section 3144, requires confidential mail to be opened and inspected for contraband only and only in the presence of the inmate.

Supplement Page 2
PINA, D-28079
Appeal # PBSP-D-07-01007

## DETERMINATION OF ISSUE

The inmate pursues his appeal to the Second Level of Review requesting that all legal mail should be handled as confidential, regardless of the agency heading on the outside of the mailing.

However, the inmate has failed to provide any evidence to substantiate his claims of staff misconduct to warrant further review of this matter; therefore, the APPEAL IS DENIED.

## MODIFICATION ORDER

No modification of this decision or action taken is required.

ROBERT A. HOREL
Warden

GMD # 01 06-18-07

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT

security need at their new location. Any such restriction or revocation of approval will be communicated to both inmates and to the administrators of the facilities where the inmates are housed.

(b) Any exchange of written or printed material between inmates of separated or segregated sections of the same facility will require the prior approval of the institution head. The authority for approving or denying such exchange of written and printed material may not be delegated below the staff level of correctional or facility captain.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2601, 4570, Penal Code; *Procunier* v. *Martinez*, 416 U.S. 396; and *Bell* v. *Wolffish*, 99 S. Ct. 1861.

HISTORY:
1. Change without regulatory effect amending first paragraph and subsection (b) filed 4-4-2001 pursuant to section 100, Title 1, California Code of Regulations (Register 2001, No. 14).

## 3140. Former Inmates.

Inmates confined in departmental facilities may correspond with former inmates. Prior approval of the warden, superintendent, or person in charge of the correctional facility is required if the person was discharged from a correctional facility within the past twelve months. Prior approval of the warden, superintendent, or person in charge of the facility and approval of the person's case supervisor is required if the person is currently under parole, probation or outpatient supervision.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2601, 4570, Penal Code; *Procunier* v. *Martinez*, 416 U.S. 396; and *Bell* v. *Wolffish*, 9 S. Ct. 1861.

## 3141. Confidential Correspondence.

(a) Inmates and persons confined in departmental facilities may correspond confidentially with the persons or the staff members of the persons listed in subsection (c) of this section. Confidential correspondence means that the correspondence shall not be read by any employee except as prescribed in Section 3142.

(b) Confidential correspondence is a right guaranteed by law. Using the means of confidential correspondence for personal non-business correspondence, the transmission of contraband items, or the smuggling of letters and other communications to be forwarded to persons not listed in subsection (c), is an abuse of this right and such proven abuse may be subject to disciplinary action as described in Sections 3314 and 3315.

(c) Persons and staff members of persons with whom inmates may correspond confidentially include:

(1) All state and federal elected officials.

(2) All state and federal officials appointed by the governor or the President of the United States.

(3) All city, county, state and federal officials having responsibility for the inmate's present, prior or anticipated custody, parole or probation supervision.

(4) County agencies regarding child custody proceedings, as clearly identified in the communication.

(5) All state and federal judges and courts.

(6) An attorney at law listed with a state bar association.

(7) The director, chief deputy director, deputy directors, assistant directors, executive assistant to the director, and the chief, inmate appeals, of the Department of Corrections.

(8) Legitimate legal service organizations including, but not limited to: the Association Chief Disciplinary Officer, the Prison Law Office, the Young Lawyers section of the American Bar Association, and the National Association of Criminal Defense Lawyers.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2600 and 5054, Penal Code; *In re Jordan*, 12 CA 3rd 575 (1974); and *King* v. *Borg*, USDC-ED Case No. CIV. S-87-0519 LKK/PAN/P.

HISTORY:
1. Editorial correction of subsection (a) filed 2-19-85 (Register 85, No. 8).
2. Change without regulatory effect adopting new subsection (c)(8) and amending Note filed 8-19-93; operative 8-19-93 (Register 93, No. 34).
3. Repealer of subsection (c)(6) and subsection renumbering filed 4-8-96 as an emergency; operative 4-8-96 (Register 96, No. 15). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 9-15-96 or emergency language will be repealed by operation of law on the following day.
4. Certificate of Compliance as to 4-8-96 order transmitted to OAL 9-13-96 and disapproved 10-28-96 (Register 96, No. 44).
5. Repealer of subsection (c)(6) and subsection renumbering filed 10-28-96 as an emergency; operative 10-28-96 (Register 96, No. 44). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 4-6-97 or emergency language will be repealed by operation of law on the following day.
6. Certificate of Compliance as to 10-28-96 order transmitted to OAL 3-3-97 and filed 4-14-97 (Register 97, No. 16).
7. New subsection (c)(4), subsection renumbering, and amendment of Note filed 7-28-97 as an emergency; operative 7-28-97 (Register 97, No. 31). Pursuant to Penal Code 5058(e), a Certificate of Compliance must be transmitted to OAL by 1-5-98 or emergency language will be repealed by operation of law on the following day.
8. Certificate of Compliance as to 7-28-97 order, including further amendment of subsection (c)(4), transmitted to OAL 12-2-97 and filed 1-15-98 (Register 98, No. 3).

## 3142. Processing of Outgoing Confidential Mail.

In order to be accepted and processed as confidential correspondence, an inmate's letter must comply with all of the following requirements:

(a) The letter must be addressed to a person or to the office of a person listed in Section 3141.

(b) The inmate's name and the address of the facility must be included in the return address appearing on the outside of the envelope.

(c) The word "confidential" must appear on the face of the envelope. Failure to do this will result in the letter being processed as regular mail or being returned to the inmate if for any reason the mail cannot be processed as regular mail.

(d) Approved facility mail procedures may require either of the following procedures:

(1) The envelope must be sealed by the inmate before it is turned over to a staff member for mailing; or

(2) The envelope must be sealed by the inmate in the presence of a designated staff member before it is accepted for mailing.

(3) Either procedure may be applied to the outgoing confidential mail of all inmates of a facility; only designated classifications of inmates within a facility; to all of an individual inmate's mail; or only to correspondence between an inmate and a specific correspondent.

(4) The procedure to apply at each facility will be stated in the facility's mail procedures and such procedures shall be conspicuously displayed at appropriate locations throughout the facility. Improperly sealed or unsealed letters bearing a confidential notice will be returned to the inmate.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 2601, Penal Code.

## 3143. Processing Incoming Confidential Mail.

Incoming letters bearing the name or title and a return address of persons and the office of persons listed in Section 3141 will be processed as confidential correspondence. This includes franked mail from governmental officials listed in Section 3141. A notice or request for confidentiality is not required on the envelope. Such incoming confidential mail will not be read by any staff member before or at the time the letter is delivered to the inmate, except as described in Sections 3138 and 3144(a). Incoming correspondence