EXHIBIT - T

reference to the name or title of the officials or persons listed in Section 3141 will be processed by designated employees as nonconfidential correspondence.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 2601, Penal Code.

## 3144. Inspection of Confidential Mail.

To determine the possible presence of contraband all incoming confidential mail will be inspected prior to delivery to an inmate. Confidential mail will be opened and inspected for contraband only and only in the presence of the inmate addressee. Inspecting correctional officials will not read any of the contents of the confidential mail. Outgoing confidential mail may be inspected, with or without opening the mail for cause only.

(a) Cause may include, but is not limited to, the reasonable belief by correctional officials that the letter is not addressed to or is not from an official or office listed in Section 3141 or when other means of inspection indicates the presence of physical contraband in the envelope. In such instances the mail will be opened in the presence of the inmate for determination.

(b) Upon determining that the envelope contains prohibited material or that there is a misrepresentation of the sender's or the addressee's identity the letter and any enclosures may be examined and read in its entirety to determine the most appropriate of the following actions:

(1) When the prohibited material or misrepresentation of identity indicates a violation of the law or an intent to violate the law, the matter will be referred to the appropriate criminal authorities for possible prosecution. Any case referred to criminal authorities will be reported to the director. When a case is referred to criminal authorities and the determination is made not to prosecute, the fact of the referral and the determination made will be reported to the inmate and to the inmate's correspondent. The director will be informed of the outcome of all referrals to criminal authorities.

(2) When an inmate's action or complicity indicates a violation of law; the regulations set forth in this article; or approved facility mail procedures; the matter may also be handled by appropriate disciplinary action.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 2601, Penal Code; and *Wolff* v. *McDonald*, 94 S. Ct. 2963 (1974).

## 3145. Enclosures in Confidential Mail.

When the inspection of confidential correspondence discloses written or printed enclosures, the enclosures will be treated in the same manner as confidential correspondence. The inmate will not be given the enclosures or be allowed access to the enclosures except as authorized in the following subsections:

(a) The inmate may consent to an immediate examination of the enclosure by a staff member of the facility who issues mail. Such examination will be limited to the extent necessary to determine if the enclosure may be safely admitted into the facility under the standards of Penal Code Section 2601. The conclusion of the examiner will be written on the enclosure, and be dated and signed by the examiner. If the enclosure can be safely admitted into the facility, it will be given to the inmate. If in the examiner's opinion the enclosure does not meet the standards of Penal Code Section 2601 and cannot be safely admitted into the facility, it will be referred to a facility staff member at not less than the facility captain level, for final determination. If not released to the inmate at this level, the inmate will be allowed access to the enclosure only as authorized in subsection (b).

(b) The inmate may decline to consent to examination of enclosures in confidential mail by any staff member. When this occurs, the enclosure will be immediately placed in a separate envelope and the envelope will be sealed in the presence of the inmate. The outside of the envelope will be annotated with the inmate's name and number, a notice that the content consists of unexamined confidential enclosures removed from confidential

correspondence; the date correspondence was received; and the name and address of the sender. The envelope will then be placed in the inmate's unissued personal property or will be stored in another place designated by the facility. The inmate will be allowed the maximum possible access to that material for review and examination in a place or manner which will prevent the material from being read by other inmates and staff.

(c) Any person who examines the content of mail under the authority of this section, or in connection with an appeal by an inmate, of a ruling under this section must keep the content of the material which was examined in strict confidence and make no reference to the contents in any documentation which may be entered in the inmate's case file.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 2600, Penal Code, and *In re Jordan*, 12 CA 3rd 575 (1974).

HISTORY:

1. Change without regulatory effect amending subsection (a) filed 4-3-2001 pursuant to section 100, Title 1, California Code of Regulations (Register 2001, No. 14).

## 3146. Mail in Languages Other Than English.

Mail may be subject to a delay for translation of its contents by staff.

When such delay exceeds normal mail processing by five business days, the inmate shall be notified in writing of the delay; the reason for the delay; and subsequent determinations and actions regarding that item of mail.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2600 and 2601, Penal Code.

HISTORY:

1. Amendment filed 1-3-95 as an emergency; operative 1-3-95 (Register 95, No. 1). A Certificate of Compliance must be transmitted to OAL 6-12-95 or emergency language will be repealed by operation of law on the following day.

2. Amendment refiled 6-13-95 as an emergency; operative 6-13-95 (Register 95, No. 24). A Certificate of Compliance must be transmitted to OAL by 11-20-95 or emergency language will be repealed by operation of law on the following day.

3. Reinstatement of section as it existed prior to emergency amendment filed 12-27-95 by operation of Government Code section 11346.1(f). Certificate of Compliance as to 6-13-95 order transmitted to OAL 11-9-95; disapproved by OAL and order of repeal as to 6-13-95 order filed on 12-27-95 (Register 95, No. 52).

4. Amendment filed 12-27-95 as an emergency pursuant to Government Code section 11346.1; operative 12-27-95 (Register 95, No. 52). A Certificate of Compliance must be transmitted to OAL by 4-25-96 or emergency language will be repealed by operation of law on the following day.

5. Certificate of Compliance as to 12-27-95 order including amendment of section transmitted to OAL 4-25-96 and filed 6-6-96 (Register 96, No. 23).

## 3147. Definition and Disposition of Mail.

(a) All incoming and outgoing mail shall be handled in accordance with the following:

(1) Definition of Classes of Mail. U.S. Postal regulations define first class mail as any handwritten or typewritten matter sealed in an envelope that has to be acted upon by the recipient; second class mail as any daily or weekly publication; third class mail as any matter that weighs up to a pound and not of a first class nature, e.g., advertising, mass mailings, etc.; and fourth class mail as printed matter, e.g., catalogs, brochures, etc.

(2) Address. All outgoing mail must be properly addressed, using the appropriate zip code and shall be marked indicating that it originated from a California state correctional facility.

(3) Return Address. Outgoing inmate mail must contain a return address on the outside of the letter or package. It will include the inmate's name, the address designated by the facility for inmate mail, and the inmate's register number or prison identification. If

APPENDIX - 1

N. DISTRICT COURT
RULING IN GRIFFIN. V.
GOMEZ.

139 F.3d 905, Griffin v. Gomez, (C.A.9 (Cal.) 1998)

Page 1

**\*905** 139 F.3d 905

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA9 Rule 36-3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Ninth Circuit.

Robert Lee GRIFFIN, Petitioner--Appellant,

v.

James GOMEZ, Director; Charles D. Marshall, Warden, Respondents--Appellees.

No. 95-16684.

D.C. CV-92-01236-EFL.

Argued and Submitted Jun. 11, 1996.

Decided Feb. 24, 1998. *

Appeal from the United States District Court for the Northern District of California Eugene F. Lynch, District Judge, Presiding.

Before HUG, Chief Judge, SCHROEDER, and HAWKINS, Circuit Judges.

MEMORANDUM (FN*)

Robert Lee Griffin ("Griffin"), who is serving a life sentence for a 1974 assault on another inmate, filed a habeas petition challenging his indefinite confinement in the Segregated Housing Unit ("SHU") at Pelican Bay State Prison. He contends that his indefinite confinement, which is based on his alleged membership in the Aryan Brotherhood prison gang, violates the Due Process Clause and the Eighth Amendment. He also claims that the "debriefing requirement" violates the Due Process Clause, as well as the Fifth and Eighth Amendments. The district court denied his petition. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm in part and remand for reconsideration in light of intervening authorities.

Griffin filed this habeas petition in March 1992. In December 1993, the district court held that Griffin's claims were properly brought in a habeas petition; stayed his Fifth Amendment challenge to the

debriefing process pending the completion of the *Madrid* litigation, *Madrid v. Gomez,* 889 F.Supp. 1146 (N.D.Cal.1995); held that as a member of the then-pending *Madrid* class action, Griffin was precluded from challenging on due process grounds the gang-member segregation and debriefing policies; and dismissed his Eighth Amendment claim. The district court allowed Griffin's individual due process claim addressing his personal indeterminate retention in SHU to go forward. In August 1994, the district court granted respondents' motion for summary judgment, concluding that the procedures used for Griffin's placement and detention satisfied due process. The district court also found that "some evidence" supported the decision to segregate and retain Griffin in the SHU.

In June 1995, following the completion of the *Madrid* class action, the district court addressed Griffin's remaining Fifth Amendment claim and granted respondents' supplemental motion for summary judgment. The district court held that the debriefing process did not violate Griffin's Fifth Amendment privilege.

I. *Section 1983 Complaint v. Habeas Petition*

Respondents contend that Griffin's habeas petition challenges the conditions rather than the legality or duration of confinement, and thus should have been construed by the district court as a § 1983 civil rights claim. *See Crawford v. Bell,* 599 F.2d 890, 891 (9th Cir.1979) (limiting the scope of habeas petitions to "attacks upon the legality or duration of confinement"). Respondents' argument is foreclosed by *Bostic v. Carlson,* 884 F.2d 1267 (9th Cir.1989), in which we held that "[h]abeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation, without due process of law." *Id.* at 1269. (FN1) Thus, Griffin's claim that he is being subjected to a heightened level of confinement in violation of due process was properly brought as a habeas petition.

II. *Res Judicata/Collateral Estoppel*

Respondents next argue that even if Griffin's claims were properly brought in a habeas petition, res judicata principles preclude Griffin from litigating any claims addressed in *Madrid.* Res judicata and collateral estoppel, however, do not apply to habeas proceedings. *See, e.g., Clifton v. Attorney General,* 997 F.2d 660, 663 n. 3 (9th Cir.1993); *Burnside v. White,* 760 F.2d 217, 219 (8th Cir.1985) ("While a

© 2005 Thomson/West. No claim to original U.S. Govt. works.

unusual punishment in violation of the Eighth Amendment. We remand Griffin's Eighth Amendment claims for reconsideration in light of *Madrid,* 889 F.Supp. at 1146, issued after the district court denied his petition. The *Madrid* class action addressed in detail the factual and legal issues raised in Griffin's Eighth Amendment claim, (FN3) and its effect on the analysis of the record in this case should be determined in the first instance by the district court.

**\*905** VI. *Griffin's Other Claims*

On remand, the district court, in the course of integrating *Sandin* and *Madrid* into its decision, may, but is not required to, review again its determinations with respect to the other issues raised by Griffin. When the district court's review is complete, it should include all of its determinations in a final appealable order.

AFFIRMED IN PART AND REMANDED.

·Robert Lee GRIFFIN, Petitioner/Appellant, v. James GOMEZ and Charles Marshall, Respondents/ Appellees., 1995 WL 17070032 (Appellate Brief) (C.A.9 November 7, 1995), Appellant's Opening Brief

·Robert Lee GRIFFIN, Petitioner/Appellant, v. James GOMEZ and Charles Marshall, Respondents/ Appellees., 1996 WL 33491153 (Appellate Brief) (C.A.9 January 9, 1996), Appellant's Reply Brief

Briefs and Other Related Documents

(FN\*) This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

(FN1.) In support of this proposition, *Bostic* cited *McCollum v. Miller,* 695 F.2d 1044, 1046 (7th Cir.1982), which held that "habeas corpus can be used to get from a more to a less restrictive custody," in that case from disciplinary confinement in a "Control Unit" to confinement with the general prison population. Although the *McCollum* holding was refined somewhat in *Graham v. Broglin,* 922 F.2d 379, 381 (7th Cir.1991) (holding that *McCollum* rule applies whenever prisoner seeks "a quantum change in the level of custody"), the notion that habeas is the appropriate form of relief for a prisoner seeking a change in custody level has been expressly reaffirmed by the Seventh Circuit. *See, e.g., Graham,* 922 F.2d at 381 (noting that one example of a "quantum change in the level of custody" is release to the general prison population from solitary confinement); *Jackson v. Carlson,* 707 F.2d 943, 946 (7th Cir.1983) (citing *McCollum* for proposition that "habeas corpus is the proper remedy for getting from a more to a less restrictive custody.").

(FN2.) The state argues that two cases, *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), and *Taylor v. Best,* 746 F.2d 220 (4th Cir.1984), dispose of Griffin's Fifth Amendment claim. We agree with petitioner that both are distinguishable. While each indicates that the Fifth Amendment has a relatively limited reach when inmates are questioned for prison administrative purposes, neither controls whether Griffin has a reasonable belief that information gained during debriefing will be used in a future criminal proceeding.

(FN3.) Griffin was a member of the *Madrid* class, which included "all prisoners who are, or will be, incarcerated by the State of California Department of Corrections at Pelican Bay State Prison." *Madrid,* 889 F.Supp. at 1155.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT
8               FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                            SAN JOSE DIVISION
10
11    ROBERT LEE GRIFFIN,                    NO. C 98-21038 JW
12              Petitioner,
13                                           **ORDER GRANTING WRIT OF HABEAS**
         v.                                  **CORPUS**
14
     JAMES GOMEZ, et al.,
15
              Respondents.
16
17    _____/
18                            I.  INTRODUCTION
19         Petitioner Robert Lee Griffin ("Petitioner") is currently serving a life sentence for the 1974
20    assault of another inmate.  In 1992, he filed a petition for writ of habeas corpus alleging, inter alia,
21    that his indefinite confinement in the Segregated Housing Unit ("SHU") at Pelican Bay State Prison
22    ("Pelican Bay") violates the Eighth Amendment.  The court took Petitioner's petition under
23    submission.  For the reasons stated below, Petitioner's petition is GRANTED.
24                            II.  BACKGROUND
25         Petitioner has been retained in administrative segregation on indeterminate status since 1985,
26    on the grounds that he has been validated as a member of the Aryan Brotherhood ("AB") prison
27    gang.  At the time that Petitioner filed his petition, the sole means of obtaining release from the SHU
28    was "debriefing" -- a process whereby an inmate gives a detailed history of his involvement in a

*United States District Court*

*For the Northern District of California*

gang, reveals the names of other gang members, and describes gang activities.

    Petitioner originally challenged his confinement under a number of theories, alleging that respondents' SHU retention and debriefing policies violate his due process, Fifth Amendment, and Eighth Amendment rights. His case was assigned to the Honorable Eugene Lynch. Judge Lynch dismissed Petitioner's Eighth Amendment claim and some of his due process claims. After additional briefing and submission of evidence, Judge Lynch granted summary judgment in favor of Respondents regarding Petitioner's remaining due process claim, finding that Petitioner was afforded adequate due process with respect to his placement and retention in SHU. The Court also granted summary judgment in favor of Respondents regarding Petitioner's Fifth Amendment claim, finding that the debriefing process does not implicate the Fifth Amendment since Respondents' policy forbids the use of any information revealed during debriefing in later criminal proceedings.

    Petitioner appealed to the Ninth Circuit, which affirmed Judge Lynch's ruling in part and remanded Petitioner's Eighth Amendment claim and part of his due process claim for reconsideration in light of Sandin v. Connor, 515 U.S. 472 (1995), and Madrid v. Gomez, 889 F. Supp. 1146 (N.D. Cal. 1995), which were decided after the Court's denial of Petitioner's petition. On remand, the case was reassigned to this Court for further review. The Court granted partial summary judgment to Respondent on Petitioner's personal due process claim, but found that Madrid did not consider the precise issue raised by Petitioner's Eighth Amendment claim and allowed the parties to submit further briefing regarding that claim. Petitioner submitted a supplemental brief regarding his Eighth Amendment claim, and the Court issued an Order to Show Cause, instructing Respondents to file a Response addressing "all procedural and substantive issues pursuant to Rule 4 and Rule 5 of the Rules Governing Section 2254 Cases that Respondents intend to raise in this action." ("OSC" Docket Item No. 109, at 3-4) (emphasis in original). Respondents filed a Response comprising two new arguments: (1) arguing that new regulations regarding the evaluation of inmate gang status render Petitioner's petition moot, and (2) that the state courts' determination that Pelican Bay's SHU policies are reasonable and constitutional must stand because it does not contradict clearly

2

1  established federal law.

2  III. STANDARDS

3      A district court may entertain a petition for writ of habeas corpus "in behalf of a person in

4  custody pursuant to the judgment of a State court only on the ground that he is in custody in violation

5  of the Constitution or laws of treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges,

6  423 U.S. 19, 21 (1975). A district court shall "award the writ or issue an order directing the

7  respondent to show cause why the writ should not be granted, unless it appears from the application

8  that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. Punishments which

9  are incompatible with evolving standards of decency that mark progress of maturing society or which

10  involve unnecessary or wanton infliction of pain are repugnant to Eighth Amendment. Estelle v.

11  Gamble, 429 U.S. 97, 102-103 (1976). Prison administrators should be accorded wide-ranging

12  deference with regard to policies and practices that in their judgment are needed to maintain

13  institutional security. Bell v. Wolfish, 441 U.S. 520, 547-548 (1979).

14  IV. DISCUSSION

15      Respondents argue that Petitioner's petition should be dismissed as moot because its

16  regulations governing SHU placement have changed, and debriefing is no longer the only way for a

17  gang member to exit the SHU. It also argues that the Court may not grant Petitioner's petition

18  because the state courts' determination that its SHU policies are constitutional did not conflict with

19  clearly established federal law. The Court will address each of Respondents' arguments in turn, and

20  then address the merits of Petitioner's claim.

21  A.   Mootness

22      Respondents argue that Petitioner's petition rests on the premise that the only way to secure

23  release from the SHU is to debrief, and that new regulations enacted in 2005 offer an alternative

24  means to obtain reclassification and release. Under the new regulations, Petitioner may be

25  authorized for release if he can establish that he is no longer active in his prison gang. Therefore,

26  Respondents maintain, the petition is moot.

27

28

United States District Court<br>For the Northern District of California

3

1      A case becomes moot when the issues are no longer live or the parties lack a legally

2  cognizable interest in the outcome. Murphy v. Hunt, 455 US 478, 481 (1992). A habeas corpus

3  petition is moot once the inmate has been released on parole. Munoz v. Rowland, 104 F.3d 1096,

4  1098 (9th Cir. 1997). The petitioner in Munoz was also an inmate in the Pelican Bay SHU

5  challenging the debriefing process and the conditions in the SHU on Fifth Amendment and Eighth

6  Amendment grounds; the Ninth Circuit found his petition moot after he was paroled, because the

7  court could not grant the primary relief sought. Id. at 1097. If Petitioner had been paroled, therefore,

8  his petition would be moot. Indeed, if he had been released from the SHU, his petition would likely

9  also be moot. Arguing that a change in regulations is sufficient to moot Petitioner's petition,

10  however, misreads Petitioner's argument. Petitioner does not argue that Respondents are somehow

11  incapable of releasing him from the SHU unless he debriefs, but that they have not done so. (See

12  Petitioner's Supplemental Brief Regarding Petitioner's Eighth Amendment Claim, "Petitioner's

13  Supplemental Brief," Docket Item No. 103, at 9.)

14      A change in procedures does not moot a case when the underlying constitutional issue

15  remains. Keyishian v. Board of Regents, 385 U.S. 589, 596 (1967). In Keyishian, several university

16  professors were dismissed for refusing to sign a certificate avowing that they were not members of

17  the Communist Party. Shortly before trial, the university changed its policy; it no longer required its

18  employees to affirm that they were not Communists, but instructed them that they could be

19  terminated if they were found to be Communists. The Supreme Court found that this change in

20  procedure did not moot the constitutional questions of academic freedom raised by the plaintiffs'

21  refusal to sign the certificate. Id.

22      Here, Petitioner maintains that his failure to receive a change in gang status and release from

23  the SHU, after twenty years of efforts to prove his disassociation from the AB, demonstrates that no

24  amount of evidence of disassociation from a gang will persuade Respondents to release an inmate

25  from the SHU, and that his underlying Eighth Amendment claim therefore remains viable.

26  (Petitioner's Supplemental Brief, at 9.) The mere existence of procedures by which Respondents

27

28                              4

United States District Court

For the Northern District of California

1    could release him without debriefing does not by itself negate that argument.

2        Petitioner has submitted materials which suggest that he has tried and failed to make use of
3    the new regulations. The regulation cited by the Respondents allows the Departmental Review
4    Board to release gang members who have been inactive for six or more years from the Pelican Bay
5    SHU. CAL. CODE REGS. tit. 15, § 3999.1.10(c)(5). That regulation became effective March 1, 2005;
6    however, it repeats verbatim an earlier regulation, enacted September 30, 1999, which applies
7    generally to SHUs in California prisons. Tit. 15, § 3341.5(c)(5). In an item included in Exhibit 1 of
8    Petitioner's Supplemental Brief headed "First Level Supplemental Page," dated February 15, 2000,
9    Facility Captain D. Smith noted, "The Institutional Classification Committee referred you to the Law
10   Enforcement Liaison Unit (LEIU) on December 1, 1999, for review as an inactive prison gang
11   member." A later item in Exhibit 1, a letter from Michael Satris to Brian Parry of the LEIU, notes
12   that Petitioner's gang status was pending before the Departmental Review Board by the fall of 2001.
13   Respondents have not presented evidence of Petitioner's reclassification, or of their reasons for
14   denying him reclassification, five years following that review. If, as Petitioner suggests, the
15   Respondents refuse to reclassify him regardless of the availability of inactive review procedures, the
16   essential Eighth Amendment question remains a live issue for the Court to consider.

17       The burden of demonstrating mootness is a heavy one. Los Angeles County v. Davis, 440
18   U.S. 625, 631 (1979). As the party asserting mootness, Respondents have the heavy burden of
19   establishing the absence of a live issue. Respondents chose not to address Petitioner's evidence that
20   he has been inactive in his gang for more than twenty years, nor to offer evidence that the availability
21   of status review under section 3999.1.10 is a true alternative to debriefing in practice, despite this
22   Court's instruction in the OSC to address "all procedural and substantive issues . . . that Respondents
23   intend to raise." Not only have Respondents failed to demonstrate that no live issue remains in the
24   case, but the evidence submitted by Petitioner demonstrates that inactive review is, at least for him,
25   an illusory alternative to debriefing.

26       Respondents also suggest in passing that Petitioner failed to exhaust the opportunity for

27

28                                                    5

United States District Court
For the Northern District of California

07/31/2006   13:18    4155222666                                                        PAGE   07/28

1   status review offered by section 3999.1.10(c)(5). As discussed above, Petitioner appears to have

2   availed himself of the procedurally equivalent opportunity under section 3341.5 shortly after it

3   became available. The suggestion that he failed to exhaust that remedy is without merit.

4   **B.    Restrictions on Habeas Review**

5           Respondents also argue that although Petitioner's petition predates the Antiterrorism and

6   Effective Death Penalty Act (AEDPA), AEDPA's provisions that restrict federal courts' authority to

7   grant a habeas corpus petition apply in this case because AEDPA codified pre-existing law in that

8   regard. Therefore, Respondents contend that because AEDPA requires that a challenged state-court

9   decision contradict clearly established federal law, and the state-court decision in this case did not

10  clearly contradict federal law, this Court cannot grant Petitioner's petition.

11          AEDPA's requirement that a challenged state decision contradict clear federal law is a new

12  constraint on federal habeas courts, not found in pre-existing law. Williams v. Taylor, 529 U.S. 362,

13  412 (2000). Prior to AEDPA, constitutional issues in habeas corpus petitions were subject to

14  independent federal consideration, though federal courts were bound to give great weight to the state

15  courts' considered conclusions. Miller v. Fenton, 474 U.S. 104, 111-112 (1985); see also Williams,

16  529 U.S. at 403-404; Wright v. West, 505 U.S. 277, 305 (1992). In Miller, the Court held that the

17  voluntariness of a defendant's confession was a Fourteenth Amendment question, and therefore

18  subject to independent review by federal courts. Miller, 474 U.S. at 1110-112. Here, Respondents'

19  alleged deliberate indifference to Petitioner's safety is an Eighth Amendment question. Because this

20  case predates AEDPA, it is subject to independent federal review under the Miller rule.

21          The portion of AEDPA that does apply to this case is made clear in the section of Williams

22  quoted in Respondents' Return to Order to Show Cause: "It is perfectly clear that AEDPA codifies

23  Teague to the extent that Teague requires federal habeas courts to deny relief that is contingent upon

24  a rule of law not clearly established at the time the state conviction became final." Williams I, 529

25  U.S. at 379-380. The phrase "clearly established federal law" in § 2254(d)(1) codifies the "new

26  rules" standard in Teague v. Lane, 489 U.S. 288. Id. In Teague, the petitioner sought to overturn his

27

28                                                  6

1    sentence based on a case decided after his conviction became final. _Teague v. Lane_, 489 U.S. 288,

2    294. The Court held that new constitutional rules of criminal procedure may not be applied

3    retroactively on collateral review. _Id._ at 309-310. _Teague_ is binding upon this court, but it means

4    merely that this court may not review the state courts' decisions in light of cases decided after the

5    state court determination. This Court could grant Petitioner's petition if the state court's decision was

6    incorrect under the law then prevailing.

7    **C.    Substantive Issues Raised by Petitioner**

8        Despite the Court's admonition to address all substantive issues relating to Petitioner's Eighth

9    Amendment claim, Respondents chose not to respond to Petitioner's contentions. Were this an

10    ordinary civil case, those contentions would be deemed admitted. _See_ FED. R. CIV. P. § 8(d). In a

11    habeas corpus proceeding, however, a respondent's failure to respond to claims raised in a habeas

12    corpus petition does not entitle the petitioner to a default judgment. _Gordon v. Duran_, 895 F.2d 610,

13    612 (9th Cir. 1990). Accordingly, the Court proceeds to the merits of Petitioner's claim.

14        In summary, Petitioner argues that the various components of Respondents' gang segregation

15    and debriefing policies combine to establish conditions in violation of the Eighth Amendment. He

16    argues that conditions in the Pelican Bay SHU place him at risk of mental illness over time, that

17    debriefing is the only way for him to escape the SHU, and that Respondents rely on the harshness of

18    those conditions to drive him to debrief. He argues further that debriefing would put him and his

19    family at risk of possibly lethal retaliation, and that Respondents require gang-validated inmates to

20    debrief precisely because that risk prevents them from rejoining their gangs and thus proves their

21    sincerity. Therefore, Petitioner claims, Respondents' policies are deliberately designed to place him

22    at serious risk to his personal safety, either physically or mentally, and that the mutually enforcing

23    effect of those policies rises to the level of an Eighth Amendment violation.

24        1.    Conditions in the Pelican Bay SHU

25        In _Madrid v. Gomez_, the court found that conditions in the Pelican Bay SHU were

26    sufficiently harsh to constitute cruel and unusual punishment for inmates suffering from, or

27

28                                    7

*United States District Court*

*For the Northern District of California*

1  particularly vulnerable to, mental illness. 889 F. Supp. at 1267. With regards to the general

2  population, however, the court found that, given the great deference accorded to prison

3  administrators, conditions in the Pelican Bay SHU were not sufficient in and of themselves to violate

4  the Eighth Amendment. Id. Petitioner does not claim to be either mentally ill or unusually

5  vulnerable to mental illness; thus, the conditions of the SHU do not, in and of themselves, violate his

6  Eighth Amendment rights.

7        2.     Refusal to Reclassify Without Debriefing

8        Similarly, Respondents' refusal to reclassify Petitioner (thereby making him eligible for

9  release from the SHU) unless he debriefs is not in itself a violation of his constitutional right to be

10  free from physical attack. As cases cited by Petitioner suggest, it may be constitutionally suspect for

11  prison officials to label an inmate as an informant. See, e.g., Benefield v. McDowell, 241 F.3d 1267,

12  1271 (10th Cir. 2001). However, those cases dealt with situations where prison officials actually

13  told other inmates that the plaintiffs were informants. Here, Petitioner offers no evidence that

14  Respondents have a policy or practice of publicizing an inmate's debriefing. Any peril that

15  debriefers suffer arises from inferences drawn by other inmates, not the actions of prison officials. It

16  is troubling that Respondents, by linking debriefing so closely to administrative segregation, has

17  made those inferences substantially more likely, but such a policy lies within the discretion that the

18  courts must concede to prison administrators.

19        3.     Combination of Policies

20        In combination, however, these policies enhance the threat that each poses to Petitioner's

21  personal safety. See Wilson v. Seiter, 501 U.S. 294, 304-05 (1991) (individual conditions of

22  confinement that do not violate the Eighth Amendment may combine to create an unconstitutional

23  deprivation of an identifiable human need). The crushing conditions of the SHU present an

24  overwhelming incentive for an inmate to embrace the risk of debriefing. Respondents' refusal to

25  reconsider the classification of former gang members who are unwilling to risk retaliation, such as

26  Petitioner, renders those inmates' segregation not merely indeterminate, but effectively permanent.

27

28                                          8

1  This mutual reinforcement has extended Petitioner's stay in the SHU for over twenty years[1]. In this
2  case, the sheer duration of Petitioner's submission to the harsh conditions of the Pelican Bay SHU
3  crosses the line to become an unconstitutional threat to his safety.

4      Indefinite confinement in administrative segregation, without more, is not cruel and unusual
5  punishment. Toussaint v. Yockey, 722 F.2d 1490, 1494 (9th Cir. 1984). However, duration is a
6  factor to consider when evaluating the constitutionality of an inmate's segregation. Hutto v. Finney,
7  437 U.S. 678, 686 (1978). In its findings regarding the extremity of the Pelican Bay SHU, the
8  Madrid court observed that its findings were based on the SHU's effects on inmates who had
9  generally been there for three years or less, and explicitly declined even to speculate what impact
10  those conditions might have on inmates confined there for ten years or more. Madrid, 889 F. Supp.
11  at 1267. Many courts have held that otherwise permissible segregation may violate the Eighth
12  Amendment if it lasts too long. Pepperling v. Crist, 678 F.2d 787, 789 (9th Cir. 1982); Meriwether
13  v. Faulkner, 821 F.2d 408, 416-417 (7th Cir. 1987) (conditions appropriate to short-term
14  confinement are troubling when confinement could last for decades); Sweet v. South Carolina Dept.
15  of Corrections, 529 F.2d 854, 861 (4th Cir. 1975) (prolonged duration is a factor when evaluating the
16  constitutionality of segregated confinement); O'Brien v. Moriarty, 489 F.2d 941, 944 (1st Cir. 1974)
17  (permissible segregation could violate the Eighth Amendment if imposed inappropriately or for too
18  long).

19      The effect of duration on the constitutionality of indeterminate segregation depends on the
20  facts of the individual case. Different courts, facing a variety of lengths of confinement under
21  different circumstances, have come to an array of conclusions. Periods of administrative segregation

23      [1] Ordinarily, a federal court considers the merits of a habeas petition as of the date it was
24  filed, so that it considers the same issues that the state courts considered. When the state courts last
   considered Mr. Griffin's petition, he had only been in segregated confinement for six years, not
25  twenty. To prevent a federal court from examining new facts in a habeas case, however, the failure
   to develop material facts in state court must be due to the petitioner's fault. Keeney v.
26  Tamayo-Reyes, 504 U.S. 1, 8-9 (1992). Here, the passage of time has not been Petitioner's fault, and
   the Court will therefore consider the full length of his confinement.

9

1    as short as five months have been found unconstitutional, as in Jefferson v. Southworth, 447 F.

2    Supp. 179, 188-189 (D.R.I. 1978) (a general lockdown lasting five months is unconstitutional);

3    periods longer than a year have been found constitutional, as in Sostre v. McGinnis, 442 F.2d 178,

4    193-194 (2nd Cir. 1971) (a year of segregated confinement under reasonably humane conditions is

5    constitutional).  No published decision, however, has considered a period of administrative

6    segregation as long as Petitioner's.  On this Court's review of the case law, the longest period of

7    segregation considered was twelve years, in Sheley v. Dugger, 833 F.2d 1420 (11th Cir. 1987).  The

8    court noted that it was ordinarily skeptical of claims of mental and physical deterioration in

9    segregated confinement, but held that the duration of the plaintiff's confinement raised "serious

10   constitutional issues," and remanded for further consideration.  Id. at 1429.

11        In Toussaint v. Rushen, 553 F. Supp. 1365, 1386 (C.D. Cal. 1983), aff'd in part and rev'd in

12   part, Toussaint v. Yookey, 722 F.2d 1490 (9th Cir. 1984), the court ordered four California prisons to

13   release inmates from administrative segregation within 12 months if there was no current evidence of

14   active gang membership or danger to the security of the institution, and the Ninth Circuit affirmed

15   that part of the decision.  Although the fact that that order was intended to enforce a previous

16   injunction makes it of limited use in considering Petitioner's petition, it illustrates how other courts

17   have dealt with the problem of long-term administrative segregation in California prisons.  Further,

18   Toussaint v. Rushen dealt with conditions that the Madrid court noted were less extreme than those

19   at Pelican Bay.  Madrid, 889 F. Supp. at 1264-65.

20                                            V.  CONCLUSION

21        This Court finds that under the circumstances of this case, further retention of the Petitioner

22   in the Pelican Bay SHU until he debriefs violates the Eighth Amendment.  The duration of his

23   retention in the SHU for 20 years is a shockingly long period of time.  The duration of his

24   confinement vitiates "active" gang participation, which was the sole justification for his segregation.

25   Respondents present no evidence that Petitioner has continued active participation while confined in

26   the SHU.

27

28                                                  10

1    Similarly, the duration of his confinement suggests that any information he might have about
2  active gang activity in the prison is insignificant. Respondents present no evidence that he has
3  maintained knowledge of gang activity while confined in the SHU.
4    Finally, when the psychological harm being inflicted on Petitioner by the 20-year segregation
5  is compared to the otherwise legitimate interest of prison officials in controlling prison gang activity,
6  further confinement is tantamount to indefinite administrative segregation for silence – an intolerable
7  practice in modern society.
8    Petitioner's petition is GRANTED. Respondents are ordered to release Petitioner from the
9  SHU immediately. On or before July 5, 2006, Respondents are ordered to file a notice that Petitioner
10  has been released.
11
12  Dated: June 28, 2006
13
                                              JAMES WARE
                                              United States District Judge

For the Northern District of California
United States District Court

APPENDIX 2
SETTLEMENT

09/21/2004 18:55 FAX 415 956 68-
09/21/2004 18:23 FAX 5304789197
LCHB 910 F
Western Office
LIEFF CABRASER
@002
@002
@002

1  James M. Finberg (State Bar No. 114850)
   Joy A. Kruse (State Bar No. 142799)
2  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   Embarcadero Center West
3  275 Battery Street, 30th Floor
   San Francisco, CA  94111-3339
4  Telephone:  (415) 956-1000
   Facsimile:  (415) 956-1008
5
   Charles F.A. Carbone (State Bar No. 206536)
6  CALIFORNIA PRISON FOCUS
   2940 16th Street, Suite 307
7  San Francisco, CA  94103
   Telephone:  (415) 252-9211
8  Facsimile:  (415) 252-9311

9  Counsel for Plaintiff STEVE M. CASTILLO

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12

13  STEVE M. CASTILLO,                    Case No. C-94-2847-MJJ-JCS

14          Plaintiff,                    **SETTLEMENT AGREEMENT**

15  v.

16  EDWARD S. ALAMEIDA, JR., et al.,

17          Defendants.

18

19          Plaintiff STEVEN M. CASTILLO ("Plaintiff") and Defendants EDWARD S.

20  ALAMEIDA, JR, et al ("Defendants") have agreed to resolve the claims alleged in the above-

21  captioned action on the terms set forth in this Settlement Agreement.

22  **I.    INTRODUCTION**

23          1.     This action was originally filed on August 9, 1994. Plaintiff filed five

24  subsequent amended complaints. Plaintiff challenged the constitutionality of the gang validation

25  procedures; the evidence used in his individual validation; and whether or not his validation was

26  the result of retaliation by prison officials for his jailhouse lawyering and peace proposal

27  activities. Using the overbreadth doctrine that applies in the context of First Amendment

28  challenges to regulations, Plaintiff challenged not only his own validation, but also gang



1   validation policies and procedures as applied to other prisoners. Plaintiff also challenged some of

2   the physical conditions in the Segregated Housing Unit ("SHU") at Pelican Bay State Prison

3   ("PBSP"), as well as the psychological effects of long-term SHU confinement.

4       2.    The Defendants are Edward S. Alameida, Jr., Joseph L. McGrath, Jr., Alan

5   Addison, Judy Olson, E.S. Rodriguez, Larry Williams, C. Sheppard, and J. Briddle, all of whom

6   were sued in his or her official capacity. Defendants deny any and all allegations raised by

7   Plaintiff in this action.

8       3.    On June 19, 2002, the Court granted Defendants' summary judgment

9   motion as to Plaintiff's Eighth Amendment claim regarding physical conditions in the SHU.

10  Summary judgment as to Plaintiff's First Amendment claims, retaliation claim, and Eighth

11  Amendment claim (regarding the psychological effects of SHU confinement) were denied.

12      4.    On January 5, 2004, this Court partially granted Defendants' summary

13  judgment motion finding there was no due process violation, except to the extent Mr. Castillo

14  alleges he was denied notice and an opportunity to be heard during the course of his initial

15  validation. The Court also found that there was "some evidence" to support Mr. Castillo's

16  validation. The Court granted Defendants' summary judgment motion as to Plaintiff's Eighth

17  Amendment claim finding that there were no psychological effects of prolonged SHU

18  confinement.  Summary judgment as to Mr. Castillo's retaliation and First Amendment claims

19  was denied.

20  **II.    PARTIES**

21      5.    The Plaintiff is Steve M. Castillo, a prisoner at Pelican Bay State Prison.

22      6.    The Defendants are Edward S. Alameida, Jr., the former Director of the

23  California Department of Corrections, Joseph L. McGrath, Jr., the Warden at PBSP, Alan

24  Addison, a retired Senior Special Agent in the former Special Services Unit, Judy Olson, a retired

25  Associate Government Program Analyst in the Law Enforcement and Investigations Unit, E.S.

26  Rodriguez, a former CDC Lieutenant at PBSP, Larry Williams, a retired CDC Lieutenant at

27  PBSP, C. Sheppard, a former Acting Warden at PBSP, and J. Briddle, a former CDC Lieutenant

28  at PBSP.

Case 3:07-cv-04989-SI    Document 15-5    Filed 04/23/2008    Page 20 of 42

09/21/2004 14:56 FAX 415 956 71      LCHB 847 J                    008
09/21/2004   13:51   PBSP   [IGATION → 814159561008              NO.835   005
FROM : California Prison Focus      FAX NO. : 4152529311      Sep. 21 2004 11:28AM  P4

## III.   DEFINITIONS

7.    The following terms when used in this Agreement shall have the meanings specified below:

(a)   "Inactive review" shall mean the review of an inmate's prison gang status governed by the process described in Title 15 § 3341.5(c)(5).

(b)   "Articulable basis" shall mean a written record of specific, articulable facts along with the rational inferences drawn from those facts.

(c)   "Current, active determination" shall mean a written record and finding as defined in paragraph 24 of this Settlement Agreement.

(d)   "Defendants" shall mean Edward S. Alameida, Jr., Joseph L. McGrath, Jr., Alan Addison, Judy Olson, E.S. Rodriguez, Larry Williams, C. Sheppard, and J. Briddle.

(e)   "Execution of settlement" or "Effective Date" shall mean the date by which the final party shall have signed the agreement.

(f)   "Gang activity" and "gang content" are defined in this agreement consistent with the definition in Title 15 §§ 3000 & 3023.

(g)   "Parties" shall mean Plaintiff Castillo and the Defendants enumerated *supra* in ¶ 7(d).

(h)   "Released Claims" shall mean any and all claims or causes of action contained in Plaintiff's original Complaint, First Amended Complaint, Second Amended Complaint, Third Amended Complaint, Fourth Amended Complaint, and Fifth Amended Complaint. "Released claims" shall also include Plaintiff's gang validation and conditions of confinement at Pelican Bay State Prison existing from the date of the original Complaint, August 9, 1994, through the date of the execution of this Agreement. "Released claims" does not refer to any claims regarding the review of Mr. Castillo's validation as set forth in paragraph 29 of this Agreement or to any future inactive reviews of Mr. Castillo's status on behalf of the Classification Committee.

(i)   "Released Parties" shall mean Edward J. Alameida, Jr.; Joseph L.

349500.1

- 3 -

09/21/2004    13:51    PBSI    TIGATION → 814159561008    NO. 835    006

FROM : California Prison Focus    FAX NO. : 4152529311    Sep. 21 2004 11:28AM P5

1   McGrath, Jr.; Alan Addison; Judy Olson; E.S. Rodriguez; Larry Williams; C. Sheppard, and

2   J. Briddle, all of whom are released in his/her individual and official capacities.

3              (j)    "Validation" shall mean the process codified in Title 15 § 3378

4   whereby an inmate is identified as a prison gang member or gang associate.

5   IV.    POLICIES AND PROCEDURES

6        8.    For all policy and procedure changes described in this agreement, the

7   Department of Corrections agrees to propose to codify the changes in either Title 15 of the

8   California Code of Regulations and/or the Department Operations Manual ("DOM"). The parties

9   estimate it will take approximately 90 days from the date of the execution of the settlement

10   agreement for the Law Enforcement Investigations Unit ("LEIU") to finalize the proposed Title

11   15 and/or DOM changes. The proposed changes, whether to Title 15 or to the DOM, will then be

12   forwarded to the Department of Corrections' Regulation and Policy Management Branch, which

13   may take approximately nine months to finalize the changes. The Regulation and Policy

14   Management Branch will assist in determining whether Title 15 and/or the DOM is the

15   appropriate place to codify the policies and procedures recited herein. The Department shall

16   conclude its internal finalization of the proposed changes to both Title 15 and/or the DOM no

17   later than one year from the date of the execution of this Agreement.  Plaintiff understands that

18   following internal finalization of the proposed changes to Title 15 by the Department of

19   Corrections, the Department of Corrections must forward the proposed changes to Title 15 to the

20   California Office of Administrative Law and/or any other interested body for final codification.

21   A written copy of any codification of these policies and procedures in either Title 15 or the DOM

22   shall be provided to Plaintiff's counsel within 30 calendar days of their codification.

23        9.    Due Process in Validations and Inactive Reviews. Defendants shall

24   provide notice and opportunity to be heard to each and every prisoner at the pre-validation and

25   inactive review stage. Defendants agree to provide 24-hour advance notice to each prisoner of

26   the source items considered prior to the validation packet being sent to Law Enforcement and

27   Investigations Unit ("LEIU") for approval or rejection of an initial validation. Defendants also

28   agree to record the prisoner's opinion on each of the source items and to forward in written form

SETTLEMENT AGREEMENT
CIVIL NO. C-94-2847 MJJ-JCS

1   such opinions to LEIU.  A copy of the written record of the prisoner's opinion shall be given to

2   the prisoner, prior to the time the record is forwarded to LEIU.

3            10.    Defendants shall provide notice and opportunity to be heard for inactive

4   reviews. Notice shall be given to the prisoner at least 24 hours in advance of a consideration of

5   inactive review. Similarly, each prisoner shall be given an opportunity to record his opinions on

6   the new source items as part of the inactive review. The recorded views of the inmate shall be

7   forwarded to the decision-makers over the inactive reviews prior to the rendering of a decision. A

8   copy of the written record of the prisoner's opinions shall be given to the prisoner within fourteen

9   calendar days of the inactive review. Defendants agree that when new source items are raised,

10  beyond those used in the initial validation, each inmate shall be given notice and opportunity to

11  be heard during the inactive review.

12           11.    The policies and procedures discussed in paragraphs 12 through 21 *infra*

13  correspond to the "independent source items" discussed in Title 15 § 3378(c)(8).

14           12.    Photographs.  (Title 15 § 3378(c)(8)(D)).  Defendants shall reasonably

15  ascertain the date of any photograph used in any validation. Defendants agree that no photograph

16  used in any validation shall be older than six years. Defendants agree that at the time the

17  photograph is taken, at least one person in the photograph shall have been validated, or be

18  validated no more than six months after the date the photograph was taken. Defendants agree that

19  staff shall record this information and provide it on a written form given to the inmate.

20           13.    Talking in the Law Library.  (*see* Title 15 § 3378(c)(8)(E)).  Defendants

21  agree that a prisoner's talking in a SHU law library to a validated gang member or associate shall

22  not be relied upon as a source item unless IGI or staff has an articulable basis for determining that

23  the communication was related to gang activity. Defendants agree that staff shall record this

24  information and provide it on a written form given to the inmate.

25           14.    Tattoos and symbols.  (Title 15 § 3378(c)(8)(B)).  Defendants agree that

26  any tattoo or symbol relied upon as a source item must include an articulation by staff as to why

27  the tattoo or symbol has a specific association with a particular prison gang. Defendants agree

28  that staff shall record this information and provide it on a written form given to the inmate.

09/21/2004 14:58 FAX 415 956 7·    LCHB 847 J    @011
09/21/2004    13:51    PBSP    [IGATION → 814159561008    NO.835    D08
FROM : California Prison Focus    FAX NO. : 4152529311    Sep. 21 2004 11:29AM P7

15.   Written Material/Communications. (Title 15 § 3378(c)(8)(C) & (L)). Staff must have an articulable basis for why a written material or communication is reliable evidence of gang association or membership. Defendants agree that staff must articulate and record why a written material or communication is evidence of gang association/membership based on either the explicit, or coded, content of the communication. With respect to greeting cards, such as a birthday card or get well card, staff must record an articulable basis for why the communication is evidence of gang membership or association.

16.   Staff Information. (Title 15 § 3378(c)(8)(E).) Defendants agree that staff must have an articulable basis for determining that gang content or conduct at issue is gang-related. Defendants agree that staff shall record this information and provide it on a written form given to the inmate.

17.   Offenses. (Title 15 § 3378(c)(8)(I)). Defendants agree that if a disciplinary offense is considered a potential source item for validation, IGI or staff shall have an articulable basis for why the offense is gang-related. Defendants agree that staff shall record this information and provide it on a written form given to the inmate.

18.   Legal Documents. (Title 15 § 3378(c)(8)(J)). Defendants agree that staff shall have an articulable basis for why legal correspondence is a source item. Staff shall articulate and record why a legal document is evidence of gang association or membership based on either the explicit or coded content of the document. This information shall be recorded by staff and provided on a written form given to the inmate.

19.   Address Books. (see Title 15 § 3378(c)(8)(L)). Defendants agree that staff shall have an articulable basis for why the contents of address books are evidence of gang association. This information shall be recorded by staff and provided on a written form given to the inmate.

20.   Visitors. (Title 15 § 3378(c)(8)(K)). Defendants agree that staff must have an articulable basis for determining that the visitor and inmate discussed gang content or conduct. Defendants must have an articulable basis for identifying the visitor as associated with the prison gang, and Defendants agree that the gang identification of a visitor may be rebutted via

SETTLEMENT AGREEMENT
CIVIL NO. C-94-2807 MJJ/JCS

09/21/2004 14:58 FAX 415 958 7    LCHB 847 J

09/21/2004    13:51    PBSP    TIGATION → 814159561008    NO.835    P09

FROM : California Prison Focus    FAX NO. : 4152529311    Sep. 21 2004 11:32AM P8

1 a prisoner's opportunity to present his views. This information shall be recorded by staff and

2 provided on a written form given to the inmate.

3   21. Confidential Sources. (Title 15 § 3378(c)(8)(H)). Defendants agree that

4 "laundry lists" — that is, when confidential sources, including debriefers, identify a prisoner as an

5 associate or member by listing names of inmate(s) without reference to gang-related acts

6 performed by the inmate(s) — shall not be relied upon as a source item. Defendants agree that the

7 confidential source must identify specific gang activity or conduct performed by the alleged

8 associate or member before such information can be considered as a source item. This

9 information shall be recorded by staff and provided on a written form given to the inmate.

10   22. Single Source Rule. Defendants agree that a single, gang-related incident

11 or conduct described or documented by multiple sources, confidential or otherwise, shall

12 constitute one source item only.

13   23. Hearsay. Defendants also agree that exclusive reliance on hearsay from a

14 confidential source will not be used as a source item for validation.

15   24. Current, Active Determination. Defendants agree that a prisoner will not

16 receive an indeterminate SHU term as a validated gang member or associate without first being

17 found to be a current, active gang member or associate consistent with the procedural safeguards

18 established in this Agreement. Each ICC and/or UCC review of an indeterminate SHU term will

19 review the inmate's current gang status and indicate that status on the 128G chrono. The inmate

20 will receive a copy of the chrono unless otherwise requested. "Currently active" gang status is

21 defined as any documented gang activity within the past six years consistent with CCR

22 3341.5(c)(5). Defendants agree that these requirements will be reflected in Title 15 and/or the

23 DOM, to the extent they do not already appear there.

24   25. The provisions set forth in paragraphs 11 to 24 shall be applied on a

25 prospective basis only, and shall apply throughout the Department of Corrections.

26   26. Training. Defendants agree that the above policy changes shall be

27 reflected in Institutional Gang Investigator ("IGI") training materials and gang educational

28 materials considered and applied by LEIU, and shall be reflected in Title 15 and/or the

SETTLEMENT AGREEMENT
CIVIL NO. C-94-2147 MJJ-JCS

1   Department of Operations Manual. Defendants agree that all relevant staff, including but not

2   limited to IGI and LFIU, will receive training and instruction on the terms of the settlement

3   agreement no later than 180 days after execution of the settlement where appropriate and as

4   reflected in Paragraph 8.

5        27.    Administrative Bulletin or Memorandum.  Defendants shall issue a

6   memorandum or an administrative bulletin to notify general staff of the terms of the settlement

7   agreement no later than 180 days after execution of the settlement.  A copy of the memorandum

8   or administrative bulletin shall be provided to Plaintiff's counsel within 30 calendar days of its

9   issuance.

10        28.    Gang Diversion Video.  Defendants will seek permission from the Director

11   of the CDC to show a gang diversion video to the general and SHU populations.  A copy of the

12   gang diversion video shall be provided to plaintiff's counsel within thirty calendar days of its first

13   broadcast, if any.

14        29.    Gang Validation of Plaintiff Castillo.  Defendants agree that after executing

15   the settlement, Defendants will within 90 days review the validation of the Plaintiff in accordance

16   with the modifications adopted pursuant to the settlement.  Defendants also agree that no source

17   items learned of through Plaintiff's deposition testimony in this litigation shall be considered

18   against Mr. Castillo in any subsequent review of his gang validation.

19   V.    ENFORCEMENT

20        30.    The Court, specifically the Honorable Martin J. Jenkins, shall retain

21   jurisdiction to enforce the terms of this Agreement.  The Court shall have the power to enforce

22   the terms of this Agreement through specific performance and all other remedies permitted by

23   law or equity.

24        31.    While the parties agree that there is no ongoing monitoring of the

25   Settlement Agreement,

26        (a)    If Plaintiff's counsel believes that Defendants are not complying

27   with the specific provisions of this Settlement Agreement to make policy changes, they shall

28   notify Defendants' counsel in writing via the U.S. Postal Service of the facts supporting their

349500.1                                    - 8 -                    SETTLEMENT AGREEMENT
                                                                    CIVIL NO. C-94-2847 MJJ-JCS

09·21·2004  14:57 FAX 415 956 7        LCHB 847 J                         NO.835    P11
09/21/2004   13:51   PBSP    TIGATION → 814159561008
FROM : California Prison Focus        FAX NO. : 4152529311        Sep. 21 2004 11:31AM  P10

1   belief. Defendants shall investigate the allegations and respond in writing within 45 days. If

2   Plaintiff's counsel are not satisfied with Defendants' response, the parties shall meet and confer to

3   resolve the issue(s). If the parties are unable to resolve the issue(s) satisfactorily, Plaintiff may

4   request relief in the U.S. District Court, Northern District of California, before Judge Martin J.

5   Jenkins. This process will cease to be available once the proposed changes to the policies

6   described in this Settlement Agreement are internally finalized. This occurs when the California

7   Department of Corrections' Regulatory and Policy Management Branch provides the proposed

8   changes to the Office of Administrative Law and/or other interested bodies, where approvals are

9   outside the California Department of Corrections' control.

10              (b)       Following final codification of the proposed changes by the Office

11  of Administrative Law and/or any other interested bodies, the California Department of

12  Corrections will implement the codified changes. For six months following the start date of the

13  implementation of the codified policy changes, if Plaintiff's counsel believes that Defendants are

14  not complying with the implementation of the codified policy changes, they shall notify

15  Defendants' counsel in writing via the U.S. Postal Service of the facts supporting their belief.

16  Defendants shall investigate the allegations and respond in writing within 45 days. If Plaintiff's

17  counsel are not satisfied with Defendants' response, the parties shall meet and confer to resolve

18  the issues(s). If the parties are unable to resolve the issue(s) satisfactorily, Plaintiff may request

19  relief in the U.S. District Court, Northern District of California, before Judge Martin J. Jenkins.

20  This process will cease to be available once the six-month time frame elapses from the

21  implementation start date described above.

22              (c)       There can be no individual inmate relief regarding an inmate's gang

23  validation granted through the above-described process; individual inmate concerns regarding

24  his/her own gang validation can only be raised as exemplars by Plaintiff's counsel of alleged

25  noncompliance. Individual inmate concerns must be raised through the California Department of

26  Corrections inmate appeals process (Cal. Code Regs. tit. 15, §§ 3084 et seq.) and separate suit.

27  VI.    ATTORNEY'S FEES AND COSTS

28              32.      Defendants shall pay Lieff, Cabraser, Heimann & Bernstein, LLP $240,000

09/21/2004 14:57 FAX 415 956 71...    LCHB 847 J    ☐015
09/21/2004    13:51    PBSP    TIGATION → 814159561008    NO.835    D12
FROM : California Prison Focus    FAX NO. : 4152529311    Sep. 21 2004 11:31AM P11

1   within 90 calendar days of the execution of this agreement. That sum shall be divided among

2   plaintiff's counsel, future litigation efforts, and plaintiff as shall be decided by plaintiff's counsel

3   and plaintiff. Lieff, Cabraser, Heimann & Bernstein, LLP shall complete a Payee Data Record

4   form and shall return that Payee Data Record form to Defendants' counsel upon execution of this

5   agreement.

6         33.    At the time that Plaintiff and his counsel signs this settlement agreement,

7   Plaintiff's counsel shall also sign and return to counsel for Defendants an executed Stipulation

8   and [Proposed] Order of Dismissal With Prejudice. Plaintiff's counsel authorizes counsel for

9   Defendants to file the dismissal with prejudice with the court once the settlement check has been

10   delivered to Plaintiff's counsel.

11   **VII.    RESOLUTION OF CLAIMS**

12         34.    Plaintiff fully and forever releases and discharges all served and unserved

13   Defendants, including Defendants Edward S. Alameida, Jr., Joseph L. McGrath, Jr., Alan

14   Addison, Judy Olson, E.S. Rodriguez, Larry Williams, C. Sheppard, and J. Briddle, and all others

15   who have ever been named as Defendants in this action, in both their individual and official

16   capacities, from all claims, demands, actions, and causes of action including claims for attorneys'

17   fees, court costs, and other costs of suit, arising out of an alleged injury or claims incurred by

18   Plaintiff as alleged in this action. Plaintiff also fully and forever releases and discharges the State

19   of California, the California Department of Corrections and its employees, agents (including, but

20   not limited to the Pelican Bay State Prison in Crescent City, California and its employees and

21   agents), servants, and other representatives, past or present, from all claims, demands, actions,

22   and causes of action, including claims for attorneys' fees, court costs, and other costs of suit,

23   arising out of any alleged injury or claims incurred by Plaintiff as alleged in this action. Plaintiff

24   specifically, but without limitation, releases the Releasees for all claims that were brought or that

25   could have been brought. Plaintiff does not release any claims regarding the review of his

26   validation as set forth in paragraph 29 of this Agreement nor any claims regarding any future

27   inactive reviews of his status on behalf of the Classification Committee.

28         35.    Plaintiff acknowledges and agrees that this release and discharge is a

09/24/2004 14:57 FAX 415 958 7.    LCHB 847 J    NO.835  P13

09/21/2004    13:51    PBSP    TIGATION → 814159561008

FROM : California Prison Focus    FAX NO. : 4152529311    Sep. 21 2004 11:32AM P12

1   general release. Plaintiff expressly waives and assumes the risk of any and all claims identified in

2   Paragraph 7(h) which exist as of this date, but which he does not know or suspect to exist,

3   whether through ignorance, oversight, error, negligence, or otherwise, and which, if known,

4   would materially affect his decision to enter into this settlement agreement. Plaintiffs has read

5   the contents of Section 1542 of the Civil Code of the State of California, and he expressly waives

6   the benefits of this section. Section 1542 reads as follows:

7       Section 1542. (General Release - Claims Extinguished)
        A general release does not extend to claims which the creditor does
8       not know or suspect to exist in his favor at the time of executing the
        release, which if known by him must have materially affected his
9       settlement with the debtor.

10  Plaintiff assumes the risk that the facts or law may be other than he believes.

11      36.    Upon the execution of the settlement agreement, Defendants shall be

12  deemed to and shall have released Plaintiff Castillo from any and all claims relating to the

13  original Complaint and the Second Amended Complaint, Third Amended Complaint, Fourth

14  Amended Complaint, and Fifth Amended Complaint.

15  VIII.  PARTIES' AUTHORITY

16      37.    The signatories hereby represent that they are fully authorized to enter into

17  this agreement and bind the parties hereto to the terms and conditions hereof.

18      38.    All of the Parties acknowledge that they have been represented by

19  competent, experienced counsel throughout all negotiations which preceded execution of this

20  agreement, and this agreement is made with the consent and advice of counsel.

21  IX.   MUTUAL FULL COOPERATION

22      39.    The Parties agree to use their best efforts and to fully cooperate with each

23  other to accomplish the terms of this agreement, including but not limited to, execution of such

24  documents and to take such other action as may reasonably be necessary to implement and

25  effectuate the terms of this agreement.

26  X.    MODIFICATION

27      40.    This agreement may not be changed, altered, or modified, except in writing

28  and signed by the parties hereto, and approved by the Court.

349500.1                        - 11 -                    SETTLEMENT AGREEMENT
                                                          CIVIL NO. C-94-3847 MJJ-JCB

09·21·2004 14:57 FAX 415 958·7.      LCHB 847 J      NO. 835   D14
09/21/2004    13:51    PBSP    IGATION + 814159561008
FROM : California Prison Focus      FAX NO. : 4152529311      Sep. 21 2004 11:32AM P13

XI.   ENTIRE AGREEMENT

41.    This agreement constitutes the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this agreement. In the event of any conflict between this agreement and any other settlement-related document, the parties intend that this agreement shall be controlling.

XII.   CHOICE OF LAW/JURISDICTION

42.    This agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of California, both in its procedural and substantive aspects, and shall be subject to the continuing jurisdiction of the United States District Court for the Northern District of California. According to Magistrate Judge Edward M. Chen at the May 28, 2004 Settlement Conference, "[u]nder the terms of the settlement agreement, the District Court will retain jurisdiction to supervise the enforcement, should that be necessary." This agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this agreement or any specific term or condition thereof.

XIII.   COUNTERPARTS

43.    This agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one agreement. which shall be binding upon and effective as to all Parties.

1    Dated: September 2ᵗ, 2004          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

2

3                                      By:

4                                          Joy A. Kruse

5                                      James M. Finberg (State Bar No. 114850)
                                       Joy A. Kruse (State Bar No. 142799)
6                                      Lieff, Cabraser, Heimann & Bernstein, LLP
                                       Embarcadero Center West
7                                      275 Battery Street, 30th Floor
                                       San Francisco, CA 94111-3339
8                                      Telephone: (415) 956-1000
                                       Facsimile: (415) 956-1008

9                                      Counsel for Plaintiff STEVE M. CASTILLO

10   Dated: September __, 2004         CALIFORNIA PRISON FOCUS

11

12                                     By:

13                                         Charles F.A. Carbone

14                                     Charles F.A. Carbone (State Bar No. 206536)
                                       2940 16th Street, Suite 307
15                                     San Francisco, CA 94103
                                       Telephone: (415) 252-9211
16                                     Facsimile: (415) 252-9311

17                                     Counsel for Plaintiff STEVE M. CASTILLO

18   Dated: September __, 2004         LAW OFFICES OF GRAHAM NOYES

19

20                                     By:
                                           Graham Noyes

21                                     James Graham Noyes (State Bar No. 157395)
                                       228 Commercial Street, #219
22                                     Nevada City, CA 95959
                                       Telephone: (530) 478-9196
23                                     Facsimile: (530) 478-9197

24                                     Counsel for Plaintiff STEVE M. CASTILLO

25

26

27

28

349500.1                    - 13 -                      SETTLEMENT AGREEMENT
                                                        CIVIL NO. C-94-2847 MJJ-JCS

09/21/2004 14:57 FAX 415 956 71   LCHB 847 J
09/21/2004   13:51   PBSP LITIGATION → 814159561008                    NO.835   P15
FROM : California Prison Focus          FAX NO. : 4152529311        Sep. 21 2004 11:33PM P14

Dated: September ___, 2004          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


                                    By: _____
                                            Joy A. Kruse

                                    James M. Finberg (State Bar No. 114850)
                                    Joy A. Kruse (State Bar No. 142799)
                                    Lieff, Cabraser, Heimann & Bernstein, LLP
                                    Embarcadero Center West
                                    275 Battery Street, 30th Floor
                                    San Francisco, CA 94111-3339
                                    Telephone: (415) 956-1000
                                    Facsimile: (415) 956-1008

                                    Counsel for Plaintiff STEVE M. CASTILLO

Dated: September 21, 2004           CALIFORNIA PRISON FOCUS


                                    By: _____
                                            Charles F.A. Carbone

                                    Charles F.A. Carbone (State Bar No. 206536)
                                    2940 16th Street, Suite 307
                                    San Francisco, CA 94103
                                    Telephone: (415) 252-9211
                                    Facsimile: (415) 252-9311

                                    Counsel for Plaintiff STEVE M. CASTILLO

Dated: September ___, 2004          LAW OFFICES OF GRAHAM NOYES


                                    By: _____
                                            Graham Noyes

                                    James Graham Noyes (State Bar No. 157395)
                                    228 Commercial Street, #219
                                    Nevada City, CA 95959
                                    Telephone: (530) 478-9196
                                    Facsimile: (530) 478-9197

                                    Counsel for Plaintiff STEVE M. CASTILLO

1

## DECLARATION OF SERVICE

2

3   Case Name: **In re: STEVE M. CASTILLO (D-89028) On Habeas Corpus**

4   No.: **Sacramento County Superior Court No. 98F05216**

5   I declare:

6       I am employed in the County of Sacramento, California. I am 18 years of age or

7   older and not a party to the within entitled cause; my business address is 1300 I Street, P.O.

8   Box 944255, Sacramento, California 94244-2550.

9       On September 10, 1999 served the attached:

10

11   **RESPONDENT'S NOTICE OF COMPLIANCE WITH COURT'S ORDER**

12   by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully

13   prepaid, in the United States mail at Sacramento, California, addressed as follows:

14       ATTORNEY FOR STEVE M. CASTILLO:

15       GRAHAM NOYES, ESQ.
        368 Hayes Street
16       San Francisco, California 94102

17

18       I declare under penalty of perjury under the laws of the State of California the

19   foregoing is true and correct and that this declaration was executed on September 10, 1999,

20   at Sacramento, California.

21

22   _M. HATCH_                              _____

23                                                Signature

24

25

26

27

28

3

APPX-2
202

**New Section 3378.2 is added:**

3378.2  Advisement of Rights During Debriefing.

A waiver of the right against self-incrimination is not a precondition of an inmate/parolee (subject) undergoing a debriefing since the information is provided for administrative purposes. A subject shall not be required to complete the debriefing process and the subject is free to terminate the debriefing at any time. If, during a debriefing, a subject makes a statement that tends to incriminate the subject in a crime, the gang coordinator/investigator may stop any discussion about the matter and continue on with another topic. Prior to questioning the subject about the incriminating matter, the subject must waive the right against self-incrimination. The decision by the subject to exercise the right against self-incrimination shall not affect the determination of whether the subject successfully participated in the debriefing.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054 and 5068, Penal Code; and *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D.Cal. 1995) 889 F.Supp. 1146; *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800.

Gang4reg.doc

(4) An associate is an inmate/parolee who is involved periodically or regularly with members or associates of a gang. This identification requires at least three (3) independent source items of documentation indicative of association with validated gang members or associates.

(5) A dropout is an inmate/parolee who was either a gang member or associate and has discontinued gang affiliation. This identification requires the inmate/parolee to successfully complete the debriefing process.

(6) The verification of an inmate/parolee's gang identification shall be validated or rejected by the assistant director, law enforcement and investigations unit (LEIU), or a their designee. The validation and/or rejection of evidence relied upon shall be documented on a CDC Form 128-B2, Gang Validation/Rejection Review, and forwarded to the facility or parole region of origin for placement in the inmate/parolee's central file. Upon receipt of the CDC Form 128-B2, the Classification and Parole Representative or Parole Administrator I, or their designee, shall clearly note in some permanent manner upon the face of every document whether or not the item met validation requirements.

(7) The CDC Forms 812-A and 812-B shall be reviewed by a classification committee at each annual hearing and upon any review for transfer consideration. This shall be documented on a CDC Form 128-G, Classification Chrono. Questionable gang identifications, notations, or new information shall be referred to the gang coordinator/investigator for investigation.
Gang4reg.doc

(3) Notations on the CDC Forms 812 and 812-C, or absence thereof, shall not be the sole basis for a staff decision or action, which may affect the safety of any person.

(c) Gang involvement allegations shall be investigated by a gang coordinator/investigator or their designee.

(1) CDC Form 812-A or B shall be completed if an inmate/parolee has been verified as a member, associate, or dropout of a gang (prison gang or disruptive group) as defined in section 3000, or has safety concerns relating to gangs.

(2) Information entered onto the CDC Form 812-A or B shall be reviewed and verified by the gang coordinator/investigator to ensure that the identification of an inmate/parolee as a gang member or associate, or as having safety concerns is supported by at least three ~~original,~~ independent source items in the inmate/parolee's central file. The ~~original,~~ independent source items must contain factual information or, if from a confidential source, meet the test of reliability established in section 3321. The verification of an inmate/parolee identified as a gang dropout shall require a formal debriefing conducted or supervised by a gang coordinator/investigator.

(3) A member is an inmate/parolee who has been accepted into membership by a gang. This identification requires at least (3) independent source items of documentation indicative of actual membership.

Gang4reg.doc

(8) The determination of a gang identification shall reference each ~~original,~~ independent source item ~~document~~ in the inmate/parolee's central file. The sources shall be based on the following criteria:

(A) Self admission.

(B) Tattoos and symbols. Body markings, hand signs, distinctive clothing, graffiti, etc., which have been identified by gang coordinators/investigators as being used by and distinctive to specific gangs.

(C) Written material. Any material or documents evidencing gang affiliation such as the membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific gangs.

(D) Photographs. Individual or group photographs with gang connotations such as those, which include insignia, symbols, or validated gang affiliates.

(E) Staff information. Documentation of staff's visual or audible observations which reasonably indicate gang affiliation.

Gang4reg.doc

18

(F) Other agencies. Information evidencing gang affiliation provided by other agencies. Verbal information from another agency shall be documented by the staff person who receives such information, citing the source and validity of the information.

(G) Association. Information related to the inmate/parolee's association with validated gang affiliates.

(H) Informants. Documentation of information evidencing gang affiliation from an informant shall indicate the date of the information, whether the information is confidential or nonconfidential, and an evaluation of the informant's reliability. Confidential material shall also meet the requirements established in section 3321.

(I) Offenses. Where the circumstances of an offense evidence gang affiliation such as where the offense is between rival gangs, the victim is a verified gang affiliate, or the inmate/parolee's crime partner is a verified gang affiliate.

(J) Legal documents. Probation officer's report or court transcripts evidencing gang affiliation.

(K) Visitors. Visits from persons who are documented as gang "runners" or community affiliates, or members of an organization which associates with a gang.

Gang4reg.doc

(L) Communications. Documentation of telephone conversations, mail, notes, or other communication, including coded messages evidencing gang affiliation.

(M) Debriefing reports. Documentation resulting from the debriefing required by (c)(2), above.

(d)  An inmate housed in the general population as a gang member or associate may be considered for review for inactive status when the inmate has not been identified as having been involved in gang activity for a minimum of two (2) years. Verification of an inmate's inactive status shall be approved or rejected by the LEIU assistant director or a designee. The approval or rejection shall be forwarded for placement in the inmate's central file.   The Institution Classification Committee shall review and consider this determination at the next hearing and upon review for transfer consideration.

(e)  An inmate housed in a security housing unit (SHU) as a gang member or associate may be considered for review of inactive status by the Departmental Review Board when the inmate has not been identified as having been involved in gang activity for a minimum of six (6) years. Verification of an inmate's inactive status shall be approved or rejected by the assistant director, LEIU, or a designee. The approval or rejection shall be forwarded for placement in the inmate's central file.

Gang4reg.doc

APPX 2
208

(f)(1)  A gang member or associate, who is categorized as inactive and released from a SHU

may be removed from the general population or any other placement based upon one reliable

source item identifying the inmate as an active gang member or associate.  The source item must

identify the inmate as a gang member or associate based on information developed after his or

her release from SHU.  The source item need not be confidential, but must meet the test of

reliability established at section 3321.

(f)(2)  The procedures relating to the initial validation or rejection of gang members or associates

as described in this section shall be followed when reviewing the present status of an inactive

gang member or associate.  Verification of an inmate's active status shall be approved or rejected

by the assistant director, LEIU, or a designee.  This determination shall be forwarded for

placement in the inmate's central file.

(f)(3)  A classification committee is authorized to return an inmate to a SHU based upon the

restoration of the inmate's gang status and a determination that the inmate's present placement

endangers institutional security or presents a threat to the safety of others.  As provided at section

3341.5, placement in a SHU requires approval by a classification staff representative.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054 and 5068, Penal
Code, and *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D. Cal. 1995) 889
F.Supp. 1146; *Toussaint v. McCarthy* (9th Cir. 926 F.2d 800; *Tousaint v. Yockey* (9th Cir. 1984)
722 F.2d 1490.

Gang4reg.doc

**New Section 3378.1 is added:**

**3378.1 Debriefing Process.**

(a). Debriefing is the process by which a gang coordinator/investigator determines whether an inmate/parolee (subject) has dropped out of a gang. A subject shall be debriefed only upon his or her request, although staff may ask a subject if he or she wants to debrief. Debriefing shall entail a two-step process that includes an interview phase and an observation phase.

(b) The purpose of debriefing interview is to provide staff with information about the gang's structure, activities and affiliates. A debriefing is not for the purpose of acquiring incriminating evidence against the subject. The object of a debriefing is to learn enough about the subject and the subject's current gang to: (1) allow staff to reasonably conclude that the subject has dropped out of the gang, and (2) allow staff to reclassify the subject based upon the inmate's needs in conjunction with the security of the institution, as well as, the safety and security of staff and other inmates.

Gang4reg.doc

APPX 2
210
TB

(c) SHU inmates undergoing the debriefing process shall be subject to a period of observation in

a segregated housing setting with other inmates who are also undergoing the debriefing process.

The period of observation shall be no greater than 12 months.


(d)    Upon completion of the debriefing process, the inmate shall be housed in a facility

commensurate with the inmate's safety needs. In the absence of safety needs, the inmate shall be

housed in a facility consistent with his or her classification score.


NOTE:  Authority cited:  Section 5058, Penal Code.  Reference  Section 5054 and 5068, Penal
Code; and *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D.Cal. 1995) 889
F.Supp. 1146; *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800.

Gang4reg.doc

## PROOF OF SERVICE BY MAIL

(C.C.P. Section 101(a) # 2015.5, 28 U.S.C. 1746)

I, _PABLO PINTA D-28079_ , am a resident of Pelican Bay State Prison, in the County of Del Norte, State of California. I am over eighteen (18) years of age and am a party to the below named action.

My Address is: P.O. Box 7500, Crescent City, CA 95531.

On the __15TH__ day of _APRIL_ , in the year of 20_08_, I served the following documents: (set forth the exact title of documents served)

_1- COPY OF 1ST PRODUCTION OF DOCUMENTS_

_1- COPY OF REQUEST FOR APPOINTMENT OF COUNSEL_

_1- AMENDED COMPLAINT_

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with postage thereon fully paid, in the United States mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

| | |
|---|---|
| _COURT CLERK: ORIGINALS_ | _OFFICER MCCOVEY —COPY_ |
| _NORTHERN DIST. COURT_ | _LITIGATION OFFICE_ |
| | _P.O. BOX 7000_ |
| _SAN FRANCISCO, CALIF 94102_ | _CRESCENT CITY. CALIF 95531_ |

I declare under penalty of perjury that the foregoing is true and correct.

Dated this _15TH_ day of _APRIL_ , 20 _08_

Signed _Pablo Paul Pinta_
(Declarant Signature)

Rev. 12/06